No. 13-2609

# United States Court of Appeals
## for the
# Seventh Circuit



PATRICIA HOLTZ, *et al.*,

*Plaintiffs-Appellants,*

– v. –

J.P. MORGAN CHASE BANK, N.A., *et al.*,

*Defendants-Appellees.*

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
CASE NO. 1:12-CV-07080
THE HONORABLE JUDGE JOHN W. DARRAH

## BRIEF AND APPENDIX FOR PLAINTIFFS-APPELLANTS

PAUL E. SLATER (ARDC 2630567)
SCOTT F. HESSELL (ARDC 6275119)
MATHEW T. SLATER (ARDC 6287417)
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Tel.:  (312) 641-3200
Fax:  (312) 641-6492

JOSEPH H. MELTZER
SHANNON O. BRADEN
TYLER S. GRADEN
KESSLER TOPAZ MELTZER
     AND CHECK LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel.:  (610) 667-7706
Fax.: (610) 667-7056

JAY W. EISENHOFER
DANIEL L. BERGER
JEFF A. ALMEIDA
GRANT & EISENHOFER, P.A.
485 Lexington Avenue, 29th Floor
New York, New York 10017
Tel.:  (646) 722-8500
Fax.: (646) 722-8501

JACOB H. ZAMANSKY
EDWARD H. GLENN, JR.
ZAMANSKY LLC
50 Broadway, 32nd Floor
New York, New York 10004
Tel.:  (212) 742-1414
Fax:  (212) 742-1177

*Attorneys for Plaintiffs-Appellants*

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: __13-2609__

Short Caption: __Holtz, et al. v. JPMorgan Chase Bank, N.A.__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    __Patricia Holtz, Aunt Marlene Foundation, Steven Greenspon, and Terence Heuel.__

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    __Sperling & Slater, P.C., Grant & Eisenhofer P.A., Zamansky LLC, and Kessler Topaz Meltzer and Check.__

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

      __N/A__

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      __N/A__

Attorney's Signature: __s/  Daniel L. Berger__    Date: __August 2, 2013__

Attorney's Printed Name: __Daniel L. Berger__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** _____  **No** ☒

Address: __485 Lexington Avenue, 29th Floor, New York, NY 10017__

Phone Number: __(646)722-8500__    Fax Number: __(646)722-8501__

E-Mail Address: __dberger@gelaw.com__

rev. 01/08 AK

# TABLE OF CONENTS

Page(s)

TABLE OF AUTHORITIES ............................................................... ii

JURISDICTIONAL STATEMENT ...................................................... 1

DISTRICT COURT JURISDICTION .................................................. 1

APPELLATE COURT JURISDICTION .............................................. 1

ISSUES PRESENTED FOR REVIEW ................................................ 2

STATEMENT OF THE CASE ........................................................... 3

STATEMENT OF FACTS ................................................................ 5

SUMMARY OF ARGUMENT .......................................................... 7

ARGUMENT .................................................................................. 9

I.     STANDARD OF REVIEW ...................................................... 9

II.    THE DISTRICT COURT ERRED IN HOLDING THAT THE AMENDED
COMPLAINT SHOULD BE DISMISSED PURSUANT TO SLUSA ............................ 9

      A.    THE DISTRICT COURT ERRED IN RECASTING APPELLANTS'
            STRAIGHTFORWARD BREACH OF CONTRACT AND BREACH
            OF FIDUCIARY DUTY CLAIMS AS FRAUD CLAIMS ................................... 10

            1.    Appellants As Masters Of The Amended Complaint
                  Chose To Allege State Law Claims That Are Not Based
                  On Misstatements Or Omissions ............................................. 12

            2.    The Authorities Relied On By The District Court Do Not
                  "Require Dismissal Of This Case" And Are Otherwise
                  Distinguishable ................................................................... 21

III.   THE DISTRICT COURT ERRED IN HOLDING THAT APPELLEES'
ALLEGED WRONGFUL ACTS WERE "IN CONNECTION WITH"
THE PURCHASE OR SALE OF A SECURITY ........................................... 22

CONCLUSION .................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bagdon v. Bridgestone/Firestone, Inc.*,
   916 F.2d 379 (7th Cir. 1990) ...............................................................................12

*Bestolife Corp. v. Am. Amicable Life*,
   774 N.Y.S.2d 18 (N.Y. App. Div. 2004) ...............................................................11

*Brown v. Calamos*,
   664 F.3d 123 (7th Cir. 2011) ...............................................................................21

*Bullmore v. Banc of Am. Sec. LLC*,
   485 F. Supp. 2d 464 (S.D.N.Y. 2007)...................................................................11

*Burke v. 401 N. Wabash Venture, LLC*,
   714 F.3d 501 (7th Cir. 2013) .................................................................................9

*Burns v. Prudential Sec. Inc.*,
   218 F. Supp. 2d 911 (N.D. Ohio 2002)..................................................................20

*Cambridge Grp. Techs., Ltd. v. Motorola, Inc.*,
   No. 12-cv-7945, 2013 WL 842650 (N.D. Ill. Mar. 5, 2013) .................................12

*In re Charles Schwab Corp. Sec. Litig.*,
   257 F.R.D. 534 (N.D. Cal. 2009).................................................................... 19, 20

*Cheatham v. Ky. Lottery Corp.*,
   No. 07-cv-391, 2008 U.S. Dist. LEXIS 1391 (W.D. Ky. Jan. 8, 2008)..................24

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,
   No. 04-cv-2867, 2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006).............................10

*Corporate Travel Consultants, Inc. v. United Airlines, Inc.*,
   799 F. Supp. 58 (N.D. Ill. 1992) ..........................................................................12

*Crosby v. Cooper B-Line, Inc.*,
   No. 13-cv-1054, 2013 WL 4007928 (7th Cir. Aug. 7, 2013) ...........................13, 14

*Disher v. Citigroup Global Mkts. Inc.*,
   419 F.3d 649 (7th Cir. 2005), *vacated on other grounds*, 548 U.S. 901 (2006)......................9

*Drulias v. ADE Corp.*,
   No. 06-cv-11033, 2006 WL 1766502 (D. Mass. June 26, 2006)............................20

*Felton v. Morgan Stanley Dean Witter & Co.*,
   429 F. Supp. 2d 684 (S.D.N.Y. 2006)................................................................... 22

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*,
    704 F.3d 1110 (9th Cir. 2013) ............................................................... 17, 18, 20

*French v. First Union Sec. Inc.*,
    209 F. Supp. 2d 818 (M.D. Tenn. 2002) .............................................................24

*Gavin v. AT&T Corp.*,
    464 F.3d 634 (7th Cir. 2006) ...............................................................8, 23, 24, 26

*Gilmore v. Sw. Bell Mobile Sys., Inc.*,
    156 F. Supp. 2d 916 (N.D. Ill. 2001) .............................................................12

*Henderson v. Vill. of Dixmoor*,
    99 F. Supp. 2d 940 (N.D. Ill. 2000), *aff'd, Henderson v. Bolanda*, 253 F.3d 928
    (7th Cir. 2001).................................................................................... 12-13

*Jorling v. Anthem, Inc.*,
    836 F. Supp. 2d 821 (S.D. Ind. 2011) .......................................................10, 21, 22

*LaSala v. Bank of Cyprus Pub. Co. Ltd.*,
    510 F. Supp. 2d 246 (S.D.N.Y. 2007).............................................................23

*Levinson v. PSCC Servs., Inc.*,
    No. 09-cv-00269, 2010 WL 5477250 (D. Conn. Dec. 29, 2010) ...........................................18

*McPhatter v. Sweitzer*,
    No. 03-cv-00170, 2003 U.S. Dist. LEXIS 15878 (M.D.N.C. Sept. 8, 2003) ........................24

*McReynolds v. Merrill Lynch & Co. Inc.*,
    694 F.3d 873 (7th Cir. 2012) ...............................................................9

*Mendez v. Plastofilm Indus., Inc.*,
    No. 91-cv-8172, 1992 WL 80969 (N.D. Ill. Apr. 15, 1992)......................................... 13, 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
    547 U.S. 71 (2006)...............................................................8, 20, 22, 23

*Mitchell v. JCG Indus.*,
    842 F. Supp. 2d 1080 (N.D. Ill. 2012) .............................................................12

*Norman v. Salomon Smith Barney Inc.*,
    350 F. Supp. 2d 382 (S.D.N.Y. 2004)............................................................. 16, 17, 20

*Peterson v. H & R Block Tax Servs., Inc.*,
    971 F. Supp. 1204 (N.D. Ill. 1997) .............................................................12

*Razdan v. Gen. Motors Corp.*,
    979 F. Supp. 755 (N.D. Ill. 1997), *aff'd*, 234 F.3d 1273 (7th Cir. 2000) ..............................15

*Richek v. Bank of Am., N.A.*,
  No. 10-cv-6779, 2011 WL 3421512 (N.D. Ill. Aug. 4, 2011) ...................................................9

*Roland v. Green*,
  675 F.3d 503 (5th Cir. 2012), *cert. granted*, *Chadbourne & Parke LLP v. Troice*,
  133 S. Ct. 977 (2013) ..........................................................................................................23

*Sergeants Benevolent Ass'n Annuity Fund v. Renck*,
  796 N.Y.S.2d 77 (N.Y. App. Div. 2005) ............................................................................11

