No. 13-2609

# United States Court of Appeals
## for the
# Seventh Circuit



PATRICIA HOLTZ, *et al.*,

*Plaintiffs-Appellants,*

– v. –

J.P. MORGAN CHASE BANK, N.A., *et al.*,

*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
CASE NO. 1:12-CV-07080
THE HONORABLE JUDGE JOHN W. DARRAH

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

PAUL E. SLATER (ARDC 2630567)
SCOTT F. HESSELL (ARDC 6275119)
MATHEW T. SLATER (ARDC 6287417)
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Tel.: (312) 641-3200
Fax: (312) 641-6492

JOSEPH H. MELTZER
SHANNON O. BRADEN
TYLER S. GRADEN
KESSLER TOPAZ MELTZER
    AND CHECK LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056

JAY W. EISENHOFER
DANIEL L. BERGER
JEFF A. ALMEIDA
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, New York 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501

JACOB H. ZAMANSKY
EDWARD H. GLENN, JR.
ZAMANSKY LLC
50 Broadway, 32nd Floor
New York, New York 10004
Tel.: (212) 742-1414
Fax: (212) 742-1177

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .......................................................................... ii

PRELIMINARY STATEMENT .....................................................................1

ARGUMENT .................................................................................................2

I. THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT
THE AMENDED COMPLAINT IS BARRED BY SLUSA ............................ 2

    A.    THE DISTRICT COURT ERRED BY MISCONSTRUING OR REWRITING THE
AMENDED COMPLAINT TO FIND ALLEGATIONS OF MISREPRESENTATIONS,
OMISSIONS, OR A SCHEME TO DEFRAUD .................................................. 3

    B.    THE DISTRICT COURT'S RELIANCE ON *BROWN V. CALAMOS* IS MISPLACED
GIVEN THE ALLEGATIONS OF THE AMENDED COMPLAINT ....................... 7

    C.    THE AMENDED COMPLAINT DOES NOT CHALLENGE CONDUCT
"IN CONNECTION WITH" THE PURCHASE OR SALE OF A COVERED
SECURITY ................................................................................................ 10

II. THE AMENDED COMPLAINT ADEQUATELY STATES CLAIMS
FOR RELIEF ................................................................................................ 10

    A.    THE AMENDED COMPLAINT STATES A CLAIM FOR BREACH
OF CONTRACT ........................................................................................ 11

    B.    THE AMENDED COMPLAINT STATES A CLAIM FOR BREACH OF
FIDUCIARY DUTY .................................................................................... 13

        1.    Appellants' Claim for Breach of Fiduciary Duty is Not
Duplicative of Their Claim for Breach of Contract .................................. 13

        2.    The Amended Complaint Adequately Pleads a Claim for
Breach of Fiduciary Duty .......................................................................... 14

    C.    THE AMENDED COMPLAINT STATES CLAIMS FOR BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
AND FOR UNJUST ENRICHMENT .............................................................. 15

III. APPELLANTS HAVE STANDING TO STATE, AND HAVE STATED,
CLAIMS AGAINST JPMORGAN CHASE AND JPMIM ............................ 16

CONCLUSION .............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amato v. Creative Confections Concepts, Inc.*,
 No. 98-cv-567, 1999 WL 184169 (N.D. Ill. Mar. 29, 1999) ....................................................5

*Atmosphere Scis., LLC v. Schneider Advanced Techs., Inc.*,
 No. 12-cv-3223, 2012 WL 4240759 (S.D.N.Y. Sept. 19, 2012), *vacated by order*,
 2013 WL 1719174 (S.D.N.Y. Apr. 16, 2013)................................................................14

*Barbara v. MarineMax, Inc.*,
 No. 12-cv-368, 2012 WL 6025604 (E.D.N.Y. Dec. 4, 2012)................................................16

*Bridgeway Corp. v. Citibank, N.A.*,
 132 F. Supp. 2d 297 (S.D.N.Y. 2001)..............................................................................11, 12

*Brown v. Calamos*,
 664 F.3d 123 (7th Cir. 2011) ...........................................................................................7, 8, 9

*Bullmore v. Banc of Am. Sec., LLC*,
 485 F. Supp. 2d 464 (S.D.N.Y. 2007)..............................................................................13, 14

*Bullmore v. Ernst & Young Cayman Islands*,
 45 A.D.3d 461 (N.Y. App. Div. 2007) ...................................................................................13

*Citi Mgmt. Grp., Ltd. v. Highbridge House Ogden, LLC*,
 45 A.D.3d 487 (N.Y. App. Div. 2007) ...................................................................................16

*Consolidation Servs., Inc. v. KeyBank Nat'l Ass'n*,
 185 F.3d 817 (7th Cir. 1999) ...................................................................................................5

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,
 No. 04-cv-2867, 2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006)........................................11, 12

*Daniels v. Morgan Asset Mgmt., Inc.*,
 497 F. App'x 548 (6th Cir. 2012) ............................................................................................9

*Designers N. Carpet, Inc. v. Mohawk Indus., Inc.*,
 153 F. Supp. 2d 193 (E.D.N.Y. 2001) ...................................................................................12

*Dimsey v. Bank of N.Y.*,
 14 Misc. 3d 1205(A), (N.Y. Sup. Ct. 2006) ...........................................................................13

*Dudley v. Putnam Int'l Equity Fund*,
 No. 10-cv-328 GPM, 2010 WL 1838255 (S.D. Ill. May 5, 2010)............................................9

*Fantozzi v. Axsys Techs., Inc.*,
   No. 07-cv-2667, 2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008).................................15

*Gavin v. AT&T Corp.*,
   464 F.3d 634 (7th Cir. 2006) .................................................................................10