*Stoody-Broser v. Bank of Am., N.A.*,
  No. 08-cv-02705, 2012 WL 1657187 (N.D. Cal. May 10, 2012)...............................18, 19, 20

*Strigliabotti v. Franklin Res., Inc.*,
  398 F. Supp. 2d 1094 (N.D. Cal. 2005) ..............................................................................24

*Walling v. Beverly Enters.*,
  476 F.2d 393 (9th Cir. 1973) ............................................................................................. 18

*In re WorldCom, Inc. Sec. Litig.*,
  308 F. Supp. 2d 236 (S.D.N.Y. 2004).................................................................................10

## RULES & STATUTES

Fed. R. Civ. P. 12(b)(1)...............................................................................................................4

Fed. R. Civ. P. 12(b)(6)...........................................................................................................4, 9

15 U.S.C. § 77p..........................................................................................................................1

15 U.S.C. § 78bb(f).....................................................................................................................1

28 U.S.C. § 1291.........................................................................................................................1

28 U.S.C. § 1332(d)(2) ...............................................................................................................1

## JURISDICTIONAL STATEMENT

### DISTRICT COURT JURISDICTION

The District Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because (1) at least one member of the class is a citizen of a state different from at least one defendant; (2) the aggregate amount in controversy exceeds $5,000,000.00; and (3) less than two-thirds of all Class members reside in the State of Illinois.

Patricia Holtz, Steven Greenspon, Terence Heuel, and Aunt Marlene Foundation (collectively, "Appellants") are citizens of Illinois. Appellant Aunt Marlene Foundation is a not-for-profit corporation with its principal place of business located at 21 Sawgrass Drive, Lemont, IL 60439. Appellee J.P. Morgan Securities LLC is a Delaware limited liability corporation with a principal office at 383 Madison Avenue, New York, New York. Appellees JPMorgan Chase & Co. and J.P. Morgan Investment Management Inc., which is also known as JPMorgan Asset Management Holdings Inc., are both Delaware corporations with their principal place of business at 270 Park Avenue, New York, NY 10017.

### APPELLATE COURT JURISDICTION

Appellants appeal from the District Court's Judgment in a Civil Action and Memorandum Opinion and Order (the "Order"), entered on June 27, 2013, dismissing Appellants' state law claims on the grounds that such claims purportedly are barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p, 78bb(f). Appellants timely filed a Notice of Appeal on July 23, 2013. The United States Court of Appeals for the Seventh Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because Appellants appeal a final decision of the District Court.

## ISSUES PRESENTED FOR REVIEW

1.      Did the District Court err in holding that SLUSA bars breach of contract, breach of fiduciary duty, and unjust enrichment claims against an investment advisory firm where the Complaint's allegations concerning the firm's admissions regarding the existence and scope of fiduciary and contractual duties happen to also be false statements?

2.      Did the District Court err in holding that SLUSA bars breach of contract, fiduciary duty, and unjust enrichment claims where such claims do not depend upon a transaction made "in connection with" a covered security?

3.      Did the District Court err in holding that SLUSA bars breach of contract, fiduciary duty, and unjust enrichment claims where false statements are not a necessary component of the state law claims?

## STATEMENT OF THE CASE

On September 5, 2012, Appellants filed a class action lawsuit against J.P. Morgan Securities LLC ("JPMS"), JPMorgan Chase Bank, N.A. ("JPMorgan"), JPMorgan Chase & Co. ("JPMC Bank"), and J.P. Morgan Investment Management Inc. ("JPMIM"), (collectively, "Appellees" or "JPMorgan") on behalf of themselves and all financial advisory clients of Appellees from January 1, 2008 to the present, who paid fees for investment advisory services that Appellees did not perform (the "Class").[1]  Appellants' Amended Complaint alleges that Appellants (and the putative Class) paid fees to JPMorgan in exchange for JPMorgan undertaking contractual and fiduciary obligations to Appellants to manage, with full discretionary authority, Appellants investments accounts.   Rather than conducting the independent, skilled research and investment analysis that Appellants had bargained for, JPMorgan instead favored JPMorgan's own proprietary funds over other investments without conducting the contracted-for investment advisory services, and similarly favored JPMorgan's economic interests ahead of the economic interests of Appellants.

The Amended Complaint references statements made by Appellees in order to plead, through JPMorgan's own admissions, the presence, scope and extent of the JPMorgan's fiduciary and contractual duties.  Appellants do ***not*** allege that JPMorgan made any false or misleading statements to them or omitted to disclose any material information to them ***or*** that they chose to transact in any security as a result of any false or misleading statements.  Nor do Appellants seek to recover for declines in the value of any security purchased for them at JPMorgan's discretion. Rather, Appellants seek simply to recover from JPMorgan all account-related fees they paid for

---

[1] On November 26, 2012, Appellants amended their complaint to add an additional plaintiff and to name additional JPMorgan entities as defendants.  *Holtz v. JPMorgan Chase & Co.*, No. 12-cv-7080(JWD) (N.D. Ill. Nov. 26, 2012) (the "Amended Complaint").  All references herein to "¶__" are to the Amended Complaint.  The legal theories on which Appellants sought relief remained unchanged from the original complaint.

services that JPMorgan never performed.  Incidental to these claims, however, JPMorgan made admissions during the putative Class Period that they operate under stringent fiduciary duties when performing discretionary investment advisory services on behalf of Appellants, and these admissions also happen to be false, in the context of the Amended Complaint.

On December 21, 2012, JPMorgan moved to dismiss the Amended Complaint,[2] asserting that Appellants' breach of contract, breach of fiduciary duty, and unjust enrichment claims were barred by SLUSA.[3]

On January 31, 2013, Appellants filed their Opposition to JPMorgan's Motion to Dismiss,[4] arguing that JPMorgan ignored the Amended Complaint's actual allegations of straightforward breaches of contract and fiduciary duty and, instead, mischaracterized and essentially rewrote the allegations in the Amended Complaint in order to conclude that they should be dismissed pursuant to SLUSA.[5]  Appellants asserted that no reasonable reading of the Amended Complaint's breach of contract and breach of fiduciary duty allegations could contort those allegations into a securities fraud action.[6]  Further, Appellants argued that JPMorgan's breach of their contractual and fiduciary obligations did not coincide with the sale or purchase of covered securities because Appellants' failure to provide adequate investment advisory services existed independent of any actual transaction in any of JPMorgan's proprietary funds.[7]

---

[2] Citations herein to Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint are made as "Defs.' Br. at __."

[3] Appellees also asserted that Appellants had failed to state any claim upon which relief could be granted under Fed. R. Civ. P. 12(b)(6) and that Appellants' claims against JPMC Bank and JPMIM should be dismissed for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).  Because the District Court did not reach these arguments, they are not at issue here.

[4] Citations to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint are made as "Pls.' Opp. Br. at __."

[5] Pls.' Opp. Br. at 1-2.

[6] *Id*. at 3-7.

[7] *Id.* at 8-10.

Pursuant to the Order filed on June 27, 2013, the District Court dismissed the Amended Complaint with prejudice, holding that Appellants' claims were preempted by SLUSA.[8]   In finding that Appellants' claims were barred by SLUSA, the District Court disregarded the actual claims asserted in Appellants' Amended Complaint and, instead, noted that the Amended Complaint contained allegations that were "difficult and maybe impossible to disentangle" from fraud claims.  Further, the District Court found that SLUSA's "in connection with" requirement was met because the challenged conduct "coincided" with purchases of JPMorgan's proprietary funds.

In dismissing the Amended Complaint, the District Court committed two reversible errors.  First, the District Court improperly ignored Appellants' well-pleaded allegations and recast them to conclude that Appellants' breach of contract, breach of fiduciary duty, and unjust enrichment claims were merely securities fraud claims in disguise.  Second, the District Court found that Appellants alleged wrongful conduct was made "in connection with" the purchase or sale of a covered security by reading the "in connection with" requirement of SLUSA too broadly.

Appellants timely filed their Notice of Appeal on July 23, 2013.

## STATEMENT OF FACTS

Appellees, JPMorgan and affiliated entities (collectively, "JPMorgan"), employed financial advisors tasked with managing Appellants' investment accounts in exchange for fees.[9]  At all relevant times, these financial advisors had the authority to make, and did make, investment decisions on behalf of Appellants.[10]  (This is distinct from an advisor who merely

---

[8] All references to the Appendix are cited as "A-".  A-10.

[9] ¶2.

[10] ¶22.

provides advice upon which the client may then decide to act, or a broker).  Due to the nature of this relationship, JPMorgan and its financial advisors owed fiduciary duties to Appellants.[11]  The financial advisors are obligated to "research and investigate securities before placing clients in investments" and "act in the best interests of their clients, to the exclusion of all other interests."[12]

JPMorgan and its financial advisors are also bound by certain contractual obligations.[13]  Pursuant to agreements with Appellants, JPMorgan is required to act in Appellants' best interest and perform their duties in a manner "consistent with applicable fiduciary standards."[14]  In addition, JPMorgan is obligated to provide account-related services, including research and analysis, analyzing and advising on alternative accounts and fee structures, and placing Appellants in investments that are consistent with their risk profiles and financial goals.[15]

In response to the 2008 financial crisis, JPMorgan began dedicating more resources to its investment management segments, incentivizing and pressuring financial advisors to place their clients into JPMorgan's proprietary funds without conducting the necessary research and analysis and without regard to whether such investments were in the clients' best interests.[16]  At a time when other similarly situated institutions were cutting financial advisory jobs, JPMorgan added hundreds of financial advisors with the singular goal of profiting from the multiple fees it could collect from placing its clients' investments in JPMorgan proprietary funds.[17]  To this end, JPMorgan incentivized its financial advisors to place their clients' money in JPMorgan

---

[11] ¶¶22-27.