*Goodman Mfg. Co. L.P. v. Raytheon Co.*,
   No. 98-cv-2774, 1999 WL 681382 (S.D.N.Y. Aug. 31, 1999).................................12

*Hamlin Beach Camping, Catering, & Concessions Corp. v. N.Y.*,
   303 A.D.2d 849 (N.Y. App. Div. 2003) ...................................................................17

*Havoco of Am., Ltd. v. Hilco, Inc.*,
   731 F.2d 1282 (7th Cir. 1984) .................................................................................5

*Kutten v. Bank of Am., N.A.*,
   530 F.3d 669 (8th Cir. 2008) ....................................................................................9

*Labajo v. Best Buy Stores, L.P.*,
   478 F. Supp. 2d 523 (S.D.N.Y. 2007).......................................................................15

*Linares v. Richards*,
   No. 08-cv-3243, 2009 WL 2386083 (E.D.N.Y. Aug. 3, 2009) ...............................15

*Mandelblatt v. Devon Stores*,
   132 A.D.2d 162 (N.Y. App. Div. 1987) ...................................................................13

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006)...............................................................................................2, 9

*Mervyn v. Nelson Westerberg, Inc.*,
   No. 11-cv-6594, 2012 WL 6568338 (N.D. Ill. Dec. 17, 2012).................................13

*Moscato v. Tie Techs. Inc.*,
   No. 04-cv-2487, 2005 WL 146806 (S.D.N.Y. Jan. 21, 2005) ..................................14

*Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*,
   273 F. Supp. 2d 436 (S.D.N.Y. 2003).......................................................................15

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*,
   102 F.3d 660 (2d Cir. 1996).....................................................................................15

*Novus Partners, Inc. v. Vainchenker*,
   938 N.Y.S.2d 228 (N.Y. Sup. Ct. 2011) ..................................................................12

*Rasmussen v. A.C.T. Envtl. Servs. Inc.*,
   292 A.D.2d 710 (N.Y. App. Div. 2002) .....................................................................3

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  168 F. Supp. 2d 1352 (M.D. Fla. 2001) ................................................................. 9

*Rowinski v. Salomon Smith Barney Inc.*,
  398 F.3d 294 (3d Cir. 2005) ............................................................................... 9

*Scalp & Blade, Inc. v. Advest, Inc.*,
  309 A.D. 2d 219 (N.Y. App. Div. 2003) ............................................................ 14

*Segal v. Fifth Third Bank, N.A.*,
  581 F.3d 305 (6th Cir. 2009) .............................................................................. 9

*Sergeants Benevolent Ass'n Annuity Fund v. Renck*,
  19 A.D.3d 107 (N.Y. App. Div. 2005) ................................................................ 17

*Tuttle v. Sky Bell Asset Mgmt., LLC*,
  No. 10-cv-03588 WHA, 2010 WL 4807093 (N.D. Cal. Nov. 19, 2010) .................. 9

## OTHER AUTHORITIES

15 U.S.C. § 77(p) .......................................................................................................... 1

15 U.S.C. § 78(bb)(f) .................................................................................................... 1

FED. R. CIV. P. 8 ......................................................................................................... 12

FED. R. CIV. P. 8(d)(2) ......................................................................................... 13, 15

FED. R. CIV. P. 8(d)(3) ......................................................................................... 13, 15

FED. R. CIV. P. 12(b)(6) ............................................................................................. 10

## PRELIMINARY STATEMENT

The Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §§ 77(p), 78(bb)(f) ("SLUSA") applies only where a complaint purporting to allege state law claims is found to be a disguised securities fraud claim premised on allegations of misrepresentations or omissions of material fact made "in connection with" the sale or purchase of covered securities. The Amended Complaint's allegations do not fit this description. Nonetheless, in an effort to support the District Court's erroneous conclusions, Appellees do exactly what the District Court did: they recast and rewrite the Amended Complaint to morph allegations of a simple breach of contract and breach of fiduciary duty case into a case purportedly alleging fraud. SLUSA does not give district courts such broad license, and it was therefore error for the District Court here to dismiss the Amended Complaint based on a rewriting of the Appellants well-pled allegations.

First, Appellees argue that the District Court was correct to conclude that the Amended Complaint contained allegations of wrongful conduct involving misstatements or omissions, fraud, or deceptive acts that could form the basis of a securities fraud claim. The actual allegations that the District Court (and now Appellees) utilize to support this view of the Amended Complaint, however, merely evidence the scope and extent of the fiduciary and contractual duties owed to Appellants. Appellees' argument that such allegations transform this case into one for fraud should be rejected because there are no allegations that Appellees' statements were false or fraudulent, that Appellants were misled by such statements, or even that Appellants ever saw such statements. Thus, there is no credible threat here that any misrepresentations or omissions (and none are alleged) will somehow dominate the litigation. To the contrary, the breach of fiduciary and contractual duties at issue in this case arise by operation of law and by contract, respectively, and the statements Appellees point to as purportedly alleging fraud, do little more than establish the scope and extent of those duties.

<u>Second</u>, the District Court also erroneously concluded, and Appellees now wrongly attempt to support, that the breaches alleged in the Amended Complaint occurred "in connection with" the sale or purchase of a covered security.  This is not so.  Appellees breached their contractual and fiduciary obligations by failing to provide investment advisory services in managing Appellants' accounts, an act that was independent of the sale or purchase of any covered securities.

In the alternative, though not decided below, Appellees assert that the District Court's dismissal should be affirmed because the Amended Complaint fails to state claims for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment for reasons that are independent of SLUSA.  Each of these arguments should be rejected because, as set forth below, the Amended Complaint adequately alleges each cause of action.