[12] ¶22.

[13] ¶28.

[14] ¶¶29-30.

[15] ¶¶22; 31; 36; 45.

[16] ¶¶42; 44; 46-48.

[17] ¶45.

proprietary funds without conducting the required research and analysis to determine whether these investments were appropriate and without regard to the clients' interests, in breach of their fiduciary and contractual obligations to Appellants and other Class members.[18]

Among its more egregious practices, during the relevant period JPMorgan initiated a questionable practice called "switching," removing its clients from existing, non-proprietary investments and haphazardly placing them into proprietary funds in order to allow JPMorgan to earn additional fees.[19]  This and other of JPMorgan's policies and directives caused its asset management affiliates and their financial advisors to cease conducting the due diligence required to competently manage their clients' investment accounts, thereby breaching their fiduciary and contractual obligations.[20]  As a result of JPMorgan's actions, Appellants were forced to pay substantial fees for investment services that they did not receive,[21] and JPMorgan has been unjustly enriched – pocketing investment advisory fees without performing the services that it was duty-bound to perform.[22]

## SUMMARY OF ARGUMENT

The District Court committed two reversible errors in dismissing Appellants' Amended Complaint.

First, the District Court wrongly concluded that the Amended Complaint asserts claims based on misrepresentations of material fact or fraud.  To the contrary, Appellants' claims are not in any way based on, dependent upon, or necessarily entangled with proof that JPMorgan made any false statements or omitted to disclose material information.  Rather, Appellants assert

---

[18] ¶¶49-68.
[19] ¶¶69-74.
[20] ¶6.
[21] ¶75.
[22] ¶76.

simply that Appellees failed to provide the independent research, financial advice, and due diligence required by the parties' contract and their fiduciary relationship. Disregarding the fact that the Amended Complaint does not plead **any** misrepresentations or omissions made to or relied upon by Appellants, the District Court improperly recast Appellants' allegations to reach the erroneous conclusion that what Appellants were "really" complaining about was fraud. However, to the extent the Amended Complaint references statements made by JPMorgan, those statements are tangential to Appellants' claims. Indeed, Appellants' claims would stand even if the members of the Class never learned of or relied upon Appellees' statements. This is not a fraud claim, nor is there any need to disentangle any issue of fraud from Appellants' straightforward claims for breach of contract and fiduciary duty. As Appellants allege, JPMorgan simply failed to perform the investment services they were already obligated to perform by operation of law given the nature of their relationship with their clients (*i.e.*, having discretionary investment authority over the Class members' funds). Thus, JPMorgan's statements merely support the conclusion that those obligations existed.

Second, the District Court improperly ignored controlling Seventh Circuit authority – namely, *Gavin v. AT&T Corp.,* 464 F.3d 634 (7th Cir. 2006) – in finding that Appellants' claims satisfied the "in connection with" standard as articulated by the Supreme Court in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006). Because Appellants' claims would be viable **regardless** of whether they purchased any of Appellees' proprietary funds, the "in connection with" prong of SLUSA is not satisfied here.

**ARGUMENT**

### I.    STANDARD OF REVIEW

This Court reviews a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) *de novo*.[23]   In applying this standard, the Court must construe the Amended Complaint in the light most favorable to Appellants, accept all well-pleaded facts as true, and draw all reasonable inferences in Appellants' favor.[24]

### II.   THE DISTRICT COURT ERRED IN HOLDING THAT THE AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO SLUSA

SLUSA bars plaintiffs from asserting, as part of a "covered class action," state law claims based on allegations that the defendant (a) misrepresented or omitted a material fact in connection with the purchase or sale of a covered security, or (b) used or employed a manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.[25]   Appellants, here, allege state law claims stemming from Appellees' failure to satisfy the contractual and fiduciary obligations owed to Appellants and the proposed Class.[26] The Amended Complaint does not attempt to establish the falsity of any of JPMorgan's statements or argue that Appellants were misled by JPMorgan's omissions.  Instead, Appellants successfully plead breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment claims based on JPMorgan's failure to perform required financial advisory services.  Nonetheless, the District Court dismissed Appellants' claims because it found that "the *substantive concepts* inherent in the [Amended

---

[23] *See Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013) (citing *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012)).  *See also Disher v. Citigroup Global Mkts. Inc.*, 419 F.3d 649, 651 (7th Cir. 2005) ("[w]e also apply de novo review to the district court's interpretation of SLUSA"), *vacated on other grounds*, 548 U.S. 901 (2006).

[24] *Burke*, 714 F.3d at 504; *McReynolds v. Merrill Lynch & Co. Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

[25] *See Richek v. Bank of Am., N.A.*, No. 10-cv-6779, 2011 WL 3421512, at *3 (N.D. Ill. Aug. 4, 2011) (citations omitted).

[26] ¶¶1-8; 21-74.

Complaint's] allegations" are claims of misrepresentations and omissions "in connection with" the sale or purchase of covered securities.[27]  The District Court, for the reasons discussed in more detail below, erred in finding that SLUSA barred Appellants' claims.

### A.   THE DISTRICT COURT ERRED IN RECASTING APPELLANTS' STRAIGHTFORWARD BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTY CLAIMS AS FRAUD CLAIMS

In finding that SLUSA barred Appellants' claims, the District Court held that the "substance of [Appellants'] allegations, when considered in their entirety, amounts to a claim of a fraudulent scheme by [Appellees] to sell [Appellees'] own proprietary mutual funds at the expense of their financial advisory clients."[28]  The District Court reached this conclusion by disregarding the plain language of the Amended Complaint itself and essentially rewriting Appellants' claims to bring them within the ambit of SLUSA.[29]  Because Appellants plead only breach of contract and breach of fiduciary duty claims—not fraud—the District Court erred.

The Amended Complaint clearly alleges a claim for breach of contract.[30]  Appellants assert that they entered into agreements with JPMorgan to receive financial advisory services.[31]  These agreements obligated JPMorgan to "(i) conduct thorough and accurate research of investments and market conditions, and (ii) manage investments in the best interest of the

---

[27] A-6-A-7 (quoting *Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 834 (S.D. Ind. 2011) (emphasis in original)).

[28] A-9.

[29] Congress enacted SLUSA in 1998 to prevent strike suits – meritless class actions that allege fraud in sale of securities.  *In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 242 (S.D.N.Y. 2004) (citation omitted).  By dismissing Appellants' claims, which are neither meritless, nor allege fraud in connection with the sale of securities, the District Court lost sight of SLUSA's legislative intent.

[30] *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04-cv-2867, 2006 WL 6217754, at *6 (S.D.N.Y. Mar. 31, 2006) (citations omitted) ("[i]n order to state a breach of contract claim [under New York law], 'a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'").

[31] *See* ¶¶9-12.

client."[32]    Appellants further allege that JPMorgan breached the parties' agreements by instituting companywide incentives that prevented their financial advisors from providing the "skilled, objective, competent, and honest financial advisory services for which they were paid,"[33] and that JPMorgan's wrongful conduct harmed Appellants and allowed JPMorgan to be unjustly enriched by collecting fees for services that they did not provide.[34]    These allegations are sufficient to state a claim for breach of contract.

Appellants also adequately establish a claim for breach of fiduciary duty.    First, the Amended Complaint asserts that the JPMorgan owed fiduciary duties to Appellants and the Class by virtue of their status as investment advisors.[35]    In order to decide whether a fiduciary relationship exists, under New York law, "a court will look to whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge."[36] Applying this standard, courts have consistently determined that investment advisors are fiduciaries because, by nature of the relationship, investors retain these advisors to provide expert advice regarding investments.[37]    Here, Appellants specifically allege that JPMorgan acted as Appellants' investment advisors and investment managers.[38]    In that capacity, JPMorgan was

---

[32] ¶¶30-31; *see also* ¶¶28-40.

[33] ¶¶8; 54; 61; 66.

[34] ¶¶32; 42; 48.

[35] ¶¶21-27.

[36]    *Sergeants Benevolent Ass'n Annuity Fund v. Renck*, 796 N.Y.S.2d 77, 79 (N.Y. App. Div. 2005) (quoting *Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 122 (N.Y. App. Div. 1998)).

[37]    *See, e.g., id.*; *Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 470-71 (S.D.N.Y. 2007) ("[i]nvestment advisors owe fiduciary duties to their clients, much as general partners owe fiduciary duties to limited partners."); *Bestolife Corp. v. Am. Amicable Life*, 774 N.Y.S.2d 18, 23 (N.Y. App. Div. 2004) (complaint properly pleaded obligation "to provide investment and banking advice and other services . . . so as to raise a factual issue regarding the existence of a fiduciary duty").