**<u>ARGUMENT</u>**

**I.    THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT THE AMENDED COMPLAINT IS BARRED BY SLUSA**

Appellees acknowledge that Congress enacted SLUSA to "'prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of'" the federal securities laws.  Appellees' Br. at 15 (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006)).[1]  The Amended Complaint does not assert fraud, and no claim relies on false and misleading statements or omissions.  *See* R. 34 at 2-5, 28-31, ¶¶1-8, 84-103.[2]  No false and misleading statements or omissions are even pled in the Amended Complaint.  To

---

[1] Citations herein to Defendants-Appellees' Opening Brief, filed October 23, 2013, are made as "Appellees' Br. at __."

[2] References to the record from the District Court proceeding include the docket number and page number, and are cited as "R. __."

the contrary, the Appellants' claims involve only the fact that their investment advisors exercised discretionary investment authority over their accounts, and were thus duty-bound, by contract and as fiduciaries, to manage those accounts in Appellants' best interests.  *See* R. 34 at 2, 4, 9, 11-12, ¶¶2, 6, 22, 28-31.  Such duties arose out of the contracts described in the Amended Complaint, and out of the inherent nature of an investment advisor's relationship with her client, which gives rise to fiduciary duties by operation of law.  *See* R. 34 at 9-12, ¶¶21-32; *Rasmussen v. A.C.T. Envtl. Servs. Inc.*, 292 A.D.2d 710, 712 (N.Y. App. Div. 2002) (investment advisors hold a position of trust and owe a fiduciary duty to clients).  By failing to provide contracted-for services in managing Appellants' accounts and by putting Appellees' own financial interests over the interests of their clients, Appellees breached their contractual and fiduciary obligations to Appellants.  *See* R. 34 at 28-31, ¶¶84-97.  The Amended Complaint goes no further in its allegations.  Appellants do not allege fraud or omissions or misstatements in connection with the purchase or sale of covered securities.  Instead, Appellants simply assert that, with respect to the management of Appellants' accounts, Appellees' conduct failed to meet obligations imposed on them by contract and in their roles as fiduciaries.  The District Court (and Appellees here) merely distort and recast what is actually alleged.  SLUSA, however, neither sanctions the rewriting of complaints nor provides a district court license to recast well-pled claims as possibly sounding in fraud.  The District Court thus overstepped its bounds to find that SLUSA applied, and it should therefore be reversed.

### A.    THE DISTRICT COURT ERRED BY MISCONSTRUING OR REWRITING THE AMENDED COMPLAINT TO FIND ALLEGATIONS OF MISREPRESENTATIONS, OMISSIONS, OR A SCHEME TO DEFRAUD

The Amended Complaint alleges that Appellants paid Appellees fees to manage, with full discretionary authority, Appellants' investments accounts. *See* R. 34 at 2, 9, 26, ¶¶1-2, 22, 77. Appellees, however, failed to conduct the independent, skilled research and investment analysis

required by the parties' contractual and fiduciary relationship, opting instead to use their discretionary authority over Appellants' accounts to place their investments in Appellees' proprietary products.[3]   The Amended Complaint does not assert that Appellees intended to defraud Appellants or that Appellees issued false or misleading statements that were relied upon by Appellants in turning over investment authority to Appellees.   The Amended Complaint instead asserts straightforward claims for breach of contractual and fiduciary duties as a result of Appellees' failure to provide the independent, loyal services for which Appellants paid high management fees.

Appellees insist that these allegations describe "a purported fraudulent scheme to sell proprietary products to unsuspecting clients."[4]   But in order to support this conclusion, Appellees must rewrite the Amended Complaint.   For example, Appellees argue that Appellants' breach of contract claim is actually a fraud claim because the Amended Complaint purportedly alleges that Appellants and other investment advisory clients entered into fee-based accounts, like the Chase Strategic Portfolio ("CSP"), in part due to "misstatements" made during the marketing of the CSP product.[5]   According to Appellees, "[t]he Amended Complaint alleges that [the success of the CSP] could not have been possible without misstatements made by Defendants in marketing the CSP product."[6]   However, the Amended Complaint does not attribute the success of the CSP to any "misstatement."[7]   Moreover, the Amended Complaint allegation upon which Appellees rely for support (*see* R. 34 at 17, ¶47) states only that, in a press release, JPMorgan reiterated its commitment to its fiduciary duties.   This is an admission proving the existence, scope and extent

---

[3]  R. 34 at 3-5, 12, 28-31, ¶¶3, 5-7, 32, 84-97.

[4]  Appellees' Br. at 15.

[5]  *Id.* at 23.

[6]  *Id.*

[7]  R. 34 at 17, ¶¶46-48.

of a fiduciary duty, not a misrepresentation or omission.  Appellants do not assert that that statement was untrue when it was made, or that they relied upon the statement, or even that they saw such a statement prior to entering into a relationship with Appellees, as would be required in a fraud context.[8]  The District Court and Appellees merely make the unjustified logical leap to "fraud," where no such allegations exist and none are necessary to support the claims actually stated.

Likewise, the chart below contains the purported "misstatements" identified by the District Court and Appellees that, according to them, support transforming this case into one for fraud.  As above, none of these statements are alleged to have been seen or relied upon by Appellants, none are alleged to have misled Appellants, and none do more than provide evidence of the scope and existence of the fiduciary and contractual relationship, which do not support transforming this case into a claim for fraud.[9]

---

[8] *Havoco of Am., Ltd. v. Hilco, Inc.*, 731 F.2d 1282, 1287 (7th Cir. 1984) (establishing that fraud cannot exist without reliance); *Amato v. Creative Confections Concepts, Inc.*, No. 98-cv-567, 1999 WL 184169, at *10 (N.D. Ill. Mar. 29, 1999) (stating that reliance on misrepresentations is a necessary element of fraud).  The same is true of the other statements identified by Appellees in their brief, which appear on Appellees' websites, marketing materials, and SEC filings.  *See, e.g.*, R. 34 at 13, ¶ 34 ("JPMorgan Funds undergo the same initial due diligence and ongoing monitoring that unaffiliated third party mutual funds in the Program undergo"); R. 34 at 11, ¶26 ("[w]e will work closely with [clients] to understand [the clients'] unique needs and create solutions designed to help you meet[] your financial goals"); *see also* R. 34 at 22-23, 25, ¶¶63-65, 74.