[38]    *See* ¶9 ("Plaintiff [Holtz] at all times relevant hereto contracted to receive financial advisory services from JPMS LLC"); ¶10 ("Plaintiff [Aunt Marlene Foundation] at all times relevant hereto contracted to receive investment management services from JPMC Bank"); ¶11 ("Plaintiff [Greenspon] at all times relevant hereto contracted to receive investment management services from JPMC Bank"); ¶12 ("Plaintiff

in a position of trust and had discretionary authority over Appellants' accounts.[39]  Accordingly, pursuant to New York law, Appellants have adequately pleaded JPMorgan's fiduciary status.

Second, Appellants allege that JPMorgan breached its fiduciary duties by instituting policies and practices encouraging its investment advisors to place clients into proprietary funds without performing the objective research and without concern for whether the investments were in its clients' best interests.[40]  These allegation of intentional self-dealing and conflicts of interests are sufficient to establish breaches of fiduciary duty.

> **1.    Appellants As Masters Of The Amended Complaint Chose To Allege State Law Claims That Are Not Based On Misstatements Or Omissions**

It is well-founded that a plaintiff is the master of his complaint and has sole discretion to formulate the legal theories underlying his claims.[41]  Based on this principle, the District Court was permitted to assess only the claims explicitly alleged by Appellants, and was wrong to dismiss Appellants' claims based on hypothetical allegations that ***could*** have been asserted.[42]

---

[Heuel] at all times relevant hereto contracted to receive financial advisory services from JPMS LLC"); ¶22 ("[Appellees] and the financial advisors they employed owed fiduciary duties of loyalty to their clients, including [Appellants] and members of the Class").

[39] ¶22 ("These financial advisors also had the authority to make, and did make, investment decisions for their clients....  Fiduciary duties also exist where, as here, clients have placed trust and confidence in a financial advisor to provide guidance or act in the clients' best interest").

[40] ¶¶42-44; 49-50; 65.

[41] *See Gilmore v. Sw. Bell Mobile Sys., Inc.*, 156 F. Supp. 2d 916, 920 (N.D. Ill. 2001); *Corporate Travel Consultants, Inc. v. United Airlines, Inc.*, 799 F. Supp. 58, 59 (N.D. Ill. 1992).

[42] *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 381 (7th Cir. 1990) ("[t]he plaintiff as master of the complaint may choose which claims to present."); *Cambridge Grp. Techs., Ltd. v. Motorola, Inc.*, No. 12-cv-7945, 2013 WL 842650 (N.D. Ill. Mar. 5, 2013) (holding that the plaintiff was master of his complaint and the court could not rewrite his complaint to create federal jurisdiction); *Mitchell v. JCG Indus.*, 842 F. Supp. 2d 1080, 1086 (N.D. Ill. 2012) (holding that the plaintiffs are masters of their complaint and have the sole discretion to decide which claims to advance); *Peterson v. H & R Block Tax Servs., Inc.*, 971 F. Supp. 1204, 1209 (N.D. Ill. 1997) (recognizing that the plaintiff is the master of her complaint, the district court declined to force the defendant's interpretation of the complaint's breach of contract claim on the plaintiff); *Henderson v. Vill. of Dixmoor*, 99 F. Supp. 2d 940, 944 (N.D. Ill. 2000) ("the court allows plaintiff to be the master of the complaint, giving deference to the specific claims

Recently, this Court, deferring to the allegations made in an operative complaint, overturned a district court's recasting of a plaintiff's state law claim as a cause of action preempted by a federal statute.[43]  In *Crosby*, the plaintiff asserted, in state court, that the defendant committed the Illinois tort of retaliatory discharge.[44]  The defendant, however, removed the suit to the Southern District of Illinois, contending that the plaintiff's state law claim was, at its core, an allegation under a federal statute; therefore, federal jurisdiction was appropriate.[45]  On appeal, this Court remanded the case, holding that although there was "[f]actual overlap between [the plaintiff's] state-law claim and a claim one ***could*** assert,"[46] the allegations laid out by the plaintiff made it clear that she chose to assert state law claims to the exclusion of a federal cause of action.[47]  The Court opined that while preemption analysis allows a court to "look beyond the face of [a] plaintiff's allegations and the labels used to describe her claims" in order to effectively "evaluate the *substance* of [a] plaintiff's claims," the analysis has its limits.[48]  Notably, a court cannot impose upon a plaintiff claims that he, as master of his complaint, has endeavored to avoid pleading.

Similarly in *Mendez v. Plastofilm Industries, Inc.*, the defendant removed the plaintiff's case on the grounds that the plaintiff's state law claims were disguised federal causes of action.[49] The defendant argued that because the acts complained of by the plaintiff were unlawful

---

which plaintiff has brought and accepting that plaintiff has purposefully avoided those otherwise-actionable claims not alleged."), *aff'd, Henderson v. Bolanda*, 253 F.3d 928 (7th Cir. 2001).

[43] *Crosby v. Cooper B-Line, Inc.*, No. 13-cv-1054, 2013 WL 4007928 (7th Cir. Aug. 7, 2013).

[44] *Id.* at *1.

[45] *Id.*

[46] *Id.* at *4.

[47] *Id.* at *6.

[48] *Id.* at *4 (internal quotations omitted).

[49] No. 91-cv-8172, 1992 WL 80969, at *1 (N.D. Ill. Apr. 15, 1992).

pursuant to federal law, the plaintiff actually alleged federal claims.[50]   The plaintiff moved to remand this action to state court and the district court granted the motion, holding that "[t]he defendant [could not] convert the plaintiff's properly pleaded state law claims into a federal cause of action" because "the plaintiff [was] the master of his complaint" and he alone wielded the power to decide which claims to pursue.[51]   The court added that it is irrelevant that the plaintiff's allegations ***could have*** supported the federal claims at issue because the plaintiff chose to forgo those claims in favor of state law causes of action.

The rationale of the *Crosby* and *Mendez* courts apply here.  Specifically, the District Court was wrong to divine the existence of claims that Appellants did not plead.  The mere fact that Appellants' Amended Complaint contains statements that may be construed as false in order to describe the scope and extent of the contractual and fiduciary duties that JPMorgan admits exist, ***does not*** transform the thrust of Amended Complaint to one alleging claims ***based on*** or ***depending upon*** such misrepresentations or omissions of material fact.  Therefore, the District Court's inappropriate recasting of Appellants' allegations to reach the strained conclusion that what Appellants are "really alleging" is fraud should be rejected.

At its core, the District Court's finding that Appellants' breach of contract and breach of fiduciary duty claims are based on misrepresentations is predicated on a fundamental misunderstanding of certain of the allegations in the Amended Complaint concerning statements made by JPMorgan that merely acknowledge the existence of fiduciary duties to its financial advisory clients.  Examples of these statements include the following quotes from Appellees' websites: "[o]ur clients come first," "we work to understand our clients' needs [and] offer informed advice," and "[w]e will work closely with you to understand your unique needs and

---

[50] *Id.* at *2.

[51] *Id.*

create solutions designed to help you meet[] your financial goals."[52]  Appellants reference these and similar statements in the Amended Complaint to bolster the assertion that a fiduciary relationship existed.  These statements, however, are not allegations of misrepresentations and cannot give rise to a fraud claim.

A false statement or omission of material fact is a necessary element of every fraud claim.[53]  Contrary to the District Court's position that JPMorgan's statements form the basis of fraud allegations, Appellants do not attempt to prove the false or misleading nature of those statements.  In fact, JPMorgan's alleged statements are inessential to and have no bearing on Appellants' breach of contract and breach of fiduciary duty claims.  Indeed, Appellants' claims would remain even if the members of the Class never learned of those statements.  *See, supra,* fns. 36-37 (fiduciary duties arise by operation of law due to nature of relationship alleged).  Therefore, Appellants cannot be said to have alleged fraud when neither misstatements nor omissions are required to support their claims.

JPMorgan's alleged misstatements are nonessential to Appellants' breach of contract claim and cannot transform it into a fraud claim.  Appellants plead simply that they and other members of the proposed Class entered into financial services agreements with Appellees, pursuant to which Appellees would provide objective research and analysis, placing their clients in the best investments for their respective risk profiles.  Appellees breached these contracts by not performing the required advisory services, including blindly placing Appellants and other Class members into JPMorgan proprietary funds without proper analysis.  This claim is in no way predicated on misrepresentations.

---

[52] ¶¶ 23; 24; 26.

[53] *Razdan v. Gen. Motors Corp.*, 979 F. Supp. 755, 759 (N.D. Ill. 1997), *aff'd*, 234 F.3d 1273 (7th Cir. 2000).

Likewise, Appellants' breach of fiduciary duty claim does not rise and fall on false statements. Because JPMorgan's fiduciary duties exist as a matter of law, Appellants do not need to establish their allegations concerning JPMorgan's admissions in order to sustain their claim. Instead, JPMorgan's statements were included simply to bolster the allegation that a fiduciary relationship existed, and to demonstrate the scope and extent of the relationship. Even without JPMorgan's alleged misstatements, Appellants successfully plead that Appellees owed fiduciary duties to their clients by virtue of their status as investment advisors and that Appellees breached their fiduciary duties by failing to independently research and investigate securities before placing clients in certain investments.