[9] Contractual provisions, of course, cannot form the basis of a fraud claim in this Circuit.  *See Consolidation Servs., Inc. v. KeyBank Nat'l Ass'n*, 185 F.3d 817, 823 (7th Cir. 1999) (holding that unfulfilled promises in contracts are not misrepresentations because such a view "would turn every breach of contract into a fraud").

| Alleged Misstatement | Actual Context |
|---|---|
| "Our Fiduciary Responsibility defines our relationship with our clients and informs every decision we take on their behalf. Our clients come first. We will not compromise their interests. These core principles form the foundation of our business – understanding our clients' needs, offering informed advice and executing to provide excess alpha performance and world class client solutions." <br> R. 34 at 10, ¶23 | This quote is an excerpt from JPMorgan's Asset Management Division's website. It is included in the Amended Complaint to establish that Appellees owed a fiduciary duty to the Class, as is required to adequately plead a breach of fiduciary duty claim. |
| "Throughout our long and distinguished history, we have been steadfastly committed to putting our clients' interests first. This fiduciary relationship defines our relationship with clients and informs the basis of every decision we make on their behalf." <br> R. 34 at 10, ¶24 | This quote is taken from a description of JPMorgan's Global Business Principle and is offered as an admission by Appellees of a fiduciary duty owed to their clients. |
| "We will work closely with you to understand your unique needs and create solutions designed to help you meeting your financial goals." <br> R. 34 at 11, ¶26 | This quote is offered to establish that Appellees' duties, as they understood them, were the same as the typical responsibilities of a fiduciary. It was included to provide more evidence of a fiduciary relationship. |
| "JPMorgan Funds undergo the same initial due diligence and ongoing monitoring that unaffiliated third party mutual funds in the Program undergo, and must meet the Program's same qualitative and quantitative criteria for inclusion." <br> R. 34 at 13, ¶34 | This is an excerpt from a customer account agreement for Appellees' "Managed Mutual Funds Portfolio" Program. As a contract provision, it cannot form the basis of a misrepresentation claim. |
| "A financial advisor uses a client's individual goals, financial needs and risk tolerance to help determine an appropriate asset-allocation strategy, and then the best portfolio." <br> R. 34 at 17, ¶47 | This quote comes from a press release issued in conjunction with the launch of the CSP. In it, Appellees reiterate their commitment to the fiduciary relationship with clients. It supports the fact that Appellees owed a fiduciary duty to their financial advisory clients. |

Appellees' insistence that other allegations in the Amended Complaint also describe a fraudulent "scheme" is similarly unfounded. Appellees state that "according to the Amended Complaint," the statements describing Appellees' fiduciary and contractual obligations "also were used by [Appellees] to mislead clients in order to achieve the objective of their scheme –

*i.e.*, increasing profits for JPMorgan."[10]  In support of this statement, Appellees cite to paragraphs 42, 61, and 62 of the Amended Complaint.  While these paragraphs describe Appellees' financial incentives to breach their contract and fiduciary duties – *i.e.*, increasing profits through the collection of additional fees – none of these paragraphs allege that the statements "were used … to mislead clients."[11]  To the contrary, such allegations establish merely the breach of the fiduciary duty – *i.e.*, disloyal self-dealing.  Appellees also list paragraphs 3, 51 and 72 of the Amended Complaint as purported examples of Appellants' allegations of a fraudulent scheme.  Again, none of these allegations describe a fraud, but instead (at most) describe how Appellees breached their contractual and fiduciary obligations.

    **B.**    **THE DISTRICT COURT'S RELIANCE ON *BROWN v. CALAMOS* IS MISPLACED GIVEN THE ALLEGATIONS OF THE AMENDED COMPLAINT**

After rewriting the Amended Complaint to manufacture allegations of fraud in an attempt to justify the District Court's conclusions, Appellees incorrectly argue that *Brown v. Calamos*[12] supports the dismissal on SLUSA grounds because it fits the facts here.  It does not.  In *Brown*, SLUSA dismissal was found necessary because the complaint's allegations "ma[d]e it likely that an issue of fraud [would] arise in the course of the litigation" and "would be difficult and maybe impossible to disentangle from" the other claims asserted.[13]  The District Court relied heavily on *Brown* in its dismissal decision, but because *Brown* is factually inapposite it was error for the District Court to do so.[14]

In contrast to *Brown* – where this Court not only found that very clear misrepresentations and omissions were alleged (664 F.3d at 126-27) but further found that such misrepresentations

---

[10] Appellees' Br. at 20.

[11] R. 34 at 15-16, 21-22, ¶¶42, 61-62.

[12] 664 F.3d 123 (7th Cir. 2011).

[13] *Id.* at 128-29.