Had the District Court properly analyzed what Appellants actually alleged – and not what JPMorgan self-servingly claims Appellants alleged in an effort to secure dismissal under SLUSA – it would have found, as have countless other courts, that Appellants' well-pleaded breach of contract and fiduciary duty claims do *not* implicate SLUSA. In *Norman v. Salomon Smith Barney Inc.*, for example, the plaintiff alleged that, as here, the defendant had discretionary investment authority over the accounts at issue, the plaintiff and the class paid annual fees on the accounts, and the defendant had claimed in public advertising and statements to provide individual portfolio management guided by the experience and "breadth and depth" of its research department.[54] The plaintiff alleged that the defendant breached its contractual and fiduciary duties to the plaintiff and the class because the defendant's research department was tainted by conflicts of interest and self-dealing. The court denied defendants' motion to dismiss, finding that plaintiffs' claims did not implicate SLUSA:

> Here, the gravamen of the Complaint is plainly a straightforward breach claim:
> plaintiffs purchased a service (portfolio management) pursuant to a contract, paid

---

[54] 350 F. Supp. 2d 382 (S.D.N.Y. 2004).

the fees for that service under the contract, and now allege that they did not receive the full range of services paid for, and suffered damages as a result. Plaintiffs further allege that, in the course of providing some of the contracted-for services, defendant breached its fiduciary duty to plaintiffs to act in their best interests and not engage in activities that would place its interests in conflict with theirs. ***Regardless of the factual merits of these claims, they are not securities fraud claims, nor claims that depend on establishing material misrepresentations or omissions in connection with the purchase or sale of securities, within the meaning of SLUSA.***[55]

The court also noted that, even if the complaint could have been "read to suggest that [the defendant's] analysts may have made material misstatements or omissions in their analysis of securities," the plaintiff did not allege that he or the class had seen or relied on the research reports.[56]   Instead, the "claim [was] simply that [the defendant] said it would do something in exchange for plaintiffs' fees, and then didn't do what it had promised."[57]   As the *Norman* court explained, "[t]he fact that the actions underlying the alleged breach ***could also form*** the factual predicate for a securities fraud action by different plaintiffs cannot magically transform every dispute between broker-dealers and their customers into a federal securities claim – the mere 'involvement of securities [does] not implicate the anti-fraud provisions of the securities laws.'"[58]

*Freeman Investments, L.P. v. Pacific Life Insurance Co.* is also instructive.[59]   In *Freeman*, the Ninth Circuit overruled a district court dismissal of a breach of contract claim, concluding for reasons similar to those noted by the *Norman* court that it "survives SLUSA." There, the plaintiffs' claim that the defendants "charged them too much for life insurance and, as a result, reduced the value of their investments"[60] included some generalized allegations

---

[55] *Id.* at 387 (emphasis added) (citations omitted).

[56] *Id.*

[57] *Id.*

[58] *Id.* at 387-88 (quoting *Spielman v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 01-cv-3013, 2001 WL 1182927, at *3 (S.D.N.Y. Oct. 9, 2001)) (emphasis added).

[59] 704 F.3d 1110 (9th Cir. 2013).

[60] *Id.* at 1115.

regarding the defendants' "systematic concealment" and "deceitful conduct" which were designed "to generate undeserved revenues."[61]   Despite the fact that some of the plaintiffs' assertions were indicative of a claim for fraud, the Ninth Circuit concluded that the plaintiffs' claim was, at its core, a breach of contract.  As the court explained:

> [W]hile a contract dispute commonly involves a 'disputed truth' about the proper interpretation of the terms of a contract, that does not mean one party omitted a material fact by failing to anticipate, discover and disabuse the other of its contrary interpretation of a term in the contract.  ***Just as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast contract claims as fraud claims by arguing that they "really" involve deception or misrepresentation.***[62]

In holding that the plaintiffs' breach of contract claims were not precluded by SLUSA, the court further explained that the plaintiffs had "allege[d] that their insurer promised one thing and delivered another.  That's a straightforward contract claim that doesn't rest on misrepresentation or fraudulent omission."[63]

This Court should also look to *Stoody-Broser v. Bank of America, N.A.* for guidance. There, the plaintiffs were trust beneficiaries who alleged that the defendants breached their fiduciary duty by blindly investing the plaintiffs' trust assets in the defendants' affiliated mutual funds.[64]   The district court initially dismissed the original complaint without prejudice after

---

[61] *Id.* at 1114-15.

[62] *Id.* at 1115-16 (quoting *Webster v. N.Y. Life Ins. & Annuity Corp.*, 386 F. Supp. 2d 438, 441 (S.D.N.Y. 2005) (emphasis added); citing *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) ("Not every breach of a stock sale agreement adds up to a violation of the securities law."))

[63] *Freeman Invs.*, 704 F.3d at 1118; *see Levinson v. PSCC Servs., Inc.*, No. 09-cv-00269, 2010 WL 5477250, at *10 (D. Conn. Dec. 29, 2010) ("[A] defendant may not recast plaintiff's Complaint as a securities fraud class action so as to have it preempted by SLUSA.  Defendants' interpretation of the Amended Complaint would recast every breach of contract or breach of fiduciary claim into allegations of fraud.  This Court refuses to hold that the Amended Complaint contains a misrepresentation or omission based on essentially an assertion that you have to assume in any lawsuit there's a disputed truth, and if there's a disputed truth, then there is either an untrue statement or there is an omission of material fact.") (internal quotations and citations omitted).

[64] *Stoody-Broser v. Bank of Am., N.A.*, No. 08-cv-02705, 2012 WL 1657187, at *4 (N.D. Cal. May 10, 2012).

finding that the plaintiffs' claims were "infused with both implicit and explicit references to fraud."[65]   However, once the plaintiffs amended their complaint to excise each and every allegation of misstatements or omissions, the district court denied the defendants' motion to dismiss, holding that both the language and the substance of the plaintiffs' claims avoided allegations of untrue statements or substantive omissions; therefore, the amended complaint was beyond SLUSA's scope.[66]   In reaching this conclusion, the district court placed great significance on the fact that the amended complaint's allegations focused on the defendants' wrongful acts as opposed to asserting that a certain inaccurate statement gave rise to liability.[67] Where the original complaint alleged that the plaintiffs were misled about the investment of their trust assets, "the amended complaint allege[d] merely that [the] [d]efendants fail[ed] to act with due care under their fiduciary obligations to do so."[68]

In *In re Charles Schwab Corp. Securities Litigation*, a similar decision was reached based on the gravamen of the plaintiffs' breach of fiduciary duty claims, despite the existence of overt securities fraud allegations.[69]   In that case, the plaintiffs, investors in a short-term, fixed-income mutual fund, sued their brokerage firm, portfolio managers, trustees, and other affiliates, alleging that the defendants violated federal securities laws and state laws by misrepresenting the mutual fund's risk profile and by improperly changing the fund's investment policies.   Although the operative complaint contained explicit allegations of fraud, the district court refused to dismiss the state law claims under SLUSA on the grounds that they, at their core, were not predicated on

---

[65] *Id*. at *1.

[66] *Id.* at *4.

[67] *Id.*

[68] *Id.*

[69] 257 F.R.D. 534 (N.D. Cal. 2009).

the misrepresentations alleged.[70]  The court emphasized that in order to trigger preemption under

SLUSA, allegations of misrepresentations must "give[ ] rise to liability" instead of serving as an

"extraneous detail."[71]

Here, as in *Norman*, *Freeman*, *Stoody-Broser* and *Charles Schwab*, both in form and in

substance, Appellants assert breach of contract and breach of fiduciary duty claims—not fraud

claims.  Following the rationale in *Stoody-Broser*, the essence of Appellants' claims cannot be

fraud because JPMorgan's liability arises from their failure to fulfill contractual and fiduciary

duties and not as a result of issuing misleading statements.  The mere fact that the Amended

Complaint references certain statements made by JPMorgan concerning their duties to

Appellants does not – and should not – transform Appellants' straightforward breach of contract

and fiduciary duty claims into fraud claims.  None of Appellants' claims depend the falsity of

these statements; nor do Appellants contend that they relied upon these statements in making

investment decisions.  As the *In re Charles Schwab Corp. Securities Litigation* court pointed out,

claims that are not predicated upon misstatements or omissions do not allege fraud and cannot

give rise to SLUSA preemption.  Accordingly, the District Court erred in adopting JPMorgan's

self-serving reformulation of Appellants' claims in order to conclude that that SLUSA barred the

Amended Complaint.[72]

---

[70] *Id.* at 551.

[71] *Id.*

[72]  *See Drulias v. ADE Corp.*, No. 06-cv-11033, 2006 WL 1766502, at *2 (D. Mass. June 26, 2006) ("While the Supreme Court recently embraced a broad interpretation of SLUSA, it did not suggest that all claims of breach of fiduciary duty in connection with the purchase or sale of securities are sucked into the SLUSA sluice….  As such, SLUSA does not apply to the breach of fiduciary claim based on conflict of interest.") (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006)); *Burns v. Prudential Sec. Inc.*, 218 F. Supp. 2d 911, 915 (N.D. Ohio 2002) (rejecting argument that SLUSA applied to breach of fiduciary duty claim regarding unauthorized trades made without investors' approval and where investors were not thereafter "inform[ed] accurately and fully as to material matters").