[14] A-6-9. All references to the Special Appendix are cited as "A-".

and omissions "may be central to the case" because the alleged fiduciary breaches there "appear[ed] to rest on an allegation of fraud" (*id.* at 130-31) – Appellants here allege no misrepresentations or omissions, and the only factual allegations the District Court relied upon from the Amended Complaint to suggest fraud are statements by the Company that establish the scope and extent of the fiduciary and contractual duties.  Also, unlike *Brown*, there is nothing in the Amended Complaint, implicitly or explicitly, to suggest that any Appellant was aware of or relied upon the purported false statements when making decisions about his investments.  That is not part of any claim here.  Indeed, JPMorgan made all the investments, not Appellants.  Thus, in stark contrast to *Brown*, there is no threat whatsoever that any purported misstatements or omissions (manufactured as they are) would dominate the litigation.   Again, the Amended Complaint's references to statements by Appellees do nothing more than establish the scope and extent of Appellees' contractual obligations and fiduciary duties; they do not allege fraud.

To shoehorn this case into *Brown*, Appellees argue (as they must) that the allegations in the Amended Complaint make it likely that the issue of fraud will arise later in the course of the litigation.  *See* Appellees' Br. at 22.  But to make this argument, Appellees hypothesize that they might assert a disclosure-based defense in response to Appellants' breach of fiduciary duty claim.  *See id.* at 21.  This argument is unpersuasive and a red-herring.  Appellees cannot raise disclosure as an affirmative defense to Appellants' breach of fiduciary duty claim here because the duty arises by operation of law as a result of the investment advisor relationship.  *See Brown*, 664 F.3d at 129 ("disclosures would be ineffectual against a claim of breach of the duty of loyalty") (citing *Schock v. Nash*, 732 A.2d 217, 225 n.21 (Del. 1999)).

Moreover, SLUSA exists to prevent plaintiffs from cloaking federal securities fraud claims in state law allegations to avoid having to comply with the PSLRA's heightened pleading

standards.  *See Dabit*, 547 U.S. at 82 (SLUSA was enacted to stem the "shif[t] from Federal to State courts" of private securities class actions alleging fraud); *Dudley v. Putnam Int'l Equity Fund*, No. 10-cv-328 GPM, 2010 WL 1838255 (S.D. Ill. May 5, 2010) (SLUSA was enacted to preclude the maintenance of certain state-law claims regarding securities as class actions).  It does not exist as a complete ban on all state law fiduciary duty actions involving covered securities, as Appellees' argument suggests.  *See Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 168 F. Supp. 2d 1352, 1356 (M.D. Fla. 2001) (stating that it is clear that "SLUSA does not attempt to preempt all state law [actions] in the field of securities"); *Tuttle v. Sky Bell Asset Mgmt., LLC*, No. 10-cv-03588 WHA, 2010 WL 4807093, at *6 (N.D. Cal. Nov. 19, 2010) ("SLUSA does not preclude breach of fiduciary duty or contract claims *unless* they sound in fraud").  In *Brown*, this Court was clear that SLUSA requires dismissal only where fraud claims are "difficult and maybe impossible to disentangle" from the state law claims alleged.  *Brown*, 664 F.3d at 128-29.  This case does not fit that description.[15]

---

[15] The Appellees' other cases are similarly distinguishable because, unlike here, the complaints under review included explicit allegations of misstatements and omissions.  *See* Appellees' Br. at 25-26.  *See Daniels v. Morgan Asset Mgmt., Inc.*, 497 F. App'x 548, 554 (6th Cir. 2012) (complaint explicitly alleged untrue statements and omissions); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir. 2009) (express allegations of fraud left the court no option but to dismiss under SLUSA); *Kutten v. Bank of Am., N.A.*, 530 F.3d 669, 671 (8th Cir. 2008) (rejecting appellants' attempt to distinguish "between 'deceiving' and 'failing to be honest,' or between 'omitting a material fact' and 'failing to disclose[,]'" and affirming district court's conclusion that, "without allegations of deceptive and misleading conduct, [a]ppellants' complaint was empty of any non-preempted class action claims"); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 299 (3d Cir. 2005) (finding complaint replete with allegations of materially misleading information).

### C.   THE AMENDED COMPLAINT DOES NOT CHALLENGE CONDUCT "IN CONNECTION WITH" THE PURCHASE OR SALE OF A COVERED SECURITY

Appellees incorrectly contend that Appellants overstate the impact of this Court's analysis in *Gavin v. AT&T Corp.*[16]   In *Gavin*, this Court explained that "[o]f course there is a literal sense in which anything that happens that would not have happened but for some prior event is connected to that event."[17]   However, a "mere 'but for' cause linking a securities transaction … to a subsequent injury … does not make the injury one suffered 'in connection with the purchase or sale of securities.'"[18]

Here, the connection between any purported statements (all of which relate to the scope of Appellees' duties, and none of which are pled to be false or misleading) and the securities transaction (presumably the Appellees' own act of placing client funds in Appellees' proprietary products) is too attenuated, and following the rationale in *Gavin*, the District Court was simply wrong to conclude that Appellants' claims arose "in connection with" the purchase or sale of covered securities.  Appellees misconduct involves a failure to provide the research and objective analysis required by the parties' relationship, regardless of any securities transactions; and the liability and damages arise not from securities transactions themselves, but from the management fees that were charged by Appellees and paid by Appellants for management services that were not performed, irrespective of any particular investments.

## II.   THE AMENDED COMPLAINT ADEQUATELY STATES CLAIMS FOR RELIEF

Appellees argue in the alternative that even if SLUSA is no bar to the Amended Complaint, the District Court's decision should be affirmed on other Rule 12(b)(6) grounds. Each of these arguments should be rejected.  The Amended Complaint adequately states claims

---

[16] 464 F.3d 634 (7th Cir. 2006).

[17] *Id.* at 639.

[18] *Id.*

for breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing and unjust enrichment.

### A.    THE AMENDED COMPLAINT STATES A CLAIM FOR BREACH OF CONTRACT

Appellees assert that the Amended Complaint does not state a claim for breach of contract.  "In order to state a breach of contract claim [under New York law], 'a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04-cv-2867, 2006 WL 6217754, at *6 (S.D.N.Y. Mar. 31, 2006) (citation omitted).  "Each element need not be separately pleaded." *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001) (citations omitted).[19]  Appellants' Amended Complaint adequately states a claim for breach of contract.