## 2.    The Authorities Relied On By The District Court Do Not "Require Dismissal Of This Case" And Are Otherwise Distinguishable

The cases upon which the District Court relied in finding that SLUSA barred Appellants' claims are readily distinguishable.    In *Brown v. Calamos*,[73] the plaintiffs alleged an actual misrepresentation in the form of a public statement made by the defendants, and asserted that the defendants omitted to disclose certain conflicts of interests.    Because of these obvious allegations of misstatements and omissions, this Court held that the plaintiffs' claims "rest on" allegations of fraud.[74]    To the contrary, the claims in the Amended Complaint are predicated upon JPMorgan's failure to fulfill their fiduciary and contractual obligations and neither rests on any misrepresentations or omissions by, nor any allegation of fraud against, Appellees.    Appellants make no explicit (or implicit) allegations of misrepresentations, omissions or fraud.    Nor does Appellants' breach of fiduciary duty claim depend on "proof" that the public statements referenced in the Complaint were false and misleading, because the fiduciary obligations of JPMorgan's investment advisors *arose by operation of law*.    Under these circumstances, no rational reading of the Amended Complaint can support the conclusion that what Appellants are "really challenging" is fraud.

The District Court's reliance on *Jorling v. Anthem, Inc.* is equally misplaced.[75]    There, plaintiffs alleged that the defendant breached its contractual and fiduciary obligations when it failed to exercise proper care in the pricing of its initial public offering.[76]    On a motion for summary judgment, the District Court dismissed the operative complaint pursuant to SLUSA because it relied heavily upon the defendant's failure to disclose key facts.    Appellants' claims,

---

[73] 664 F.3d 123 (7th Cir. 2011).

[74] *Id.* at 130-31.

[75] 836 F. Supp. 2d 821 (S.D. Ind. 2011).

[76] *Id.* at 829.

in stark contrast, are not based on any alleged false statements or omissions.  *Jorling,* accordingly, is inapposite.

*Felton v. Morgan Stanley Dean Witter & Co.* is also distinguishable.[77]  In *Felton,* the plaintiffs alleged that they agreed to purchase investment services from the defendant pursuant to contracts that were subject to federal and state law, as well as the rules and customs of the New York Stock Exchange, the National Association of Securities Dealers, and other industry self-regulatory organizations and exchanges.[78]  One of the rules upon which the plaintiff's breach of contract claim was based, prohibited the defendant from omitting material facts if the omission of that fact would cause the communication to be misleading.[79]  The plaintiffs alleged that the defendant violated this provision by failing to disclose that its research was compromised by conflicts of interest.  *Felton* is inapposite for the same reason as *Jorling.*  Unlike the plaintiffs in those cases, Appellants do not allege that Appellees' financial advisors made any false statements or omitted to disclose any material information.  Instead, Appellants allege that Appellees failed to perform certain services that they were required to perform, under both their contracts with Appellants and their fiduciary duties to Appellants.

## III.  THE DISTRICT COURT ERRED IN HOLDING THAT APPELLEES' ALLEGED WRONGFUL ACTS WERE "IN CONNECTION WITH" THE PURCHASE OR SALE OF A SECURITY

The District Court's ruling that JPMorgan's wrongful conduct was accomplished "in connection with" the sale of covered securities is equally erroneous.[80]  In finding that Appellants' claims satisfied SLUSA's "in connection with" requirement, the Court relied on *Dabit*.  There, the Supreme Court adopted a broad reading of the "in connection with"

---

[77] 429 F. Supp. 2d 684 (S.D.N.Y. 2006).

[78] *Id.* at 687.

[79] *Id.* at 693.

[80] A-9.

-22-

requirement holding that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else."[81]  Notwithstanding *Dabit's* liberal interpretation of the "in connection with" requirement, there at least must be a tangential relationship between the challenged conduct and a securities transaction, and the Seventh Circuit in particular requires a close nexus between the alleged fraud and the purchase or sale of a "covered security."

In *Gavin v. AT&T Corp.*, the Seventh Circuit reaffirmed that, even post-*Dabit*, "'the 'connection' requirement must be taken seriously'" and categorically rejected the view that "a mere 'but for' cause linking a securities transaction … to a subsequent injury" is sufficient to satisfy SLUSA's "in connection with" requirement.[82]  The court explained, "[o]f course there is a literal sense in which anything that happens that would not have happened but for some prior event is connected to that event," but found that to consider the fraud in question as "in connection with" the purchase or sale of covered securities would be "in the same sense the fraud is connected to the Big Bang."[83]  Illustrating the potential for absurd results in applying *Dabit* too liberally, the court reminded litigants that SLUSA's scope is broad but not unlimited, "[o]therwise SLUSA would apply to a class action by shareholders who suffered paper cuts when they opened the letters informing them of their rights under the merger."[84]

---

[81] *Dabit*, 547 U.S. at 85.

[82] *Gavin*, 464 F.3d at 640, 639.

[83] *Id.* at 639.

[84] *Id.* at 639; *see LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 272-73 (S.D.N.Y. 2007) (district court cautioned against overreaching interpretations of the "in connection with" requirement); *Roland v. Green*, 675 F.3d 503, 519-20 (5th Cir. 2012) (adopting the Ninth Circuit test and holding that "'a misrepresentation is 'in connection with' the purchase or sale of securities if there is a relationship in which the fraud and the stock sale coincide or are *more than tangentially related*'") (emphasis in original), *cert. granted, Chadbourne & Parke LLP v. Troice*, 133 S. Ct. 977 (2013).

By way of analogy in *Gavin*, Judge Posner posited that the mere fact that the omission at issue in that case was made following the disposition through merger of "covered securities" was nonessential to the plaintiffs' claim, and thus failed to satisfy SLUSA's "in connection with" inquiry. He compared the defendants' attempt to charge plaintiff-shareholders a fee for exchanging their shares in the merged entity in *Gavin* to a run-of-the-mill fraud where someone is invited "to pay $7 for Linux software that he could download for free from the Internet."[85] Neither wrongful conduct was essential to the sale of the "covered securities;" therefore, both examples are outside of SLUSA's scope.[86]

Additionally, in *Strigliabotti v. Franklin Resources, Inc.*,[87] the court found that claims by investors for over-payment of various fees associated with their mutual funds were not barred by SLUSA because the wrongful conduct did not satisfy the "in connection with" requirement. The Court held that the wrongdoing "must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves," and more than "some tangential relation to the securities transaction."[88]

---

[85] *Gavin*, 464 F.3d at 640.

[86] The District Court dismisses Appellants' reliance on *Gavin*, but fails to provide anything more than a conclusory sentence in support of its stance. A-10 ("[u]nlike *Gavin*, here the alleged fraud directly relates to the sale of proprietary mutual funds and satisfies SLUSA's 'in connection' requirement"). The court's inability to sufficiently support its opinion underscores the weakness of its position.

[87] 398 F. Supp. 2d 1094 (N.D. Cal. 2005).

[88] *Id.* at 1100; *see also Cheatham v. Ky. Lottery Corp.*, No. 07-cv-391, 2008 U.S. Dist. LEXIS 1391, at *6-8 (W.D. Ky. Jan. 8, 2008) (noting that "SLUSA's scope is … not unlimited," holding that defendants' alleged misrepresentations and omissions concerning returns under the KLC pension plan had nothing to do with the trading of any particular security but related to the relationship between the KLC plan and the employees); *French v. First Union Sec. Inc.*, 209 F. Supp. 2d 818, 824 (M.D. Tenn. 2002) ("in order for a breach to be 'in connection with' securities sales, the breach of fiduciary duty must do more than simply implicate securities[; r]ather, there must be a showing of a nexus between the fraud and a securities transaction."); *McPhatter v. Sweitzer*, No. 03-cv-00170, 2003 U.S. Dist. LEXIS 15878, at *10 (M.D.N.C. Sept. 8, 2003) (denying SLUSA motion to dismiss where "[t]he involvement of securities as alleged in Plaintiffs' complaint [was] merely tangential").

The fact that Appellants' claims are not challenges to conduct "in connection with" the purchase or sale of a security is underscored by the fact that the misconduct they challenge (*i.e.*, the failure to perform contracted-for services) and the harm they suffered (*i.e.*, paying fees for services that were not provided) are not dependent on Appellants' having invested in ***any securities at all***.  Even if, for example, a member of the proposed class did not transact in any security at all during a given year of the class period, that class member would still have been harmed by Appellee's failure to perform contracted-for services, because that class member still would have paid fees and received nothing in return.  Appellants' allegations that JPMorgan breached contractual and fiduciary obligations by failing to conduct the requisite research and due diligence would have the same force and implications if Appellees caused Appellants to be invested in real estate or cattle or nothing at all.  Accordingly, the District Court was wrong to rely on Appellants' description of the proposed class,[89] as support for its conclusion that the wrongdoing complained of occurred "in connection with" the sale or purchase of covered securities.