***Existence of an agreement*.**  The Amended Complaint adequately alleges the existence of an agreement. The Amended Complaint alleges that Appellants each contracted to receive services from Appellees[20] and that "[Appellees] … owed contractual obligations to [Appellants] and the other members of the Class pursuant to the standardized account agreements executed by and between [Appellees] and [Appellants] and members of the Class."[21]  Among other things, these "financial advisory agreements" obligated Appellees to "(i) conduct thorough and accurate research of investments and market conditions, and (ii) manage investments in the best interests of the client."[22]  Indeed, the Amended Complaint dedicates thirteen paragraphs spanning five

---

[19] Appellees do not contest that Appellants have adequately alleged performance – *i.e.*, the second element of the claim.

[20] *See* R. 34 at 5-6, ¶¶9-12.

[21] R. 34 at 11, 28, ¶28, 85.

[22] R. 34 at 12, ¶31; *accord* R. 34 at 2, 12-13, ¶¶2, 30-31, 34.

pages to addressing the agreements between the parties and Appellees' resulting contractual duties.[23]  These allegations adequately plead the existence of an agreement.[24]

**Breach.**  Appellants also adequately allege breach.  The Amended Complaint alleges that "[Appellees] breached … their contractual obligations to provide [Appellants] and the Class with the skilled, objective, competent and honest financial advisory services for which they were paid"[25] by "institut[ing] centralized policies and practices designed to obliterate the … contractual responsibilities owed to clients by pushing and incentivizing their financial advisors to put the financial interests of [Appellees] ahead of the financial interests of the clients."[26]

**Damages.**  Finally, the Amended Complaint adequately alleges damages, providing that Appellants suffered damages by being forced to pay management fees "for services that [Appellees] did not perform."[27]  Under the notice pleading standards of Rule 8, these allegations

---

[23] *See* R. 34 at 11-15, ¶¶28-40.

[24] *Compare Contractual Obligation Prods.*, 2006 WL 6217754, at *6 ("[P]laintiff's general averments to certain promises by [defendant] and agreements between the parties are sufficient to allege the first element of a breach of contract claim-the existence of an agreement.") (citations omitted); *accord Designers N. Carpet, Inc. v. Mohawk Indus., Inc.*, 153 F. Supp. 2d 193, 197 (E.D.N.Y. 2001) (denying motion to dismiss and "find[ing] that at this stage, the complaint provides the short and plain statement that [FRCP] 8 requires" even though plaintiff "[did] not describe the contract or contracts other than to say agreements existed between it and [the defendant]" and "[did] not allege whether these agreements are written or oral, when they were made, the length of time they covered, the quantity of carpets involved, or any other terms") (citing *Bridgeway Corp.*, 132 F. Supp. 2d at 304); *see also Goodman Mfg. Co. L.P. v. Raytheon Co.*, No. 98-cv-2774, 1999 WL 681382, at *13 (S.D.N.Y. Aug. 31, 1999) ("the Complaint does not expressly refer to a specific clause of the Agreement, which is not necessary under the pleading requirements of the Federal Rules of Civil Procedure") (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

[25] R. 34 at 5, ¶8.

[26] R. 34 at 3, ¶3; *accord* R. 34 at 4, 19, 21, 23, ¶¶6, 54, 61, 66.

[27] R. 34 at 5, ¶8 ("Since at least 2007, [Appellees] breached their duties to provide these services to their financial advisory clients and collected fees for services that they did not perform…. By this action, [Appellants] and members of the Class seek to recover these management fees."); *see* R. 34 at 3, 15, 17, ¶¶3, 42, 48.  The Amended Complaint alleges damages with adequate particularity.  *Compare Novus Partners, Inc. v. Vainchenker*, 938 N.Y.S.2d 228, at *3 (N.Y. Sup. Ct. 2011) (explaining that on a motion to dismiss, "'a pleading need only state allegations from

are more than sufficient to alert Appellees about the contract claims asserted.

### B.   THE AMENDED COMPLAINT STATES A CLAIM FOR BREACH OF FIDUCIARY DUTY

#### 1.   Appellants' Claim for Breach of Fiduciary Duty is Not Duplicative of Their Claim for Breach of Contract

Appellees incorrectly assert that Appellants' breach of fiduciary duty claim should be dismissed as duplicative of their breach of contract claim.  *See* Appellees' Br. at 46-47. However, at the pleading stage, the fact that specific duties are contracted for does not insulate a party from liabilities for breaches of fiduciary duties.[28]  Indeed, "[i]t is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself."[29]  Moreover, "once a fiduciary duty is established based on contract, the relationship the contract establishes imposes 'a duty to act with care and loyalty independent of

---

which damages attributable to the defendant's conduct may reasonably be inferred.'  Therefore, plaintiff's failure to allege damages with the necessary specificity does not preclude its claim for breach of contract.") (quoting *Fielding v. Kupferman*, 65 A.D.3d 437, 442 (1st Dep't 2009) (internal citation omitted)).

[28] Appellants are permitted to plead alternative theories.  *See* Fed. R. Civ. P. 8(d)(2)-(3) (party may assert alternate claims, even if inconsistent); *see also Mervyn v. Nelson Westerberg, Inc.*, No. 11-cv-6594, 2012 WL 6568338, at *3 (N.D. Ill. Dec. 17, 2012) (collecting cases); *Dimsey v. Bank of N.Y.*, 14 Misc. 3d 1205(A), at *3 (N.Y. Sup. Ct. 2006) ("BNY argues that, although it assumed discretionary control of Dimsey's account, any fiduciary duty it owed to Dimsey was dependent on the Management Agreement.  However, at this pre-discovery phase of the proceedings, Dimsey may plead alternative theories").  Pleading in the alternative is particularly appropriate here because Appellees both deny the existence of any contractual duties (*see* Appellees' Br. at 42-43) and seek the dismissal of the fiduciary duty claims based on the existence of a contract.