Moreover, Appellants' claims are based upon Appellees' failure to satisfy contractual and fiduciary obligations related to the use of the financial advisors' discretionary investment authority.  The statements that the District Court identifies as forming the basis of Appellants' supposed fraud claim do not occur "in connection with" the sale or purchase of covered securities.  Instead, as explained above, they are merely acknowledgements of the level of care that JPMorgan's financial advisors owed to the Class in exercising their discretionary investment authority.  To the extent Class members were placed in JPMorgan proprietary products, it was

---

[89]  A-9-A-10 ("The heart of [Appellants'] Amended Complaint relates to the sale of [Appellees'] proprietary mutual funds, which hold securities…Indeed, [Appellants] have defined their class brought on behalf of all financial advisory clients of [Appellees]…whose funds were placed in [Appellees'] and/or their affiliates' proprietary mutual funds.") (internal quotations omitted).

the financial advisors who did so using their discretionary authority over the Class members'
funds.  And those actions occurred independently of any statements referenced in the Amended
Complaint.  There is simply no reasonable causal link between any such statements and the
financial advisors' use of their discretionary investment authority.[90]

## CONCLUSION

Appellants respectfully request that the judgment of dismissal be reversed and the case be
reinstated.

---

[90] Indeed, it is likely that many Class members determined to give investment authority to Appellees' well
before any such statements.  *See Gavin,* 464 F.3d at 638 (recognizing that fraud could not be said to have
occurred "in connection with" the purchase or sale of a covered security because the omission on which it
was based occurred months after the transaction at issue).

Dated:  September 23, 2013

Paul E. Slater
Scott F. Hessell
**SPERLING & SLATER, PC**
55 West Monroe Street
Suite 3200
Chicago, IL 60603
(312) 641-3200

Jacob H. Zamansky
Edward H. Glenn, Jr.
**ZAMANSKY LLC**
50 Broadway
32nd Floor
New York, NY 10004
(212) 742-1414

Joseph H. Meltzer
Tyler S. Graden
**KESSLER TOPAZ MELTZER
AND CHECK LLP**
280 King of Prussia Road
Radnor, PA 19807
(610) 667-7706

/s/ Daniel L. Berger
Jay W. Eisenhofer
Daniel L. Berger
Jeff A. Almeida
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY  10017
Telephone: (646) 722-8500
*Attorneys for Plaintiffs-Appellants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 23, 2013 the attached Appellants' Brief and Appendix was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit via the CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Daniel L. Berger
Daniel L. Berger

## CIRCUIT RULE 30(D) STATEMENT

I, Daniel L. Berger, certify that the Appendix to the Brief of Plaintiffs-Appellant contains all the

material required by Circuit Rule 30(a)-(b).


                                                    /s/ Daniel L. Berger
                                                    Daniel L. Berger

September 23, 2013

**APPENDIX**

i

# Table of Contents

**Page**

Judgment of the United States District Court for the Northern
   District of Illinois, Eastern Division, dated June 26, 2013 .....   A-1

Memorandum Opinion and Order of the Honorable John W.
   Darrah, dated June 26, 2013....................................................   A-2

AO 450 (Rev. 11/11)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois, Eastern Division

| | | |
|---|---|---|
| Patricia Holtz et al | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    12 C 7080 |
| JP Morgan Chase & Co. et al | ) | |
| *Defendant* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

❏ the plaintiff *(name)*                                                                  recover from the
defendant *(name)*                                                                              the amount of
                                                              dollars ($                    ), which includes prejudgment
interest at the rate of                   %, plus post judgment interest at the rate                   % per annum, along with costs.

❏ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)*
                                        recover costs from the plaintiff *(name)*

X   other:    For the reasons stated in the attached memorandum opinion and order, defendants' motion to
dismiss plaintiffs' amended complaint is granted [46]. The amended complaint is dismissed with prejudice.
Civil case closed.                                                                                                                        .

This action was *(check one)*:

❏ tried by a jury with Judge                                                              presiding, and the jury has
rendered a verdict.

❏ tried by Judge                                                              without a jury and the above decision
was reached.

X   decided by Judge      Darrah                                              on a motion to    dismiss.

                                                                                                                                        .

Date:        Jun 26, 2013                              *Thomas G. Bruton, CLERK OF COURT*

                                                        Melanie A. Foster
                                                        _____
                                                        *Signature of Clerk or Deputy Clerk*

A-1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA HOLTZ, AUNT MARLENE FOUNDATION, and STEVEN GREENSPON, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 12-cv-7080 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| J.P. MORGAN SECURITIES LLC; JPMORGAN CHASE BANK, N.A.; JPMORGAN CHASE & CO.; and J.P. MORGAN INVESTMENT MANAGEMENT INC., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Patricia Holtz, Aunt Marlene Foundation, and Steven Greenspon ("Plaintiffs"), individually and on behalf of all others similarly situated, have filed a class action complaint against Defendants, J.P. Morgan Securities LLC; JPMorgan Chase Bank, N.A.; JPMorgan Chase & Co.; and J.P. Morgan Investment Management Inc., asserting claims for breach of contract and good faith and fair dealing (Count I), breach of fiduciary duty (Count II), and unjust enrichment (Count III). Defendants have filed a Motion to Dismiss Plaintiffs' Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**BACKGROUND**

The following facts are drawn from Plaintiffs' Amended Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Plaintiffs purport to bring a class action on behalf of all financial advisory clients of Defendants, from January 1, 2008 through the present, whose assets were

placed in Defendants' and/or their affiliates' proprietary mutual funds and who were charged

investment management fees by Defendants.  (Am. Compl. ¶ 1.)

 According to Plaintiffs, Defendants pushed and incentivized their financial advisors to

put Defendants' own financial interests ahead of those of their clients.  (*Id.* ¶ 3.)  In particular,

Defendants required their financial advisors to strongly push and sell Defendants' own

proprietary mutual funds and investments, as opposed to those funds and investments managed

by third parties.  (*Id.*)  As a result of these practices, Defendants were able to substantially grow

their assets and collect management fees, including the fees from JPMorgan-affiliated funds and

investments themselves, as well as the fees from JPMorgan-affiliated entities that managed and

provided services to the JPMorgan funds and investments.  (*Id.*)

 Defendants utilized a generous bonus structure to incentivize and pressure their financial

advisors to steer or "switch" clients into JPMorgan proprietary funds and investments.  (*Id.* ¶¶ 5,

7.)  These switches were done for no other reason than to maximize revenues for Defendants'

self-interested reasons and were contrary to client interests and not the result of research and

analysis performed by the financial advisors.  (*Id.* ¶ 7.)  In contrast, financial advisors were not

rewarded with high bonuses based on client performance or for placing clients in non-JPMorgan-

sponsored investments.  (*Id.* ¶ 7.)

 Plaintiffs aver that Defendants breached contractual and fiduciary duties to act in their

clients' best interests.  Plaintiffs point to Defendants' statements about their fiduciary and

contractual duties to clients that appear on JPMorgan's website and also in documents filed with

the Securities and Exchange Commission (the "SEC"), as admissions by the Defendants

regarding the nature of Defendants' obligations.  Plaintiffs specifically disclaim that their

2

A-3

allegations are not to be construed as allegations of fraud, misrepresentation or material

omission.  (*See* Am. Compl. ¶¶ 1, 23-26, 35-40; Pl.'s Resp. Br. at pp. 8-9.)

Defendants have moved to dismiss Plaintiffs' Amended Complaint for three reasons.

First, Defendants contend that Plaintiffs' claims are covered by the Securities Litigation Uniform

Standards Act of 1998 ("SLUSA") and, therefore, subject to dismissal pursuant to Rule 12(b)(6).

Second, Defendants contend that the Amended Complaint should be dismissed for failure to state

a claim under Rule 12(b)(6).  Finally, Defendants argue that Plaintiffs' claims against

Defendants JPMorgan Chase & Co. and J.P. Morgan Investment Management Inc. should be

dismissed for lack of standing pursuant to Rule 12(b)(1).

## LEGAL STANDARD

To properly assert a claim in a complaint, the plaintiff must present "a short and plain

statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief

sought."  Fed.R.Civ.P. 8.  Rule 8 "does not require 'detailed factual allegations,' but it demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*,

129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  While a court is to accept all allegations contained in a complaint as true, this principle

does not extend to legal conclusions.  *Iqbal*, 129 S.Ct. at 1949.

The Federal Rules further permit a defendant to move to dismiss a claim if the plaintiff

fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  To defeat a

motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a

claim for relief that is "plausible on its face."  *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S.

at 570).  "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations."  *Iqbal*, 129 S.Ct. at 1950.  A threadbare statement of a claim

3

supported by a conclusory statement is insufficient. *Iqbal*, 129 U.S. at 1949 (citing *Twombly*, 550 U.S. at 555).

Federal Rule 12(b)(1) also permits a defendant to move for dismissal of a claim where there is a lack of subject-matter jurisdiction, including whether the plaintiff has standing. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). As with motions to dismiss under Rule 12(b)(6), all material allegations of the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). However, the plaintiff bears the burden of showing that it meets all the elements necessary for standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## ANALYSIS

### *Defendants' Motion to Dismiss Under SLUSA*

SLUSA precludes a "covered class action" that is based on state law and that alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 74 (2006) (quoting 15 U.S.C. § 78bb(f)(1)(A))). In *Dabit*, 547 U.S. at 86-87, the Supreme Court held that SLUSA's "in connection with the purchase or sale of securities" requirement should be construed broadly. A lawsuit precluded by SLUSA cannot be brought in state or federal court. *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 (2006). Under Seventh Circuit law, the proper remedy for a suit barred by SLUSA is dismissal with prejudice. *Brown v. Calamos*, 664 F.3d 123, 128 (7th Cir. 2011) ("[W]hen SLUSA is a bar, it operates as an affirmative defense, which is a defense on the merits, not a jurisdictional defense.").