[29] *Mandelblatt v. Devon Stores*, 132 A.D.2d 162, 167-68 (N.Y. App. Div. 1987); *accord Bullmore v. Banc of Am. Sec., LLC*, 485 F. Supp. 2d 464, 470 (S.D.N.Y. 2007); *see also Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 463 (N.Y. App. Div. 2007).

the terms of the contract.'"[30]  Thus, the claims here are not duplicative under New York law.  To the contrary, the fiduciary duties arise here as a result of the Appellants' relationship with their investment advisors, *see, e.g.*, *Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d at 470-471, while Appellants contracted to receive services that are not co-extensive with, and arise independent of, the parties' fiduciary relationship.[31]  Accordingly, Appellants' claim for breach of fiduciary duty is not subject to dismissal on the grounds that it is duplicative of contract claim.

## 2. The Amended Complaint Adequately Pleads a Claim for Breach of Fiduciary Duty

In putting their own financial interests ahead of the interests of their clients, Appellees breached the stringent fiduciary duties imposed on them by virtue of their status as investment advisors with discretionary authority over Appellants' investments.  Appellants have alleged each element supporting their breach of fiduciary duty claim.

***Duty***.  Under New York law, investment advisors with discretionary authority over investments are fiduciaries by operation of law.[32]  The Amended Complaint alleges that Appellees acted as investment advisors for Appellants, and therefore, owed fiduciary duties.[33]

***Breach***.  The Amended Complaint plainly alleges significant, deliberate self-dealing which resulted in Appellants being placed into unsuitable investments.[34]  Such conduct sufficiently alleges a breach of fiduciary duties.[35]

---

[30] *Atmosphere Scis., LLC v. Schneider Advanced Techs., Inc.*, No. 12-cv-3223, 2012 WL 4240759, at *9 (S.D.N.Y. Sept. 19, 2012), *vacated by order*, 2013 WL 1719174 (S.D.N.Y. Apr. 16, 2013) (applying New York law) (quoting *Bullmore*, 485 F. Supp. 2d at 471).

[31] *See* R. 34 at 11-12, ¶¶28-31.

[32] *See, e.g.*, *id.*; *Bullmore*, 485 F. Supp. 2d at 470-471.

[33] *See, e.g.*, R. 34 at 9-11, ¶¶21-27.

[34] R. 34 at 3-5, 15-16, 18, 21-23, ¶¶5-8, 42-44, 49-50, 61-64.

[35] *See, e.g.*, *Scalp & Blade, Inc. v. Advest, Inc.*, 309 A.D. 2d 219, 232 (N.Y. App. Div. 2003) ("Indeed, plaintiffs have alleged deliberate and flagrant self-dealing and dishonesty on the part of defendants, namely, their unauthorized trading of the fund and speculative and otherwise

*Damages*.  The Amended Complaint adequately alleges that Appellants suffered damages as a result of Appellees' breaches, consisting primarily of high fees being charged and paid for services not rendered, and duties unfulfilled.[36]

### C.  THE AMENDED COMPLAINT STATES CLAIMS FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND FOR UNJUST ENRICHMENT

A claim for breach of contract does not preclude a party from asserting claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing as alternative theories of liability;[37] rather, parties are only precluded from recovering under both the contract and quasi-contract theories.[38]  "The law in New York is that a party 'may assert causes of action in both breach of contract and quasi-contract where there is a bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue....'"[39]  Here, Appellants' assertion of implied covenant and unjust enrichment claims in the alternative to their

---

unsuitable investment decisions with regard to it, transactions allegedly engaged in for defendants' own benefit.").

[36] *See* R. 34 at 4-5, 17, 18, 21-22, 26, ¶¶7-8, 47, 49, 61-62, 75-76.  While Appellants agree that damages are an element of pleading breach of fiduciary duty, the case Appellees cite, *Moscato v. Tie Technologies Inc.*, No. 04-cv-2487, 2005 WL 146806, at *6 (S.D.N.Y. Jan. 21, 2005), does not provide any guidance on adequately pleading damages.  Instead, the *Moscato* court dismissed the plaintiff's breach of fiduciary duty claim because he failed to identify the fiduciary duty owed and how it was breached by the defendant.

[37] *See* Fed. R. Civ. P. 8(d)(2)-(3); *see also Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996) (unjust enrichment claim properly pleaded in alternative to breach of contract claim); *Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003) (same).

[38] *Fantozzi v. Axsys Techs., Inc.*, No. 07-cv-2667, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008).