4

A-5

Defendants argue that Plaintiffs have alleged claims that are essentially fraud in connection with the sale and purchase of securities and that, as such, those claims are precluded by SLUSA.  Plaintiffs seemingly do not dispute that their Amended Complaint asserts a "covered class action" under SLUSA, but unsurprisingly, strenuously object to the characterization of their claims as fraud.  Plaintiffs make two arguments: (1) that the Amended Complaint asserts state law claims for breaches of contractual and fiduciary duties and does not allege misrepresentations or omissions of material fact to support a fraud claim; and (2) that the alleged wrongful acts were not done "in connection" with the purchase or sale of a security.

<u>Material Misrepresentations or Omissions</u>

When evaluating whether SLUSA applies, "the analysis must focus on the *substantive concepts* inherent in the complaint's allegations – not merely the words used."  *Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 834 (S.D. Ind. 2011) (emphasis in original) (citing *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir. 2009), and *Brown*, 664 F.3d at 128-29).  SLUSA may not be eluded simply through "artful pleading" that omits words such as fraud or misrepresentation but still relies on those concepts.  *Segal*, 581 F.3d at 311; *see also Brown*, 664 F.3d at 130; *Richek v. Bank of Am., N.A.*, No. 10-cv-6779, 2011 WL 3421512, at *3 (N.D. Ill. Aug. 4, 2011) ("when analyzing SLUSA preclusion, courts are guided by substance rather than the form of a claim.") (internal citations and quotations omitted).  Therefore, Plaintiffs' disclaimer of fraud alone is not sufficient to avoid SLUSA, and the underlying allegations must be evaluated as to whether SLUSA applies.

In *Brown*, 664 F.3d 123, the Seventh Circuit affirmed the dismissal under SLUSA of a class action complaint that alleged that company officials breached their fiduciary duties and were unjustly enriched when the company redeemed certain preferred stocks in a way that

5

A-6

benefitted its investment banks and brokers to the detriment of its common shareholders.  After surveying the standards used by the Sixth, Third and Ninth Circuits, the *Brown* court stated that a suit "is barred by SLUSA only if the allegations of the complaint make it likely that an issue of fraud will arise in the course of the litigation – as in this case." *Id.* at 128-29.  The Seventh Circuit elaborated, holding that "the allegations of fraud would be difficult and maybe impossible to disentangle from the charge of breach of the duty of loyalty that the defendants owed their investors." *Id.*  at 129.

In *Jorling*, 836 F. Supp. 2d 831, the class action plaintiff, a former mutual member of the defendant insurance company, alleged that the defendant failed to disclose key information during its demutualization process whereby plaintiff chose stock over cash in exchange for his ownership interests.  The district court, following the standard articulated in *Brown*, held that SLUSA barred the plaintiff's complaint because it would be impossible to "disentangle" the securities fraud issue from the plaintiff's state law claims involving fiduciary failure and breach of contract.  *Id.* at 835.  In so holding, the court further refused to elevate "form over substance" simply because plaintiff "carefully blotted out certain allegations" relating to fraud.  *Id.*

The case of *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684 (S.D.N.Y. 2006) is also instructive.  In that case, the plaintiffs, investors with Morgan Stanley brokerage accounts, alleged that Morgan Stanley breached client agreements when it "failed to provide objective research and recommendations." *Id.* at 688.  Morgan Stanley allegedly made biased recommendations based on its existing or desired investment banking deals, which benefitted Morgan Stanley.  *Id.* at 693.  The district court concluded, "without difficulty," that the plaintiffs' claim was a "securities fraud wolf dressed up in a breach of contract sheep's clothing."

A-7

*Id.* The court thus rejected the plaintiffs' "artful pleading" and held that the claims were

preempted by SLUSA. *Id.* at 694-95.[1]

Here, Plaintiffs have alleged that Defendants publicly represented that they were acting in

their clients' best interests, when, in fact, Defendants were acting in their own self-interest to the

detriment of their clients. Defendants stated on their websites that "our clients come first," "we

work to understand our clients' needs [and] offer informed advice," and "[w]e will work closely

with you to understand your unique needs and create solutions designed to help you meet your

financial goals." (Am. Compl. ¶¶ 23, 24, 26.) Furthermore, Defendants, in documents filed with

the SEC, stated that "JPMorgan funds are evaluated on the same criteria as unaffiliated funds."

(Comp. ¶ 37.) However, according to Plaintiffs, Defendants did not perform these services.

Instead, Defendants financially incentivized their financial advisors to cease performing honest

and competent account management services" and instructed their financial advisors "not to

bother conducting the research and analysis necessary for client investments." Furthermore,

Defendants encouraged their advisors "to sell this or that JPM proprietary fund above all else"

and subjected them to "disciplinary action" if they failed to do so. (Am. Compl. ¶¶ 49, 54, 58,

60, 61.)

---

[1] Plaintiffs rely heavily on the S.D.N.Y district court case, *Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382 (S.D.N.Y. 2004), in which the court held that the plaintiff investor's action against his investment advisor for breach of contract and fiduciary duty was not preempted by SLUSA. However, *Norman* is not persuasive for several reasons. It predates the Supreme Court's decision *Dabit*, 547 U.S. at 86-87, in which the Supreme Court held that SLUSA's "in connection" requirement should be interpreted broadly. Furthermore, it predates the Seventh Circuit's decision in *Brown*, 664 F.3d at 129, which is controlling in this court. Likewise, it predates another S.D.N.Y. district court decision, *Felton*, 429 F. Supp. 2d 684, which had similar facts to *Norman* but nonetheless found that SLUSA precluded the plaintiffs' claims. Other courts have similarly distinguished *Norman* and found it unpersuasive. *See, e.g., Dommert v. Raymond James Financial Servs.*, No. 1:06-CV-102, 2007 1018234 (E.D. Tex. Mar. 29, 2007); *Segal v. Fifth Third Bank, N.A.*, No. 1:07-cv-348, 2008 WL 812990 (S.D. Ohio Mar. 25, 2008).

Although, as mentioned above, Plaintiffs attempt to limit the nature of these allegations to admissions by the Defendants regarding their obligations to Plaintiffs, the substance of Plaintiffs' allegations, when considered in their entirety, amounts to a claim of a fraudulent scheme by Defendants to sell Defendants' own proprietary mutual funds at the expense of their financial advisory clients. Plaintiffs' Amended Complaint is replete with allegations that Defendants misrepresented its services for its own financial gain. The allegations of Plaintiffs' Amended Complaint "make it likely that an issue of fraud will arise in the course of the litigation." *Brown*, 664 F.3d at 128-29. As in *Brown*, 664 F.3d at 129, and *Jorling*, 836 F. Supp. 2d at 835, it will "be difficult and maybe impossible to disentangle" the fraud from Plaintiffs' contractual and fiduciary duty claims. Consequently, despite Plaintiffs' artful pleading, the Amended Complaint presents a claim for fraud.

<u>In Connection with Securities</u>

Plaintiffs next argue that the alleged wrongful acts were not done "in connection" with the purchase or sale of a security. As mentioned above, the Supreme Court announced in *Dabit*, 547 U.S. at 86-87, that SLUSA's "in connection with the purchase or sale of securities" requirement must be subjected to a broad construction. The Supreme Court explained that "it is enough that the fraud alleged 'coincide' with a securities transaction —whether by the plaintiff or by someone else." *Id.* at 86 (internal citations omitted).

The heart of Plaintiffs' Amended Complaint relates to the sale of Defendants' proprietary mutual funds, which hold securities. *See, e.g., Jones v. Harris Associates L.P.*, 130 S.Ct. 1418, 1422 (2010) ("A mutual fund is a pool of assets, consisting primarily of [a] portfolio [of] securities, and belonging to the individual investors holding shares in the fund.") (internal quotations and citations omitted). Indeed, Plaintiffs have defined their class brought on behalf of

8

A-9

"all financial advisory clients of Defendants . . . whose funds were placed in Defendants' and/or their affiliates' proprietary mutual funds."  (Am. Compl. ¶ 1.)

Although Plaintiffs rely on *Gavin v. AT&T Corp.*, 464 F.3d 634, 638 (7th Cir. 2006), that case does not support their argument.  In *Gavin*, the Seventh Circuit held that the securities transaction, which took place months before the fraudulent omission, was not sufficiently related to the fraud so as to invoke SLUSA. *Id.* at 638-39.  Unlike *Gavin*, here the alleged fraud directly relates to the sale of proprietary mutual funds and satisfies SLUSA's "in connection" requirement.  *See Dabit*, 547 U.S. at 86-87.

Plaintiffs' Amended Complaint is preempted by SLUSA and, therefore, must be dismissed with prejudice.  *See Brown*, 664 F.3d at 128.[2]

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [46] is granted.  The Amended Complaint is dismissed with prejudice.

Date:  _June 26, 2013_____     _____

JOHN W. DARRAH
United States District Court Judge

---

[2] Since SLUSA preempts the Amended Complaint, Defendants' other bases for dismissal do not need to be addressed.

9

A-10