[39] *Id.* at *7-8; *see also Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) ("[w]hen there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim") (citation omitted);  *Linares v. Richards*, No. 08-cv-3243, 2009 WL 2386083, at *5 (E.D.N.Y. Aug. 3, 2009) ("courts construing New York law permit pleadings containing claims for both breach of contract and unjust enrichment where a determination as to whether a valid contract exists has not been made or the validity of the contract is disputed") (citations omitted).

breach of contract claim is perfectly appropriate because Appellees dispute both whether Appellants have appropriately identified a contract and whether it governs Appellees' alleged misconduct.[40]   Accordingly, the breach of the implied covenant and unjust enrichment claims should not be dismissed as duplicative as Appellants' breach of contract claims.[41]

## III.   APPELLANTS HAVE STANDING TO STATE, AND HAVE STATED, CLAIMS AGAINST JPMORGAN CHASE AND JPMIM

Appellees argue that the Amended Complaint does not describe or distinguish the roles of JPMorgan Chase and JPMIM in the wrongful conduct alleged.[42]   This is not so.   Appellants plead that both JPMorgan Chase and JPMIM were integral components of Appellees' decisions to place clients in proprietary JPMorgan funds and investments, regardless of whether such placement was in the clients' best interest.   Appellants allege that JPMorgan Chase is a global financial institution that "controlled JPMC Bank and JPMS LLC, through which [Appellants] and their accounts were managed."[43]   In addition, Appellants allege that the decisions which led to Appellees' breaches of contract and fiduciary duty "emanated from the very top" of Appellee JPMorgan Chase's senior management.[44]

---

[40] Appellees acknowledge that Appellants' breach of the implied covenant and breach of contract claims are contained within the same count of the Amended Complaint.  *See* Appellees' Br. at 50; R. 34 at 28-29.  Accordingly, these claims should be deemed to be asserted in the alternative. *See Barbara v. MarineMax, Inc.*, No. 12-cv-368, 2012 WL 6025604, at *17 n.10 (E.D.N.Y. Dec. 4, 2012) ("[P]laintiffs do not allege the implied covenant as a separate cause of action. Therefore, their claim of a breach of the implied covenant of good faith and fair dealing may be seen as in-the-alternative of their breach of contract claim.") (citation omitted).

[41] *See also Citi Mgmt. Grp., Ltd. v. Highbridge House Ogden, LLC*, 45 A.D.3d 487, 487 (N.Y. App. Div. 2007) (holding that, at the motion to dismiss stage, "defendant is permitted to plead in the alternative;" therefore, plaintiff's "claims for breach of the implied covenant of good faith and fair dealing … should not [have been] dismissed as duplicative of the breach-of-contract cause of action at this juncture").

[42] Appellees' Br. at 51.

[43] R. 34 at 7-8, ¶17.

[44] R. 34 at 16, ¶44 (alleging that JPMorgan Chase Board Member James "Jes" Staley convinced Jamie Dimon, JPMorgan Chase CEO and Chairman of the Board, that the "Company should

JPMIM, the Amended Complaint alleges, is a wholly-owned subsidiary of JPMorgan Chase and a registered investment advisor.[45]  JPMIM also serves as the primary U.S. investment advisory branch of J.P. Morgan Asset Management, the division of JPMorgan Chase that runs its asset management business.  As JPMorgan Chase's primary U.S. investment advisory branch, JPMIM employed over six hundred financial advisors, who managed financial advisory clients with over $700 billion in assets.[46]  Accordingly, rather than allege that JPMC Bank and JPMIM were mere third parties whose separate and independent actions caused Appellants' injuries, Appellants have specifically identified the roles played by JPMorgan Chase and JPMIM which led to the breaches alleged.  Nonetheless, Appellees claim that Appellants cannot assert claims against JPMorgan Chase and JPMIM because Appellants do not allege that they entered into financial advisory agreements with either of these Appellees.[47]  Even if it were true, this argument does not apply to Appellants' breach of fiduciary duty and unjust enrichment claims.  "[L]iability for breach of a fiduciary duty is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary."[48]  Instead, it is the nature of the relationship that is controlling.[49]  Likewise, Appellants' properly stated unjust enrichment claim is born out of equity and does not require the existence of a contract.  *See Hamlin Beach Camping, Catering, & Concessions Corp. v. N.Y.*, 303 A.D.2d 849 (N.Y. App. Div. 2003)

---

ramp up its focus on steering clients into proprietary funds and investments in order to collect more fees and 'earn' more profits.").

[45] R. 34 at 7, ¶16.

[46] *Id.*

[47] Appellees' Br. at 51-52.

[48] *Sergeants Benevolent Ass'n Annuity Fund v. Renck*, 19 A.D.3d 107, 110 (N.Y. App. Div. 2005) (internal quotation omitted).

[49] As the court in *Sergeants Benevolent* also recognized, alleging that non-signatories to a contract are liable as fiduciaries "does not involve an attempt to pierce the corporate veil."  19 A.D.3d at 110.

(unjust enrichment is an equitable cause of action, which does not arise from a contract or agreement).

## <u>CONCLUSION</u>

For the foregoing reasons, and the additional reasons stated in their opening brief, Appellants respectfully request that the judgment of dismissal be reversed and the case be reinstated.

Dated:  November 6, 2013

Paul E. Slater
Scott F. Hessell
**SPERLING & SLATER, PC**
55 West Monroe Street
Suite 3200
Chicago, IL 60603
(312) 641-3200

Jacob H. Zamansky
Edward H. Glenn, Jr.
**ZAMANSKY LLC**
50 Broadway
32nd Floor
New York, NY 10004
(212) 742-1414

Joseph H. Meltzer
Tyler S. Graden
**KESSLER TOPAZ MELTZER
AND CHECK LLP**
280 King of Prussia Road
Radnor, PA 19807
(610) 667-7706

/s/ Daniel L. Berger
Jay W. Eisenhofer
Daniel L. Berger
Jeff A. Almeida
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY  10017
Telephone: (646) 722-8500
*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,948 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A), as modified by Circuit Rule 32(b), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman size 12-point font.

Dated:  New York, NY
         November 6, 2013


                               /s/ Daniel L. Berger
                               Daniel L. Berger

                               **GRANT & EISENHOFER P.A.**
                               485 Lexington Avenue, 29th Floor
                               New York, NY  10017
                               Tel: (646) 722-8500
                               Fax: (646) 722-8501

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2013 the attached Reply Brief for Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit via the CM/ECF System. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Daniel L. Berger        </u>
Daniel L. Berger
