Case No. 13-2609

# United States Court of Appeals

*for the*

# Seventh Circuit

PATRICIA HOLTZ, *et al.*,

*Plaintiffs-Appellants,*

– v. –

J.P. MORGAN CHASE BANK, N.A., *et al.*,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
CASE NO. 1:12-CV-07080, JOHN W. DARRAH, DISTRICT COURT JUDGE

## CORRECTED BRIEF FOR DEFENDANTS-APPELLEES

JONATHAN K. YOUNGWOOD
JANET A. GOCHMAN
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

– and –

STEPHEN V. D'AMORE
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Attorneys for Defendants-Appellees*

**CIRCUIT RULE 26.1    DISCLOSURE STATEMENT**

Appellate Court No: <u>13-2609</u>

Short Caption: <u>Holtz, et al v. J.P. Morgan Chase Bank, N.A., et al</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>J.P. Morgan Securities LLC, JPMorgan Chase Bank, N.A., JPMorgan Chase & Co., and J.P. Morgan Investment</u>

<u>Management Inc.</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Simpson Thacher & Bartlett LLP and Winston & Strawn LLP.</u>

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

       <u>See Exhibit A.</u>

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

       <u>See Exhibit A.</u>

Attorney's Signature: <u>/s/ Jonathan K. Youngwood</u>    Date: <u>August 2, 2013</u>

Attorney's Printed Name: <u>Jonathan K. Youngwood</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes  X    No _____

Address: <u>425 Lexington Avenue</u>
<u>New York, NY 10017</u>

Phone Number: <u>212-455-2000</u>    Fax Number: <u>212-455-2502</u>

E-Mail Address: <u>jyoungwood@stblaw.com</u>

rev. 01/08 AK

# EXHIBIT A

(3) <u>If the party or amicus is a corporation:</u>
<u>i) Identify all its parent corporations, if any; and</u>
JPMorgan Chase & Co. is the parent company of JPMorgan Chase Bank, N.A.  JPMorgan Chase & Co. is the parent company of JPMorgan Asset Management Holdings Inc. which is the parent company of J.P. Morgan Investment Management Inc.  JPMorgan Chase & Co. is the parent company of J.P. Morgan Broker-Dealer Holdings Inc. which is the parent company of J.P. Morgan Securities LLC.

<u>ii) list any publicly held company that owns 10% or more of the party's or amicus' stock</u>:
J.P. Morgan Chase & Co. is the only publicly held company that owns either directly or indirectly more than 10% of J.P. Morgan Securities LLC's, JPMorgan Chase Bank, N.A.'s, and J.P. Morgan Investment Management Inc.'s stock.   No entity owns more than 10% of JPMorgan Chase & Co.'s stock.

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: <u>13-2609</u>

Short Caption: <u>Holtz, et al. v. J.P. Morgan Chase Bank, N.A. et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[  ]**    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    <u>J.P. Morgan Securities LLC; JPMorgan Chase Bank, N.A.; JPMorgan Chase & Co.; and J.P. Morgan</u>

    <u>Investment Management Inc.</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Simpson Thacher & Bartlett LLP and Winston & Strawn LLP</u>

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

        <u>See Exhibit A.</u>

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

        <u>See Exhibit A.</u>

Attorney's Signature: <u>s/  Stephen V. D'Amore</u>    Date: <u>October 22, 2013</u>

Attorney's Printed Name: <u>Stephen V. D'Amore</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** _____  **No** ☒

Address: <u>35 W. Wacker Dr.</u>

        <u>Chicago, IL 60601-9703</u>

Phone Number: <u>312-558-5600</u>    Fax Number: <u>312-558-5700</u>

E-Mail Address: <u>sdamore@winston.com</u>

rev. 01/08 AK

# EXHIBIT A

(3) If the party or amicus is a corporation:

      i) Identify all its parent corporations, if any; and

      JPMorgan Chase & Co. is the parent company of JPMorgan Chase Bank, N.A. JPMorgan Chase & Co. is the parent company of JPMorgan Asset Management Holdings Inc. which is the parent company of J.P. Morgan Investment Management Inc.  JPMorgan Chase & Co. is the parent company of J.P. Morgan Broker-Dealer Holdings Inc. which is the parent company of J.P. Morgan Securities LLC.

      ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      JPMorgan Chase & Co. is the only publicly held company that owns either directly or indirectly more than 10% of J.P. Morgan Securities LLC's; JPMorgan Chase Bank, N.A.'s; and J.P. Morgan Investment Management Inc.'s stock.  No entity owns more than 10% of JPMorgan Chase & Co.'s stock.

## TABLE OF CONTENTS

**Page**

STATEMENT AS TO ORAL ARGUMENT ................................................................. 1

JURISDICTIONAL STATEMENT ........................................................................ 1

STATEMENT OF THE ISSUES ........................................................................... 2

STATEMENT OF THE CASE ............................................................................. 2

STATEMENT OF FACTS .................................................................................... 5

      A.    The Amended Complaint Pleads Misrepresentations, Omissions
             and Fraud Under SLUSA ................................................................. 5

      B.    The Alleged Account Agreements ................................................. 8

      C.    JPMorgan Chase and JPMIM Are Improperly Named as
             Defendants ................................................................................... 8

      D.    The District Court's Dismissal of the Amended Complaint Pursuant
             to SLUSA ...................................................................................... 9

SUMMARY OF ARGUMENT ........................................................................... 11

STANDARD OF REVIEW ................................................................................ 13

ARGUMENT ................................................................................................... 14

I.    THE DISTRICT COURT CORRECTLY DISMISSED THIS ACTION
      BECAUSE THE AMENDED COMPLAINT SATISFIES EACH OF
      SLUSA'S ELEMENTS ............................................................................ 14

      A.    The Amended Complaint Alleges a Misrepresentation or Omission
             of a Material Fact and a Manipulative or Deceptive Device or
             Contrivance as Required Under SLUSA ........................................ 15

             1.    The Amended Complaint Satisfies the Standard for SLUSA
                    Preclusion Set Forth in *Brown v. Calamos* ........................... 16

             2.    Plaintiffs' Claims Rest Upon Allegations of
                    Misrepresentations, Omissions and Fraud ......................... 19

3.      The Overwhelming Weight of Authority Requires Dismissal
        Under SLUSA ................................................................................. 25

4.      Plaintiffs Cannot Avoid SLUSA Through Artful Pleading.............. 29

        a.      Courts Look to the Substance of a Complaint, Not Its
                Form, to Determine Whether SLUSA Applies...................... 30

        b.      The *Tralins* Complaint Demonstrates the True Nature
                of Plaintiffs' Allegations.......................................................... 33

B.      The Misrepresentations, Omissions or Manipulative or Deceptive
        Device or Contrivance were "in Connection with" the Purchase or
        Sale of Covered Securities.................................................................... 36

II.     THE DISTRICT COURT'S DISMISSAL MAY BE AFFIRMED ON THE
        ALTERNATIVE GROUND THAT  PLAINTIFFS FAIL TO STATE A
        CLAIM UPON WHICH RELIEF CAN BE GRANTED ........................... 41

A.      Plaintiffs Have Failed to Allege the Elements of Breach of Contract
        (Count I of the Amended Complaint).............................................. 42

        1.      Plaintiffs Have Failed to Identify a Contract .................................... 42

        2.      Plaintiffs Have Failed to Plead a Breach of Any Contract .............. 44

        3.      Plaintiffs Have Failed to Plead Damages ........................................ 45

B.      Plaintiffs Have Failed to Adequately Plead a Breach of Fiduciary
        Duty (Count II of the Amended Complaint) ................................... 46

        1.      Plaintiffs' Claim for Breach of Fiduciary Duty is Duplicative......... 46

        2.      Plaintiffs Fail to Plead the Elements of a Breach of Fiduciary
                Duty ................................................................................................. 47

C.      Plaintiffs Fail to State a Claim for Breach of the Implied Covenant
        of Good Faith and Fair Dealing (Count I of The Amended
        Complaint) and for Unjust Enrichment (Count III of The Amended
        Complaint) ............................................................................................ 49

III.    PLAINTIFFS' CLAIMS AGAINST JPMORGAN CHASE AND JPMIM
        SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER
        RULE 12(b)(6) AND FOR LACK OF STANDING UNDER RULE 12(b)(1) .......... 51

CONCLUSION ........................................................................................................................ 54

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ahead Realty LLC v. India House, Inc.* 92 A.D.3d 424
 (N.Y. App. Div. 2012)..................................................................... 50

*Anderson v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
 521 F.3d 1278 (10th Cir. 2008) ....................................................... 25

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440
 (7th Cir. 2009)................................................................................ 14

*Aramony v. United Way of Am.*, 949 F. Supp. 1080
 (S.D.N.Y. 1996)............................................................................. 50

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................. 13

*Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379 (7th
 Cir. 1990)....................................................................................... 33

*Behlen v. Merrill Lynch*, 311 F.3d 1087 (11th Cir. 2002)................ 38

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................... 13

*Berman v. Sugo LLC*, 580 F. Supp. 2d 191 (S.D.N.Y.
 2008) ............................................................................................... 44

*Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, Nos.
 02 C 0978, 02 C 3436, 2003 WL 151929 (N.D. Ill. Jan.
 21, 2003) ........................................................................................ 42

*Boart Longyear Ltd. v. Alliance Indus., Inc.*, 869 F. Supp.
 2d 407 (S.D.N.Y. 2012) ................................................................. 50

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th
 Cir. 2007)....................................................................................... 13

*Brooks v. Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270
 (App. Div. 2006)....................................................................... 46, 47

*Brown v. Calamos*, 664 F.3d 123 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 2774 (2012) .......................................................passim

*Brown v. Calamos*, 777 F. Supp. 2d 1128 (N.D. Ill. 2011), *aff'd*, 664 F.3d 123 (7th Cir. 2011) .................................................. 18

*Capital Dist. Physician's Health Plan v. O'Higgins*, 939 F. Supp. 992 (N.D.N.Y. 1996), *vacated pursuant to settlement*, No. 94-CV-61, 1998 WL 34083619 (N.D.N.Y Jan. 8, 1998) .................................................................. 21

*Celle v. Barclays Bank P.L.C.*, 48 A.D.3d 301 (N.Y. App. Div. 2008) ................................................................................... 48

*City of Peekskill v. Cont'l Ins. Co.*, 166 F.3d 1199 (2d Cir. 1998) ..................................................................................... 45

*Constr. Techniques, Inc. v. Dominske*, 928 F.2d 632 (4th Cir. 1991) ................................................................................ 21

*Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155 (S.D.N.Y. 1991) .......................................................................... 51

*Cramer v. Spada*, 610 N.Y.S.2d 662 (App. Div. 1994) ................ 45

*Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795 (7th Cir. 2013) .............................................................................. 30, 31

*Daniels v. Morgan Asset Management, Inc.*, 497 Fed. Appx. 548 (6th Cir. 2012) ................................................... 25

*Daniels v. Morgan Asset Mgmt., Inc.*, 743 F. Supp. 2d 730 (W.D. Tenn. 2010), *aff'd*, 497 Fed. Appx. 548 (6th Cir. 2012) ...................................................................... 19

*Disher v. Citigroup Global Mkts. Inc.*, 419 F.3d 649 (7th Cir. 2005), *vacated on other grounds*, 548 U.S. 901 (2006) ............................................................................ 13

*Dudek v. Prudential Sec. Inc.*, 295 F.3d 875 (8th Cir. 2002) ......................................................................... 35, 39

*Felton v. Morgan Stanley Dean Witter & Co.*, 429 F.
    Supp. 2d 684 (S.D.N.Y. 2006) ....................................................... 20, 27

*Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305
    A.D.2d 268 (N.Y. App. Div. 2003) ........................................................ 46

*Freeman Investments, L.P. v. Pacific Life Insurance Co.*,
    704 F.3d 1110 (9th Cir. 2013) ............................................................ 28

*Gavin v. AT & T Corp.*, 464 F.3d 634 (7th Cir. 2006) ................... 10, 39, 40

*Gilmore v. Sw. Bell Mobile Sys., Inc.*, 156 F. Supp. 2d 916
    (N.D. Ill. 2011) ................................................................................. 33

*Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651 (7th
    Cir. 2010) .......................................................................................... 42

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73
    (2d Cir. 2002) .................................................................................... 49

*Henderson v. Vill. of Dixmoor*, 99 F. Supp. 2d 940 (N.D.
    Ill. 2000), *aff'd sub nom., Henderson v. Bolanda*, 253
    F.3d 928 (7th Cir. 2001) .................................................................... 33

*Howell v. Am. Airlines, Inc.*, No. 05-CV-3628 (SLT),
    2006 WL 3681144 (E.D.N.Y. Dec. 11, 2006) ..................................... 42

*In re Charles Schwab Corp. Securities Litigation*, 257
    F.R.D. 534 (N.D. Cal. 2009) .............................................................. 29

*In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp.
    2d 556 (S.D.N.Y. 2012) ..................................................................... 24

*Int'l Bus. Machs. Corp. v. Dale*, No. 7:11-cv-951 (VB),
    2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011)...................................... 45

*James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296
    (E.D.N.Y. 2012).................................................................................. 42

*Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 244 (D. Del.
    2009) ................................................................................................. 53

*Jorling v. Anthem, Inc.* 836 F. Supp. 2d 821 (S.D. Ind. 2011) ....................................................................................... 9, 30, 35

*JP Morgan Chase v. J.H. Electric of N.Y., Inc.*, 69 A.D.3d 802 (N.Y. App. Div. 2010)........................................................ 42

*Kircher v. Putnam Funds Trust*, 403 F.3d 478 (7th Cir. 2005), *vacated on other grounds*, 547 U.S. 633 (2006).................................... 14, 25

*Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-cv-709-JPG, 2008 WL 2397582 (S.D. Ill. June 10, 2008), *aff'd on other grounds*, 556 F.3d 639 (7th Cir. 2009).................................... 24

*Kutten v. Bank of Am., N.A.*, 530 F.3d 669 (8th Cir. 2008)................................................passim

*Kutten v. Bank of Am., N.A.*, No. 06-0937 (PAM), 2007 WL 2485001 (E.D. Mo. Aug. 29, 2007), *aff'd*, 530 F.3d 669 (8th Cir. 2008)................................................................ 26

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011)............................................................................. 50

*LaSala v. Bordier et Cie*, 519 F.3d 121 (3d Cir. 2008) ................ 19

*Levinson v. PSCC Services, Inc.*, 3:09-CV-00269 (PCD), 2009 WL 5184363 (D. Conn. Dec. 23, 2009) ........................... 28

*Liafail, Inc. v. Learning 2000, Inc.*, Nos. Civ.A. 01-599 GMS, 01-678 GMS, 2002 WL 31414141 (D. Del. Oct. 23, 2002) ............................................................................... 52

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................ 53

*McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2002) ......................................................................................... 51

*Meisel v. Grunberg*, 651 F. Supp. 2d 98 (S.D.N.Y. 2009) ........................ 52

*Mendez v. Plastofilm Industries, Inc.*, No. 91 C 8172, 1992 WL 80969 (N.D. Ill. Apr. 15, 1992) ........................... 33

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006).................................................................... 4, 15, 36

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49
    F.3d 323 (7th Cir. 1995) ................................................................. 13

*Moscato v. Tie Techs., Inc.*, No. 04 Civ. 2487(GBD), 2005
    WL 146806 (S.D.N.Y. Jan. 21, 2005) ........................................... 49

*Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d
    382 (S.D.N.Y. 2004) ...................................................................... 27

*O'Malley v. Boris*, 742 A.2d 845 (Del. 1999) ................................ 21, 22

*Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692 (S.D. Ill.
    2007) ............................................................................................... 25

*Rabin v. JPMorgan Chase Bank, N.A.*, No. 06 C 5452,
    2007 WL 2295795 (N.D. Ill. Aug. 3, 2007) ............................. 26, 39

*Richek v. Bank of Am., N.A.*, No. 10-cv-6779, 2011 WL
    3421512 (N.D. Ill. Aug. 4, 2011) ........................................ 30, 37, 40

*Roland v. Green*, 675 F.3d 503 (5th Cir. 2012), *cert.
    granted sub nom.*, *Willis of Colo. Inc. v. Troice*, 133 S.
    Ct. 977 (2013) ............................................................................... 40

*Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d
    Cir. 2005) ........................................................................... 26, 30, 37

*Schock v. Nash*, 732 A.2d 217 (Del. 1999) ...................................... 22

*SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180
    (1963) ............................................................................................. 22

*SEC v. Zandford*, 535 U.S. 813 (2002) ............................................ 37

*Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir.
    2009) ......................................................................................passim

*Segal v. Fifth Third Bank, N.A.*, No. 1:07-cv-348, 2008
    WL 819290 (S.D. Ohio Mar. 25, 2008), *aff'd,* 581 F.3d
    305 (6th Cir. 2009) ........................................................................ 27

*Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51
    (E.D.N.Y. 2010) ............................................................................ 48

*Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580
(7th Cir. 2001) ................................................................................ 41

*Spencer v. Wachovia Bank, N.A.*, No. 05-
81016CIVRYSKAMP, 2006 WL 3408043 (S.D. Fla.
May 10, 2006) ................................................................................ 26

*Stoody-Broser v. Bank of America, N.A.*, No. C 08-cv-
02705 JSW, 2012 WL 1657187 (N.D. Cal. May 10,
2012) ................................................................................................ 29

*Strigliabotti v. Franklin Resources, Inc.*, 398 F. Supp. 2d
1094 (N.D. Cal. 2005) .................................................................. 41

*Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d
928 (7th Cir. 1996) ........................................................................ 52

*Tralins v. JPMorgan Chase & Co.*, No. 12-CV-5970 (N.Y.
Sup. Ct. July 13, 2012) .................................................................. 4

*Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521 (D. Del.
2008) ................................................................................................ 52

*Wells Fargo Bank, N.A. v. Superior Court*, 71 Cal. Rptr.
3d 506 (Cal. Ct. App. 2008) ........................................................ 41

*William Kaufman Org., Ltd. v. Graham & James L.L.P.*,
269 A.D.2d 171 (N.Y. App. Div. 2000) .................................... 46

*Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*, 939
N.Y.S.2d 745, 2011 WL 5962804 (Sup. Ct. 2011) .............. 49, 51

**Statutes**

15 U.S.C. § 77p(b) ................................................................ 1, 11, 14, 19

15 U.S.C. § 77p(c) ............................................................................. 1

15 U.S.C. § 77p(f)(2) ........................................................................ 14

15 U.S.C. § 77p(f)(3) ........................................................................ 14

15 U.S.C. § 77r(b) ............................................................................. 14

28 U.S.C. § 1291 ............................................................................................ 2

28 U.S.C. § 1332(d)(2) ................................................................................... 1

## Rules

Circuit Rule 34(f) .......................................................................................... 1

Federal Rule of Appellate Procedure 34(a) ............................................... 1

Federal Rule of Civil Procedure 12(b)(1) ................................... 12, 13, 53

Federal Rule of Civil Procedure 12(b)(6) ..................................... passim

Federal Rule of Civil Procedure 9(b) ..................................................... 13

## STATEMENT AS TO ORAL ARGUMENT

Defendants-Appellees J.P. Morgan Securities LLC ("JPMS"), JPMorgan Chase

Bank, N.A. ("JPMC Bank"), JPMorgan Chase & Co. ("JPMorgan Chase"), and J.P.

Morgan Investment Management Inc. ("JPMIM" and collectively "JPMorgan" or

"Defendants") request oral argument pursuant to Federal Rule of Appellate Procedure

34(a) and Circuit Rule 34(f) because the Court's decisional process would be

significantly aided by discussion of the legal arguments supporting affirmance of the

District Court's dismissal of this action under the Securities Litigation Uniform

Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p(b).

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants' ("Plaintiffs") jurisdictional statement is not complete and

correct because it does not assert the District Court's jurisdiction under SLUSA.

Plaintiffs commenced this class action on September 5, 2012 in the District Court for the

Northern District of Illinois invoking jurisdiction under the Class Action Fairness Act,

28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000.00.  Plaintiff

Patricia Holtz is an Illinois citizen.  Defendant JPMorgan Chase is a Delaware

corporation with its principal place of business in New York.  As discussed herein, the

District Court also had jurisdiction over this action under SLUSA.  15 U.S.C. § 77p(b),

(c).  The District Court entered its final decision and judgment on June 27, 2013,

dismissing all claims, under SLUSA, with prejudice.  A-10.[1]  Plaintiffs filed their Notice

of Appeal on July 23, 2013.  Accordingly, this Court has jurisdiction over the appeal of

this final decision under 28 U.S.C. § 1291.

<h3 align="center">STATEMENT OF THE ISSUES</h3>

1.     Whether the District Court correctly found under *Brown v. Calamos*, 664 F.3d 123

(7th Cir. 2011), *cert. denied*, 132 S. Ct. 2774 (2012), that SLUSA preempts the Amended

Complaint and its allegations that Defendants made misrepresentations and omissions

as part of a fraudulent scheme to sell Defendants' proprietary funds to unsuspecting

clients.

2.     Whether, in the alternative, the District Court's dismissal of the Amended

Complaint should be affirmed because Plaintiffs failed to state a claim upon which

relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

3.     Whether, in the alternative,  Plaintiffs' claims against JPMorgan Chase and

JPMIM should separately be dismissed because Plaintiffs lack standing under Federal

Rule of Civil Procedure 12(b)(1).

<h3 align="center">STATEMENT OF THE CASE</h3>

Plaintiffs commenced this action on September 5, 2012, filing a putative class

action complaint against JPMorgan Chase and Chase Investment Services Corporation

---

[1]     References to the appendix are cited as "A-__."

2

("CISC"). R. 1.[2] Plaintiffs alleged, among other things, that these defendants, over the course of several years, engaged in a purported self-dealing scheme to push and sell proprietary products to clients, regardless of their clients' best interests. R. 1 at 2, 3, ¶¶ 2-4. According to Plaintiffs, as part of this scheme, Defendants made representations to clients that they would provide objective, well-informed investment advice, when, in fact, they did not do so. *Id.*

JPMorgan Chase and CISC initially moved to dismiss this action on November 5, 2012 on the grounds that Plaintiffs' claims were preempted by SLUSA, Plaintiffs failed to state a claim, and, with respect to JPMorgan Chase, Plaintiffs lacked standing to bring a claim. R. 30. Rather than oppose that motion to dismiss, Plaintiffs filed an amended complaint on November 26, 2012 (the "Amended Complaint"). R. 34. The Amended Complaint added a new plaintiff (Terence Heuel) and additional defendants (JPMC Bank and JPMIM), and substituted JPMS as successor to CISC. The Amended Complaint also added allegations regarding purported written misrepresentations made by Defendants, including in brochures describing investment services that were filed with the Securities and Exchange Commission (the "SEC").

Of note, the Amended Complaint was actually the third attempt of Plaintiffs' counsel to formulate a viable claim; on July 13, 2012, two of Plaintiffs' counsel filed a

---

[2]     References to the record refer to the docket number and page number in the District Court proceeding and are cited as "R. __."

putative class action complaint in New York state court entitled *Tralins v. JPMorgan Chase & Co.*, No. 12-CV-5970 (N.Y. Sup. Ct. July 13, 2012). R. 47-1 at 3. The *Tralins* case was based on the same core allegations and claims as the instant action, but, in *Tralins*, plaintiff expressly alleged fraud on the basis of misrepresentations and omissions. *Id.* JPMorgan Chase removed *Tralins* to federal court pursuant to, *inter alia*, SLUSA. R. 47-1 at 24. Rather than seek remand or face mandatory dismissal with prejudice, plaintiff's counsel voluntarily dismissed the *Tralins* case on August 23, 2012. R. 47-1 at 53. The filing of this case in the Northern District of Illinois followed.

On December 21, 2012, Defendants moved to dismiss the Amended Complaint because, like the prior complaint, it was precluded by SLUSA, failed to state a claim, and, with respect to JPMorgan Chase and JPMIM, Plaintiffs lacked standing to assert a claim. R. 47. In a June 26, 2013 decision, the District Court dismissed the Amended Complaint, in its entirety and with prejudice. A-10. In doing so, the District Court properly considered the substance of the Amended Complaint, rather than relying on its form, and found that, "despite Plaintiffs' artful pleading, the Amended Complaint presents a claim for fraud" which "directly relates to the sale of proprietary mutual funds . . . ." A-9-A-10. As such, under the authority of, *inter alia,* this Circuit's decision in *Brown* and the United States Supreme Court's decision in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006), the District Court held that SLUSA preempted Plaintiffs' claims. A-10. The District Court did not have a need to address the

alternative grounds that Defendants had advanced for dismissal, including that the

Amended Complaint failed to state a claim upon which relief can be granted and that

Plaintiffs lack standing to assert their claims against JPMorgan Chase and JPMIM.  A-10

n.2.  Plaintiffs filed a Notice of Appeal on July 23, 2013.  R. 61.

## STATEMENT OF FACTS

Plaintiffs sued both individually and on behalf of a putative class of "all financial

advisory clients of Defendants from January 1, 2008 through the present (the 'Class

Period') whose funds were placed in Defendants' and/or their affiliates proprietary

mutual funds and investments and who were charged investment management fees by

Defendants . . . ."  R. 34 at 2, ¶ 1.  Plaintiffs sought recovery for breach of contract,

breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty,

and unjust enrichment.  *Id*.  Plaintiffs generally alleged that they entered into

standardized account agreements with JPMC Bank and JPMS (as the successor to CISC).

R. 34 at 5-6, ¶¶ 9-12.  According to Plaintiffs, pursuant to these agreements, they were

owed contractual and fiduciary obligations by all Defendants, which were purportedly

breached by Defendants' conduct throughout the Class Period.  R. 34 at 9, 11, ¶¶ 22, 28.

### A.  The Amended Complaint Pleads Misrepresentations, Omissions and Fraud Under SLUSA

The cornerstone of the Amended Complaint was Plaintiffs' claim that JPMorgan

engaged in a self-dealing scheme to push unsuspecting clients into proprietary funds

and investments, regardless of the clients' best interests.  R. 34 at 2, 31, ¶¶ 3, 99

("Defendants have been unjustly enriched through a self-dealing scheme aimed at enriching themselves at the expense of Plaintiffs and the other members of the Class."). According to the Amended Complaint, financial advisors were pressured and incentivized to sell proprietary funds to as many clients as possible and also to "switch" their clients' existing investments in non-proprietary funds into proprietary funds. R. 34 at 3, 18, 25, ¶¶ 4, 49, 72. Plaintiffs alleged that, by engaging in these practices, which they contended constitute conflicts of interest, JPMorgan was able to collect "fees associated with the transfer of . . . investments into Defendants' proprietary funds." R. 34 at 16, ¶ 42.

The Amended Complaint alleged that, in substance, in connection with this scheme, Defendants made misrepresentations and omissions. For example, Plaintiffs alleged that, on various websites, Defendants stated: "[o]ur clients come first," "we work to understand our clients' needs [and] offer informed advice," and "[w]e will work closely with you to understand your unique needs and create solutions designed to help you meeting your financial goals." R. 34 at 10-11, ¶¶ 23-24, 26. In addition, in brochures filed with the SEC, Defendants purportedly provided a description of their advisory services including that "JPMorgan funds are evaluated on the same criteria as unaffiliated funds." R. 34 at 14, ¶ 37. Plaintiffs claimed that these statements were false and that, rather than provide these services, Defendants instead "financially incentivized their financial advisors to cease performing honest and competent account

6

management services."  R. 34 at 18, 21-22, ¶¶ 49, 61.  Among other things, financial

advisors allegedly were "instructed not to bother conducting the research and analysis

necessary for client investments," were encouraged "to sell this or that JPMorgan

proprietary fund above all else," and were subject to "disciplinary action" if they failed

do so.  R. 34 at 19-21, ¶¶ 54, 58, 60.

Plaintiffs also claimed that Defendants heavily promoted a managed, fee-based

program called Chase Strategic Portfolio ("CSP"), which was at the center of

JPMorgan's "push" to sell proprietary funds.  R. 34 at 17, ¶ 46.  The Amended

Complaint alleged that in the press release announcing its launch, JPMorgan marketed

CSP as being tailored to a "client's individual goals, financial needs and risk tolerance

to help determine an appropriate asset-allocation strategy, and then the best portfolio."

R. 34 at 17, ¶ 47.  Furthermore, in "'[b]rochure[s]' filed with the SEC" in connection with

CSP and other managed account programs, Defendants purportedly stated that:

"'JPMorgan Funds undergo the same initial due diligence and ongoing monitoring that

unaffiliated third party mutual funds in the Program undergo'" and the Program is

"'carefull [sic] constructed for your investment objective." R. 34 at 13-15, ¶¶ 34-39.

Plaintiffs alleged that, in reality, JPMorgan was "unconcerned with conducting the

research necessary to identify the 'best portfolio' [for CSP customers]—choosing instead

to use its own proprietary funds and investments to profit through the constant flow of

account and management fees."  R. 34 at 17, ¶  47.

### B.  The Alleged Account Agreements

Plaintiffs alleged that they entered into certain unidentified account agreements with JPMS or JPMC Bank by which all Defendants were obligated to perform certain duties in exchange for fees.  R. 34 at 5-6, 11-12, ¶¶ 9-12, 28-31.  According to Plaintiffs, Defendants had contractual duties to "competently and honestly research, analyze, select investments and provide services," and Defendants "contracted to comply with all laws, rules, and regulations applicable to banks, brokerage firms, and investment advisors, as well as customs and standards in the financial services industry, representations made in marketing and advertising, and duties arising from common law." R. 34 at 11, 29, ¶¶ 28, 87.  But even after amending their complaint, Plaintiffs did not in any way identify the particular contracts or specify any of the terms that were purportedly breached.  *See, e.g.*, R. 34 at 12, ¶¶ 31-32 (referring generally to "financial advisory agreements").

### C.  JPMorgan Chase and JPMIM Are Improperly Named as Defendants

The Amended Complaint named JPMorgan Chase and JPMIM as Defendants.  R. 34 at 6-7, ¶¶ 15-16.  Plaintiffs did not allege that they entered into financial advisory (or any) agreements with either JPMorgan Chase or JPMIM or that either entity employed financial advisors who owed contractual or fiduciary duties to Plaintiffs.  *See* R. 34 at 5-7, ¶¶ 9-12, 15-16.  Instead, Plaintiffs alleged either that they "contracted to receive financial advisory services" from JPMS or that they "contracted to receive investment

management services" from JPMC Bank.  R. 34 at 5-6, ¶¶ 9-12.  They also alleged that

the financial advisors and representatives who purportedly owed them duties were

employed by JPMC Bank and JPMS; not JPMorgan Chase or JPMIM.  R. 34 at 9, ¶ 22.

Nonetheless, throughout the Amended Complaint, Plaintiffs repeatedly referred to

"Defendants" as a group, without distinguishing between the separate corporate

entities named.  *See*, *e.g.*, R. 34 at 18, ¶ 49 ("This skewed policy and practice caused

Defendants to breach the fiduciary and contractual obligations owed to Defendants'

clients.").

### D.  The District Court's Dismissal of the Amended Complaint Pursuant to SLUSA

On June 26, 2013, the District Court dismissed Plaintiffs' Amended Complaint, in

its entirety and with prejudice.  A-10.  As a threshold matter, the District Court

recognized that "[w]hen evaluating whether SLUSA applies, 'the analysis must focus on

the *substantive concepts* inherent in the complaint's allegations – not merely the words

used.'"  A-6 (citing *Jorling v. Anthem, Inc.* 836 F. Supp. 2d 821, 834 (S.D. Ind. 2011)).

Accordingly, looking at the Amended Complaint as a whole and disregarding

Plaintiffs' artful pleading, the District Court found that Plaintiffs pled both a fraudulent

scheme and misrepresentations:

> [T]he substance of Plaintiffs' allegations, when considered in their
> entirety, amounts to a claim of a fraudulent scheme by Defendants to sell
> Defendants' own proprietary mutual funds at the expense of their
> financial advisory clients.  Plaintiffs' Amended Complaint is replete with
> allegations that Defendants misrepresented its services for its own
> financial gain.

A-9.

The District Court then found that the standard articulated by this Court in *Brown* was satisfied. *Id.* The Amended Complaint alleged misrepresentations that "make it likely that an issue of fraud will arise in the course of litigation" and which "will be difficult and maybe impossible to disentangle from Plaintiffs' state common law claims. *Id.* (internal quotation marks omitted). Notably, in reaching its holding, the District Court rejected Plaintiffs' argument that the allegations in the Amended Complaint were simply admissions by Defendants regarding the nature of the fiduciary and contractual obligations owed by Defendants to their clients. A-3-A-4, A-9.

The District Court further held that the misrepresentations, omissions and fraud occurred "'in connection' with the purchase or sale of a security." A-9-A-10. The District Court explained that under *Dabit*, "SLUSA's 'in connection with the purchase or sale of securities' requirement must be subjected to a broad construction." *Id.* Because the "heart of Plaintiffs' Amended Complaint relates to the sale of Defendants' proprietary mutual funds, which hold securities" and because Plaintiffs even defined their proposed class as "all financial advisory clients of Defendants . . . whose funds were placed in Defendants' and/or their affiliates' proprietary mutual funds," the District Court found that, the "in connection with" requirement was satisfied. A-9-A-10 (internal quotation marks omitted). In addition, the District Court found that this Circuit's decision in *Gavin v. AT & T Corp.*, 464 F.3d 634, 638 (7th Cir. 2006), did not

support Plaintiffs' argument.  A-10.  The *Gavin* case involved a securities transaction that took place months before the fraudulent omission at issue.  *Id.*  Accordingly, the District Court distinguished *Gavin* because, in that case, and unlike here, the fraud was not sufficiently related to the purchase and sale of securities.  *Id.*

Holding that SLUSA preempted Plaintiffs' claims in their entirety, the District Court did not address whether Plaintiffs' claims should also be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or for lack of standing under Federal Rule of Civil Procedure 12(b)(1).  A-10 n.2.

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's June 26, 2013 decision dismissing the Amended Complaint, in its entirety.  Under SLUSA, a plaintiff may not bring: (i) a covered class action, (ii) based upon the statutory or common law of any state, (iii) where the complaint alleges a misrepresentation or omission of a material fact, or that defendants used or employed any manipulative or deceptive device or contrivance, (iv) in connection with the purchase or sale of a covered security.  15 U.S.C § 77p(b).  Plaintiffs did not contest before the District Court and do not dispute here that this is a covered class action, alleging state law claims, or that it includes covered securities.  Accordingly, the only issues before this Court are whether the Amended Complaint alleges (i) material misrepresentations, omissions or fraud that (ii) are in connection with the purchase or sale of a security.  The allegations of the Amended Complaint

plainly satisfy both of these criteria, and thus the District Court's dismissal was fully warranted.

First, the District Court properly held that the Amended Complaint alleges misrepresentations, omissions and fraud and the standard for SLUSA preclusion, as set forth by this Court in *Brown*, is satisfied. Based on the allegations in the Amended Complaint, "it [is] likely that an issue of fraud will arise" in this litigation and "[t]he allegation of fraud would be difficult and maybe impossible to disentangle" from Plaintiffs' state law claims. *Brown,* 664 F.3d at 128-29. The District Court also properly held that the misrepresentations, omissions and fraud alleged were "in connection with" the purchase and sale of a covered security. The Amended Complaint alleges a pervasive self-dealing scheme to push and sell proprietary funds. The alleged misconduct directly relates to the sale of these funds and SLUSA's "in connection with" requirement is easily satisfied. Second, the District Court's decision may also be affirmed on the alternative grounds that Plaintiffs fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Finally, dismissal of the claims against JPMorgan Chase and JPMIM, separately, may be affirmed because Plaintiffs lack standing to assert such claims against these Defendants under Federal Rule of Civil Procedure 12(b)(1).

## **STANDARD OF REVIEW**

This Court reviews *de novo* a district court's interpretation of a statute, such as SLUSA.  *Disher v. Citigroup Global Mkts. Inc.*, 419 F.3d 649, 651 (7th Cir. 2005) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 326 (7th Cir. 1995) (reviewing *de novo* "a question of statutory construction")), *vacated on other grounds*, 548 U.S. 901 (2006).  To determine whether SLUSA applies, courts look to the substance of the allegations in the complaint, rather than the form.  *See Brown*, 664 F.3d at 126-27 (applying SLUSA preclusion despite plaintiff's express disclaimer that the complaint contained no allegations of misrepresentations, omissions or fraud); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) ("Courts may look to—they must look to— the substance of a complaint's allegations in applying SLUSA.").  To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Where state law claims include "averments of fraud," as Plaintiffs' claims do here, the more rigorous federal pleading standards under Federal Rule of Civil Procedure 9(b) apply.  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).  Claims may be dismissed for lack of standing under Federal Rule of Civil Procedure 12(b)(1) pursuant to a facial challenge on the pleadings or a factual challenge

based on "external facts" beyond the allegations in the complaint.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009).

## ARGUMENT

I.   **THE DISTRICT COURT CORRECTLY DISMISSED THIS ACTION BECAUSE THE AMENDED COMPLAINT SATISFIES EACH OF SLUSA'S ELEMENTS**

SLUSA provides that a plaintiff may not bring: (i) a covered class action, (ii) based upon the statutory or common law of any state, (iii) where the complaint alleges a misrepresentation or omission of a material fact, or that defendants used or employed any manipulative or deceptive device or contrivance, (iv) in connection with the purchase or sale of a covered security.  15 U.S.C § 77p(b).  Plaintiffs do not contest that this action is a "covered class action," based upon state law, or that the funds and investments at issue include "covered securities" under SLUSA, and therefore, these elements are not in question before this Court.[3]  *See* A-6; Apps.' Br. at 9-10.[4]

---

[3]   The Amended Complaint alleges a covered class action as defined under SLUSA because it is brought on behalf of a putative class of more than 50 persons or by one or more named parties acting as class representatives.  R. 34 at 27, ¶¶ 79-82; 15 U.S.C. § 77p(f)(2).  It also purports to be based upon state common law.  See R. 34 at 2, ¶ 1;  U.S.C. § 77p(b).  Further this action involves a "covered security."  Under SLUSA, a "covered security" is one that is traded nationally and listed on a national exchange or that is "issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940."  15 U.S.C. § 77p(f)(3); 15 U.S.C. § 77r(b).  Here, Plaintiffs alleged that the proprietary funds and investments at issue include mutual funds, which constitute covered securities.  *See* R. 34 at 13, 17, ¶¶ 34, 46; *Kircher v. Putnam Funds Trust*, 403 F.3d 478,

Congress enacted SLUSA to "'prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of'" the federal securities laws.  *See Dabit*, 547 U.S. at 82 (internal quotation marks omitted).  Courts interpret SLUSA broadly and dismiss actions falling within its scope.  *See id.* at 86 ("The presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment.").  Dismissal under SLUSA is with prejudice.  *See Brown*, 664 F.3d at 131 (allowing plaintiff to amend complaint to delete allegations of fraud, "would not be credible" since "[t]he likelihood that he would do everything he could to sneak the allegation back into the case, if the complaint were amended . . . would be so great as to make it imprudent to allow the complaint to be amended. . . .").  As set forth below, each of the challenged elements of SLUSA is satisfied.

## A.  The Amended Complaint Alleges a Misrepresentation or Omission of a Material Fact and a Manipulative or Deceptive Device or Contrivance as Required Under SLUSA

This case concerns a purported fraudulent scheme to sell proprietary products to unsuspecting clients.  To facilitate this scheme, Defendants purportedly made

---

481 (7th Cir. 2005) (holding that "[i]nvestments in mutual funds are 'covered securities'"), *vacated on other grounds*, 547 U.S. 633 (2006).

[4]  References to the Brief and Appendix for Plaintiffs-Appellants are cited as "Apps.' Br. at __."

representations on websites, in marketing materials, and in brochures that were filed with the SEC, stating, *inter alia,* that Defendants would "offer informed investment advice," "understand clients' needs" and tailor products to "enhance your complete financial situation." Plaintiffs allege that, instead of providing these services, Defendants pushed, sold or placed clients into JPMorgan proprietary funds, regardless of their clients' best interests. Such statements, when read in the context of the Amended Complaint as a whole, constitute misrepresentations and omissions for purposes of SLUSA preclusion.

1. **The Amended Complaint Satisfies the Standard for SLUSA Preclusion Set Forth in *Brown v. Calamos***

In *Brown*, this Court set forth the standard to determine whether, under SLUSA, a complaint alleges fraud, through misrepresentations, omissions or otherwise. The *Brown* court affirmed the dismissal under SLUSA of a lawsuit alleging breach of fiduciary duty and unjust enrichment claims by plaintiffs who were owners of common stock in a closed-end investment fund and were harmed when the fund redeemed shares of its preferred holders. 664 F.3d at 130-31. The Court disregarded plaintiffs' express disclaimer of fraud, which is nearly identical to the disclaimer in the Amended Complaint and, instead, looked to the substance of the allegations. *Id.* at 126-27. In doing so, the Court ruled that a misrepresentation had been alleged—defendant purportedly made statements indicating holders of common stock could realize indefinite leverage (which was alleged to be not true). *Id.* at 126-27. The Court also

ruled that an omission—the fund might at any time redeem its preferred stock—had at least implicitly been made. *Id.* at 127. The court then concluded that dismissal was warranted because: "the allegations of the complaint make it likely that an issue of fraud will arise in the course of the litigation" and "[t]he allegation of fraud would be difficult and maybe impossible to disentangle from the charge of breach of the duty of loyalty that the defendants owed their investors." *Id.* at 128-29.

The District Court correctly applied the *Brown* standard. The gravamen of the Amended Complaint is a purported overarching, self-dealing scheme, emanating from top management, to sell JPMorgan's proprietary funds instead of conducting proper due diligence. The Amended Complaint alleges, for example, that:

- "Defendants . . . instituted centralized policies and practices . . . to . . . push[ ] and incentivize[e] their financial advisors to put the financial interests of Defendants ahead of the financial interests of the clients." (R. 34 at 3, ¶ 3);

- "The work environment created by senior management's skewed incentive policies was such that the financial advisors could not survive if they performed the services that they were supposed to for their clients." (R. 34 at 19, ¶ 51);

- "JPMorgan *exploited* its contacts with . . . [WaMu] account holders to generate substantial fees from fund switching." (R. 34 at 25, ¶ 72) (emphasis added);

- "Defendants have been unjustly enriched through a *self-dealing scheme* aimed at enriching themselves at the expense of Plaintiffs and the other members of the Class." (R. 34 at 31, ¶ 99) (emphasis added).

According to the Amended Complaint, as an integral part of this scheme, JPMorgan's clients were misled. Plaintiffs allege that clients purportedly were told one thing (conduct appropriate due diligence), yet, all the while, Defendants intended to

and did do another thing (push and sell proprietary products to increase Defendants'

own profits).  Thus, for example, Plaintiffs claim that Defendants stated on websites, in

marketing materials, and in SEC filings that, *inter alia*, "JPMorgan Funds undergo the

same initial due diligence and ongoing monitoring that unaffiliated third party mutual

funds in the Program undergo" (R. 34 at 13, ¶ 34); or that "[w]e will work closely with

[clients] to understand [the clients'] unique needs and create solutions designed to help

you meet your financial goals." (R. 34 at 11, ¶ 26).  Instead, however, Plaintiffs allege

that financial advisors "ceased – at Defendants' directive – performing time-consuming

research and analysis and were instructed to place as many clients as possible into as

many of Defendants' proprietary funds and investments as possible, without regard for

their clients' interests."  R. 34 at 4, ¶ 5.

As the District Court correctly recognized, taken together, these are classic

allegations of misrepresentations and omissions: instead of working towards their

clients' best interests or understanding their clients' "unique needs," Defendants

purportedly instituted practices and procedures designed to "sell this or that JPMorgan

proprietary fund above all else . . . ."  R. 34 at 21, ¶ 58; A-9 ("Plaintiffs' Amended

Complaint is replete with allegations that Defendants misrepresented its services for its

own financial gain).  *See also Brown v. Calamos*, 777 F. Supp. 2d 1128, 1131-32 (N.D. Ill.

2011) (finding SLUSA applied where "the 'overarching theme' of the complaint is that

defendants misled common shareholders" and finding that "Plaintiff's further

allegations that undisclosed conflicts of interest drove defendants' decision to redeem the [preferred shares] reinforces this conclusion . . . "), *aff'd,* 664 F.3d 123 (7th Cir. 2011); *Daniels v. Morgan Asset Mgmt., Inc.*, 743 F. Supp. 2d 730, 740 (W.D. Tenn. 2010) ("[T]he undisclosed conflict of interest is precisely what Plaintiffs argue caused Defendants to do what they 'did.' . . . Plaintiffs cannot avoid SLUSA by merely pleading the elements of state-law claims and incorporating by reference tacit allegations of misrepresentations and omissions."), *aff'd,* 497 Fed. Appx. 548 (6th Cir. 2012).[5]

### 2. Plaintiffs' Claims Rest Upon Allegations of Misrepresentations, Omissions and Fraud

In an effort to evade SLUSA, Plaintiffs attempt to mischaracterize their own allegations of purported misrepresentations as statements that merely acknowledge or define the scope of Defendants' fiduciary and contractual duties. According to Plaintiffs, the misrepresentations alleged are inessential to and have no bearing on either their breach of contract or breach of fiduciary duty claims. *See* Apps.' Br. at 14-16.[6] Plaintiffs argue that this case can be distinguished from *Brown* because neither their

---

[5]   SLUSA preemption also applies to the extent Plaintiffs' allegations of a scheme amount to a "manipulative or deceptive device or contrivance." 15 U.S.C § 77p(b).

[6]   In arguing that the alleged misrepresentations are inessential, Plaintiffs partially ignore Brown and instead (incorrectly) advance the SLUSA standard articulated by the Third Circuit in *LaSala v. Bordier et Cie*. 519 F.3d 121, 141 (3d Cir. 2008) (holding that SLUSA preclusion applies where the allegation of misrepresentation or omission is a "necessary[ ] fact," "that gives rise to liability, not merely an extraneous detail"). *LaSala,* however, is not the standard in the Seventh Circuit.

breach of contract claim nor their breach of fiduciary duty claim "rests on" any

misrepresentations, omissions or fraud.[7] Apps.' Br. at 21.

Plaintiffs' contention, however, is not a reasonable reading of the Amended

Complaint.  Regardless of whether the representations alleged described Defendants'

fiduciary and contractual obligations, as Plaintiffs now assert, according to the

Amended Complaint, they also were used by Defendants to mislead clients in order to

achieve the objective of their scheme—*i.e.,* increasing profits for JPMorgan.  R. 34 at 15-

16, 21-22, ¶¶ 42, 61-62.  Thus, contrary to Plaintiffs' argument, the misrepresentations

and omissions alleged cannot be disentangled from their state law claims.  *See Felton v.*

---

*Brown,* 664 F.3d at 128 (asserting a standard closer to, but not exactly, the Third
Circuit's standard).  Regardless, even under the Third Circuit's standard, SLUSA
applies here—the misrepresentations and omissions alleged are in connection with a
purported self-dealing scheme that serve as the basis of Plaintiffs' claims; for the
reasons set forth below they are not merely extraneous detail.

[7]  Plaintiffs also contend that *Brown* is distinguishable because the plaintiffs in *Brown*
"alleged an actual misrepresentation in the form of a public statement made by
defendants, and asserted that the defendants omitted to disclose certain conflicts of
interest."  Apps.' Br. at 21.  To the contrary, the *Brown* court interpreted the public
statements at issue to allege a misrepresentation, even though such statements did
not "say this in so many words."  *Brown*, 664 F.3d at 126-27.  Similarly the *Brown*
court found that the complaint alleged a misleading omission of a conflict of interest,
"at least implicitly," even though an omission was not expressly alleged.  *Id.* at 127;
*see also* R. 34 at 16, ¶ 43 (alleging "conflicts of interest").  Furthermore, the Amended
Complaint, like *Brown,* contains numerous allegations of purported
misrepresentations (in the form of public statements) and omissions (including
conflicts of interest) integral to the alleged deceptive scheme, which form the basis of
this lawsuit.

*Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 693 (S.D.N.Y. 2006) (defendants'
statements may have resulted in a breach of "standardized contracts," but are "also a
quintessential example of a fraudulent omission . . . under the federal securities laws.");
*Kutten v. Bank of Am., N.A.*, 530 F.3d 669, 671 (8th Cir. 2008) (finding no distinction
between a misrepresentation and omission for SLUSA purposes and a failure to disclose
or to be honest in breach of the fiduciary duties owed to trust beneficiaries).

Specifically, with respect to Plaintiffs' fiduciary duty claims, Plaintiffs allege that
Defendants have fiduciary duties to their clients including a duty of loyalty.  R. 34 at 2,
¶ 2.  By placing clients into proprietary fund and investments, Plaintiffs allege that
Defendants engaged in a practice that implicated conflicts of interest (*i.e.*, selling
unsuspecting clients proprietary funds which would benefit Defendants).  R. 34 at 16,
¶ 43.  But placing a client in a proprietary fund does not necessarily constitute a breach
of fiduciary duty because full disclosure and consent satisfies that duty.  *See Capital Dist.
Physician's Health Plan v. O'Higgins*, 939 F. Supp. 992, 1004 (N.D.N.Y. 1996) (holding
investment advisor "had a duty to reveal conflicts of interest" because, *inter alia*,
analogous to an agent's duty, "the absolute prohibition against having such adverse
interest only disappears when the agent discloses the conflicting interest and the
principal consents to the conflict.") (citing *Constr. Techniques, Inc. v. Dominske*, 928 F.2d
632, 638 (4th Cir. 1991)), *vacated pursuant to settlement*, No. 94-CV-61, 1998 WL 34083619
(N.D.N.Y Jan. 8, 1998); *O'Malley v. Boris*, 742 A.2d 845,849 (Del. 1999) ("[T]he broker

must act in the customer's best interests and must refrain from self-dealing unless the customer consents, after full disclosure."); *cf. SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 196 (1963) (holding that under the Investment Advisors Act of 1940, "[a]n investor seeking the advice of a registered investment adviser must . . . be permitted to evaluate such overlapping motivations, through appropriate disclosure, in deciding whether an adviser is serving two masters or only one, especially if one of the masters happens to be economic self-interest.") (internal citation and quotation marks omitted).[8] Moreover, Plaintiffs do not allege that the proprietary funds performed poorly or, in fact, were not, ultimately, in the clients' best interests. *See infra* II.A.3.

Accordingly, these allegations demonstrate why "it [is] likely that an issue of fraud will arise in the course of [this] litigation" and will be "difficult and maybe impossible to disentangle from the charge of breach of the duty of loyalty." *Brown*, 664 F.3d at 128-29. If this litigation were to continue, Defendants, as a defense to Plaintiffs' fiduciary duty claim, might argue that there was full disclosure and/or consent. In response, Plaintiffs might claim that there were omissions—Defendants did not disclose

---

[8]     In *Brown,* in the context of a directors' duty to shareholders, this Court noted that "disclosures would be ineffectual against a claim of breach of the duty of loyalty." 664 F.3d at 129. In doing so the *Brown* court cited to, *inter alia, Schock v. Nash*, 732 A.2d 217, 225 (Del. 1999), which recognized the general principle that Delaware directors may not waive their duty of loyalty. 732 A.2d at 225, n21. The issue that is likely to arise here though is not a waiver of the duty of loyalty. Instead, the issue is whether clients, upon full disclosure, have consented to certain purported self-dealing practices. *See O'Malley,* 742 A.2d at 849.

(or did not adequately disclose) the purported conflicts of interest—and associated misrepresentations. This type of dispute is precisely what *Brown* warned of and exactly the type of allegations that SLUSA precludes. *See Brown*, 664 F.3d at 130-31 ("Though the suit is for breach of fiduciary obligations, the breach appears to rest on an allegation of fraud, as is often the case."); *see also Kutten*, 530 F.3d at 670-71 (finding that where trustee bank purportedly breached its fiduciary duties by funneling assets into proprietary funds, "without allegations of deceptive and misleading conduct, the Appellants' complaint was empty of any non-preempted class action claims").

Similarly, Plaintiffs do not allege a simple breach of contract claim (to the extent they allege one at all). Plaintiffs' allegations regarding the marketing and sale of CSP demonstrate this point. According to Plaintiffs, at the center of JPMorgan's "push" to sell proprietary products were managed and fee-based accounts like CSP. R. 34 at 17, ¶ 46. Plaintiffs allege that CSP has been a "boon for Defendants" and, "[i]n the four year since its creation, [CSP] has amassed roughly $20 billion in assets." R. 34 at 17, ¶ 48. The Amended Complaint alleges that this success could not have been possible without misstatements made by Defendants in marketing the CSP product:

> In the press release announcing the launch of the CSP, JPMorgan reiterated its commitment to the fiduciary relationship it has with its clients, stating that "[a] financial advisor uses a client's individual goals, financial needs and risk tolerance to help determine an appropriate asset-allocation strategy, and then the 'best portfolio.'" JPMorgan, however, was unconcerned with conducting the research necessary to identify the "best portfolio" – choosing instead to use its own proprietary funds and

> investments to profit through the constant flow of account and
> management fees.

R. 34 at 17, ¶ 47.  Thus, according to the Amended Complaint, Defendants promised to

provide certain services and products that they never intended to provide.[9]  Courts

recognize that allegations such as these constitute misrepresentations.  *See Kurz v.*

*Fidelity Mgmt. & Research Co.*, No. 07-cv-709-JPG, 2008 WL 2397582, at *4 (S.D. Ill. June

10, 2008) (finding that plaintiffs alleged misrepresentations, and not just a simple breach

of contract claim, "because neither party to the contract ever had any intention of

fulfilling that term of the contracts"), *aff'd on other grounds*, 556 F.3d 639 (7th Cir. 2009);

*see also In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 573 (S.D.N.Y. 2012)

(noting that a contract claim may constitute fraud for SLUSA purposes if, "when the

promise was made, the defendant secretly intended not to perform or knew that he

could not perform") (internal quotations marks omitted).[10]

---

[9]  In addition to allegations regarding CSP, there are many other examples of alleged
misrepresentations, omissions and fraud in the Amended Complaint that satisfy
SLUSA.  *See, e.g.*, R. 34 at 22, ¶ 64 ("Landgraff blindly recommended high-risk,
illiquid JPMorgan funds that bore no resemblance to the types of investments that
the client wished to purchase."); R. 34 at  25, ¶ 74 ("The WaMu account-holding
clients who became Defendants' account-holding clients paid fees expecting to
receive competent and diligent core services.  Instead, these clients were exploited
by being switched to JPMorgan proprietary funds from other fund families simply
to generate increased fees for Defendants.")

[10]  Plaintiffs also argue that SLUSA is not satisfied because they do not allege that they
relied on any of the misrepresentations nor do they attempt to establish the falsity of
any statements. Apps.' Br. at 3, 9, 20.  However, neither reliance nor scienter are

### 3. The Overwhelming Weight of Authority Requires Dismissal Under SLUSA

In addition to this Court's ruling in *Brown*, decisions by a number of other circuits support affirming the District Court's dismissal under SLUSA. In those cases, circuit courts affirmed the dismissal under SLUSA of state law claims alleging an undisclosed conflict of interest (*e.g.,* investments by defendants in proprietary products), like in the Amended Complaint here. For example, in *Daniels v. Morgan Asset Management, Inc.*, plaintiffs alleged that defendant Morgan Asset Management breached certain advisory agreements because it was required by other entities in the corporate structure to invest assets of plaintiffs' trusts account in unsuitable proprietary funds. 497 Fed. Appx. 548, 551, 554 (6th Cir. 2012). In affirming the district court's dismissal under SLUSA, the Sixth Circuit found that "[p]laintiffs in substance allege [defendant] both made an untrue statement at the time it contracted and omitted a material fact during the contractual period by failing to disclose this conflict of interest.*" Id*. Thus, the *Daniels* court concluded, "[p]laintiffs' claims are grounded in fraud." *Id.*; *see also Segal*, 581 F.3d at 309-10 (affirming dismissal under SLUSA where defendant

---

elements of SLUSA preclusion. *See Anderson v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) ("the weight of the authority is overwhelmingly against" the argument that SLUSA requires reliance); *Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 698-700 (S.D. Ill. 2007) ("[T]he applicability of SLUSA preclusion . . . does not hinge on whether the omissions at issue were made with intent to deceive or not . . . ."). Moreover, SLUSA requires dismissal regardless of whether Plaintiffs' claims could be successfully pled under the federal securities laws. *See Kircher*, 403 F. 3d at 484.

"purported to 'provide planning "advice" under the guise that the advice was

customized when, in fact, it [was] not'"); *Kutten*, 530 F.3d at 670-71 (affirming dismissal

under SLUSA where claims centered on defendant's "alleged plan to funnel trust assets

into a [proprietary] mutual fund"); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294,

299-300 (3d Cir. 2005) ("The misrepresentation issue is straightforward.  Plaintiff's

complaint is replete with allegations that [defendant] disseminated biased and

materially misleading investment research.").

Myriad district courts have also applied SLUSA to cases involving allegations

very similar to those here—*i.e.*, where defendants purportedly acted in their own self-

interest, rather than their clients' interests.  *See, e.g., Kutten v. Bank of Am., N.A.*, No. 06-

0937 (PAM), 2007 WL 2485001, at *5, *8 (E.D. Mo. Aug. 29, 2007) (finding

misrepresentations and omissions where plaintiffs alleged defendant transferred trust

assets to proprietary funds "under the guise of providing individual and customized

management of assets") (internal quotation marks omitted), *aff'd*, 530 F.3d 669 (8th Cir.

2008); *Rabin v. JPMorgan Chase Bank, N.A.*, No. 06 C 5452, 2007 WL 2295795, at *1, *8

(N.D. Ill. Aug. 3, 2007) (dismissing state law claims under SLUSA where defendants

allegedly schemed to invest "fiduciary account assets into its proprietary mutual fund . .

. without regard to whether such investments were in the best interests of the

beneficiaries"); *Spencer v. Wachovia Bank, N.A.*, No. 05-81016CIVRYSKAMP, 2006 WL

3408043, at *1, *4 (S.D. Fla. May 10, 2006) (finding SLUSA applied to complaint alleging

"Wachovia devised a scheme to maximize its profits by forcing the irrevocable trusts to invest in the [proprietary funds] whether or not such investments were in the best interests of the trusts or their beneficiaries"); *Felton*, 429 F. Supp. 2d at 692-695 (finding SLUSA applied where plaintiffs alleged that Morgan Stanley breached its contractual duties to customer clients to provide objective advice by, instead, providing biased investment advice favoring the firm's investment banking client).[11]

In contrast, Plaintiffs rely on authority that is unpersuasive or inapposite.  For example, Plaintiffs rely heavily on *Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382 (S.D.N.Y. 2004).   As the District Court explained, the *Norman* case, which involved nearly identical facts as *Felton*, was decided two years before *Felton* and prior to both the Second Circuit's and Supreme Court's decisions in *Dabit*.  *See* A-8 n.1.  *Norman* is not consistent with other rulings in the Southern District of New York or in other courts.  As a result, like the District Court in this case, several courts have declined to follow *Norman*.  *See Segal v. Fifth Third Bank, N.A.*, No. 1:07-cv-348, 2008 WL 819290, at *6 (S.D.

---

[11] Plaintiffs attempt to distinguish *Felton* because it involved standardized contracts that were subject to federal and state law and rules and customs of industry self-regulatory organizations, one of which prohibited defendant from omitting material facts.  *See* Apps.' Br. at 22.  Here, however, Plaintiffs also allege that the standardized contracts incorporated "all laws, rules, and regulations applicable  . . . as well as customs and standards in the financial services industry . . . ."  R. 34 at 11, ¶ 28.  Moreover, like *Felton*, Plaintiffs allege a fraudulent scheme that involves the same misrepresentations and omissions of material fact – *i.e.* that Defendants purported to provide objective advice but in actuality provided biased advice.

Ohio Mar. 25, 2008) ("*Norman* was clearly driven by the fact that plaintiffs were not purchasers or sellers of securities."), *aff'd*, 581 F.3d 305 (6th Cir. 2009); *Levinson v. PSCC Services, Inc.*, 3:09-CV-00269 (PCD), 2009 WL 5184363, at *12 (D. Conn. Dec. 23, 2009) (finding plaintiff's reliance on *Norman* was unpersuasive because the case preceded *Dabit*).

Plaintiffs also rely on *Freeman Investments, L.P. v. Pacific Life Insurance Co.*, 704 F.3d 1110 (9th Cir. 2013). Plaintiffs in *Freeman* alleged defendants breached their contract by charging fees in excess of the "cost of insurance," as defined by the industry. *Id.* at 1114. The court characterized this "dispute about the meaning of a key contract term" as a "straightforward contract claim that doesn't rest on misrepresentation or fraudulent omission." *Id.* at 1115, 1118. By contrast, Plaintiffs here do not allege any "disputed truth" about the interpretation of a contract term, let alone identify any specific contract purportedly breached. *Id.* at 1115-16 ("[A] contract dispute commonly involves a 'disputed truth' about the proper interpretation of the terms of a contract . . .") (internal quotation marks omitted). In fact, if anything, *Freeman* highlights the difference between a straightforward breach of contract claim (*i.e.,* a dispute regarding the interpretation of a specific term) and the Amended Complaint, which alleges an overarching self-dealing scheme to mislead clients while, at the same time, failing to plead any particular terms of the contract that were purportedly breached.

28

Finally, Plaintiffs' reliance on *Stoody-Broser v. Bank of America, N.A.*, No. C 08-cv-02705 JSW, 2012 WL 1657187 (N.D. Cal. May 10, 2012) and *In re Charles Schwab Corp. Securities Litigation*, 257 F.R.D. 534 (N.D. Cal. 2009) is misplaced.  In *Brown,* this Court expressly rejected the approach taken by the Ninth Circuit in *Stoody-Broser* and thus the holding in the district court case cited by Plaintiffs has no bearing here.  *Brown*, 664 F.3d at 127.  In *Charles Schwab,* the court applied the Third Circuit's standard (which is stricter than the standard in *Brown)* and found that SLUSA did not apply because plaintiffs in that case did not, expressly or impliedly, allege a failure to disclose.  257 F.R.D. at 551.  Rather, "plaintiffs readily agree[d] that Schwab properly disclosed the [misconduct] but argue that the change was nevertheless improper." *Id*.

### 4. Plaintiffs Cannot Avoid SLUSA Through Artful Pleading

Contrary to Plaintiffs' assertions, the District Court did not "improperly recast Appellants' allegations."  Apps.' Br. at 8.  Instead, the District Court properly disregarded Plaintiffs' attempts to avoid SLUSA through artful pleading, including Plaintiffs' express disclaimer of fraud and their artful editing out of express allegations of fraud.  *See* A-9 ("Consequently, despite Plaintiffs' artful pleading, the Amended Complaint presents a claim for fraud."); *Brown*, 664 F.3d at 126-27 (finding SLUSA applied despite plaintiff's disclaimer that there were no allegations of misstatements, omissions or fraud).

### a.   Courts Look to the Substance of a Complaint, Not Its Form, to Determine Whether SLUSA Applies

It is well established that, to determine whether SLUSA preempts a plaintiff's claims, courts look to the substance of a complaint, not its form. *See Segal*, 581 F.3d at 310 ("Courts may look to—they must look to—the substance of a complaint's allegations in applying SLUSA."); *Kutten*, 530 F.3d at 670 ("In determining whether SLUSA applies, we do not rely on the names of the causes of action that the plaintiff alleges.  Instead we look at the substance of the allegations, based on a fair reading."); *Rowinski*, 398 F.3d at 304 ("SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting."); *Jorling*, 836 F. Supp. 2d at 835 ("Artful pleading cannot be used to frustrate the purposes of PSLRA and SLUSA."); *Richek v. Bank of Am., N.A.*, No. 10-cv-6779, 2011 WL 3421512, at *3 (N.D. Ill. Aug. 4, 2011) ("[W]hen analyzing SLUSA preclusion, courts are guided by the substance rather than the form of a claim.").

Plaintiffs argue that this wealth of authority should be disregarded.  According to Plaintiffs, "a court cannot impose upon a plaintiff claims that he, as a master of his complaint, has endeavored to avoid pleading."  Apps.' Br. at 13.  To support this argument, Plaintiffs cite to *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795 (7th Cir. 2013), a case involving the preemption of a state claim for retaliatory discharge under the Labor Management Relations Act ("LMRA").  But plaintiffs misconstrue the holding of *Crosby*. The court in *Crosby* explained that, where a federal statute preempts state law, courts

look to the substance of plaintiff's claims, not the form. *See Crosby*, 725 F.3d at 800 ("it is not enough for a court to accept a plaintiff at her word . . . [r]ather . . . a federal court must 'look beyond the face of plaintiff's allegations and labels used to describe her claims . . . and evaluate the substance of plaintiff's claims.'"). The court then held that, in the specific context of the LMRA, the doctrine of complete preemption "has its limits." *Id.* Specifically, the court noted that, "The Supreme Court has made clear that preemption does not extend to every state law that touches upon rights governed by the [LMRA]—that is, rights that may have some connection to a CBA [collective bargaining agreement]." *Id.* Rather, only those state-law claims that require 'interpretation' of a CBA are inevitably federal." *Id.* (internal citation omitted).[12]

---

[12] Plaintiffs also say that the *Crosby* court remanded the case to state court because the "allegations laid out by the plaintiff made it clear that she chose to assert state law claims to the exclusion of a federal cause of action." Apps.' Br. at 13. This statement is not correct. The *Crosby* court remanded the case because it found that "[n]one of the[ ] elements" of plaintiff's state law claim "immediately calls to mind a labor contract." *Crosby*, 725 F.3d at 801. Instead, the court explained, "the elements of a retaliatory discharge claim are 'purely factual' and 'pertain[ ] to the conduct of the employee and the conduct and motivation of the employer,'" they do not implicate the terms of the labor contract. *Id.* To the extent *Crosby* references the principle that a plaintiff may "eschew[ ] claims based on federal law" it is in the context of the rule that, for purposes of preemption under the LMRA, the presence of a federal question in a defensive argument does not overcome the well-pleaded complaint. *Id.* at 800-01 (internal quotation marks omitted). In other words, the court will only look at plaintiff's claims, not at the defenses asserted. This rule has no bearing here. The District Court looked only at Plaintiffs' claims to determine if the criteria of SLUSA were satisfied. Other than SLUSA, which itself is an affirmative defense, Defendants did not "inject[ ] a federal question" into the action. *Id.* at 801 (internal

*Crosby* pertains specifically to rights governed by the LMRA and the interpretation of collective bargaining agreements. Plaintiffs offer no support for their conclusory contention that the holding or rationale of *Crosby* should apply to SLUSA. This is especially true given that the standard to determine whether SLUSA applies was set forth by this Court in *Brown* and it is entirely consistent with the policy underlying the statute itself. *See Segal*, 581 F.3d at 310 ("Courts may look to—they must look to— the substance of a complaint's allegations in applying SLUSA. Otherwise, SLUSA enforcement would reduce to a formalistic search through the pages of the complaint for magic words . . . and nothing more."). That said, even if the rationale of *Crosby* were applied here, the result would be no different. *Crosby* recognizes that (i) the well-pleaded complaint rule does not apply for purposes of federal preemption, (ii) courts must evaluate the substance of a complaint to determine whether preemption applies, and (iii) for state law claims to be preempted under the LMRA, they must require interpretation of a collective bargaining agreement. This is the same approach the District Court took to determine whether SLUSA applies. The difference, of course, is that here, rather than determine whether Plaintiffs' claims required interpretation of a collective bargaining agreement (which would be illogical), the District Court instead

---

quotation marks omitted); *see Brown*, 664 F.3d at 128 ("when SLUSA is a bar, it operates as an affirmative defense").

evaluated the substance of the Amended Complaint and applied the standard set forth

in *Brown* (whether "it [is] likely that an issue of fraud will arise" and whether "it will be

difficult and maybe impossible to disentangle.").[13] A-9 (internal quotation marks

omitted).

### b. The *Tralins* Complaint Demonstrates the True Nature of Plaintiffs' Allegations

The *Tralins* complaint, which certain of Plaintiffs' counsel first filed in New York

state court, is relevant to this Court's inquiry because it demonstrates the true nature of

Plaintiffs' allegations. *Tralins* was based on the very same purported underlying

conduct that is at issue here, but in describing that conduct, the *Tralins* complaint

expressly alleged misrepresentations, omissions and fraud:

---

[13] Plaintiffs also cite to *Mendez v. Plastofilm Industries, Inc.*, No. 91 C 8172, 1992 WL 80969 (N.D. Ill. Apr. 15, 1992), to support their argument that plaintiff is "'master of his complaint." Apps.' Br. at 13-14. Like *Crosby*, *Mendez* is not a SLUSA case. Defendants in *Mendez* did not even argue plaintiff engaged in artful pleading to avoid federal jurisdiction. 1992 WL 80969, at *2. The other cases Plaintiffs cite also are inapposite and do not involve SLUSA. *See e.g. Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379 (7th Cir. 1990) (determining whether plaintiff's claim against a majority shareholder for wrongful competition required joinder of the corporation and destruction of diversity jurisdiction); *Gilmore v. Sw. Bell Mobile Sys., Inc.*, 156 F. Supp. 2d 916 (N.D. Ill. 2011) (assessing whether telephone customer's state law claims for breach of contract, fraud and unjust enrichment were preempted by the Federal Communications Act); *Henderson v. Vill. of Dixmoor*, 99 F. Supp. 2d 940 (N.D. Ill. 2000) (dismissing plaintiffs' amended complaint as untimely because § 1983 claims did not relate back to state tort claims originally alleged), *aff'd sub nom., Henderson v. Bolanda*, 253 F.3d 928 (7th Cir. 2001).

- "JPMorgan acting fraudulently, with bad faith, gross negligence, for self-interested reasons . . . breached its fiduciary duties by selling Plaintiff and the Class members JPMorgan's proprietary funds and investments . . ." (R. 47-1 at 14, ¶ 69);

- "JPMorgan misrepresented its proprietary funds' and investments' returns in marketing materials, enticing Plaintiff and the other members of the Class to purchase JPMorgan's products." (R. 47-1 at 17, ¶ 92);

- "JPMorgan's deceptive acts and practices, including omissions, were designed to mislead reasonable consumers acting reasonably under the circumstances." (R. 47-1 at 15, ¶ 75).

The underlying conduct complained of in the Amended Complaint is the very same as in *Tralins*—*i.e.*, Defendants engaged in a "self-dealing scheme" to sell JPMorgan proprietary funds, regardless of their clients' best interests—but Plaintiffs blot out words such as "fraud," "evil motive," "mislead" or "omissions" in an attempt to artfully avoid SLUSA. *Compare* R. 34 at 31, ¶ 100 ("Defendants received fees from Plaintiffs and the other members of the Class, directly or indirectly, by breach of fiduciary duty, violation of trust and other wrongful acts."), *with* R. 47-1 at 17, ¶ 85 ("JPMorgan received fees from Plaintiff and the Class members, directly or indirectly, by breach of fiduciary duty, violation of trust, and other wrongful, ***deceitful and fraudulent*** acts.") (emphasis added).

Such artful wordsmithing does not defeat the purpose of SLUSA. In *Jorling*, the only relevant district court case in the Seventh Circuit decided since *Brown*, the court looked to a complaint filed by plaintiffs' counsel in a separate action on behalf of

different plaintiffs (just like *Tralins* was here) and found that if plaintiffs' tactics were

allowed, it would undermine federal securities law:

> Tellingly, in [the earlier complaint], the plaintiffs appear to be much more
> forthcoming with their allegations of failure to disclose or fraud or both. . .
> . . In the Court's view, allowing Jorling's class action complaint to survive
> SLUSA because he carefully blotted out certain allegations would
> undermine federal securities law.

*Jorling*, 836 F. Supp. 2d at 835; *see also Segal*, 581 F.3d at 310-11 ("[A] claimant can no

more elude SLUSA's prohibitions by editing out covered words from the complaint

than disclaiming their presence."); *Kutten*, 530 F.3d at 670-71 (finding no distinction

between the complaint filed in the separate *Siepel* action, where plaintiffs conceded

fraud, and the complaint in *Kutten*, even though plaintiffs in *Kutten* avoided express

allegations of fraud, misrepresentations or omissions); *Dudek v. Prudential Sec. Inc.*, 295

F.3d 875, 879 (8th Cir. 2002) (looking to plaintiffs' prior complaint in finding that SLUSA

applied: "[a]lthough plaintiffs deleted the allegations of fraud, misrepresentation, and

non-disclosure that permeated their New York complaint, the fact allegations in the two

complaints are otherwise essentially the same . . . ").

Plaintiffs contend that *Jorling* is inapposite because it was a summary judgment

decision that "relied heavily upon defendant's failure to disclose key facts."  Apps.' Br.

at 21.  Even though *Jorling* found SLUSA to apply because of omissions (rather than

misrepresentations) at the summary judgment stage, there is no reason why that case's

reasoning and holding are not equally instructive here.  Indeed, in *Brown*, this Court

35

recognized that allowing a plaintiff to amend his complaint to delete a fraud allegation, "would not be credible" because of "[t]he likelihood that [plaintiff] would do everything he could to sneak the allegation back into the case, if the complaint were amended . . . ." 664 F.3d at 131. Given that the Amended Complaint represents Plaintiffs' counsel's third attempt to plead around SLUSA, their argument that this case does not (and will not) involve allegations of fraud is simply not credible and fails under the logic of *Brown*. If anything, this is a quintessential case in which to apply SLUSA's bar, given the repeated and "artful" attempts by Plaintiffs and their counsel to avoid SLUSA here.

### B. The Misrepresentations, Omissions or Manipulative or Deceptive Device or Contrivance were "in Connection with" the Purchase or Sale of Covered Securities

The District Court correctly held that Plaintiffs' claims "directly relate[] to the sale of proprietary mutual funds" and therefore satisfy the "in connection with" requirement. A-9-A-10. In *Dabit*, the Supreme Court held that the "in connection with" language must be read broadly to encapsulate the types of private securities fraud cases SLUSA was intended to preempt. 547 U.S. at 85-86 ("The presumption that Congress envisioned of a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment."). *Dabit* held the "in connection with" requirement is satisfied where the alleged wrongdoing "coincide[s] with" the purchase or sale of securities. *Id.* at 85

(adopting from precedent § 10(b) and Rule 10b-5 cases, "it is enough that the fraud alleged 'coincide' with a securities transaction") (citing with approval *SEC v. Zandford*, 535 U.S. 813, 819-20 (2002)); *see also Rowinski*, 398 F.3d at 301 ("the requisite connection is established where a 'fraudulent scheme' and a securities transaction 'coincide'") (citing *Zandford*, 535 U.S. at 825); *Richek*, 2011 WL 3421512, at *4.

Plaintiffs argue that the District Court erred because the misconduct challenged in the Amended Complaint and the harm Plaintiffs allegedly suffered "are not dependent on Appellants having invested in any securities at all." Apps.' Br. at 25 (emphasis omitted). Any plain reading of the Amended Complaint easily refutes these thin arguments. From start to finish, the Amended Complaint alleges a self-dealing scheme by Defendants to increase profits by pushing and selling their proprietary funds and investments regardless of whether they engaged in the due diligence outlined through statements to the potential investors. For example, Plaintiffs plead the following:

- "At the heart of such policies and practices was the decision – made at the most senior executive levels – to require Defendants' financial advisors to strongly ***push and sell*** their clients into own proprietary funds and investments . . . " (R. 34 at 3, ¶ 3) (emphasis added);

- "In an attempt to recover from declining profits and to bolster JPM's diminished balance sheet, Defendants dedicated more resources to ***placing*** their financial advisory clients into Defendants' proprietary funds and investments . . . " (R. 34 at 15-16, ¶ 42) (emphasis added);

- "JPMorgan collected upfront fees for ***steering*** clients from non-proprietary fund families into JPM-sponsored fund families, as well as collecting fees from the proprietary funds and investments themselves." (R. 34 at 17, ¶ 48) (emphasis added);

- "[WaMu] clients were exploited by being *switched* to JPMorgan proprietary funds from other fund families . . . " (R. 34 at 25, ¶ 74) (emphasis added).

It defies logic that Plaintiffs could be harmed by a scheme to sell JPMorgan proprietary products, if they were not "pushed," "sold" or "placed" in those products. Significantly, the putative class itself is defined to be: "all financial advisory clients of Defendants . . . whose funds were placed in Defendants' and/or their affiliates' proprietary mutual funds and investments and who were charged investment management fees . . . ." R. 34 at 1, ¶ 1. Plaintiffs argue that their own definition of the class should be disregarded because their claims would have the same force if Defendants had caused them to be invested in "real estate or cattle." Apps.' Br. at 25. Plaintiffs' argument is simply not credible. This case is not about real estate or cattle. It is about the purchase and sale of securities. More specifically, the product purportedly at the center of the scheme, CSP, allegedly is a program that combines roughly 15 mutual funds, and, which has since inception, purportedly amassed $20 billion in assets. R. 34 at 17, ¶ 46, 48.

Thus, the allegations here plainly satisfy the "in connection with" requirement of SLUSA. *See e.g., Segal*, 581 F.3d at 309-10 (finding in connection with satisfied where defendant "failed to inform trust beneficiaries that their trust accounts would be invested in proprietary funds" because such claims "revolve around [defendant's] decision to buy mutual fund shares"); *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1094 (11th

Cir. 2002) (applying SLUSA where the object of the alleged fraud was to cause investment in inappropriate securities to which higher fees attached); *Dudek.*, 295 F.3d at 877-79 (finding claims preempted where plaintiffs alleged that "defendants' misconduct caused plaintiffs to invest in inappropriate securities" and therefore to pay higher fees and incidental costs than necessary"); *Rabin*, 2007 WL 2295795, at *7 (finding "in connection with" language satisfied by claim that "Defendants engaged in a scheme to invest proceeds from the beneficiaries' accounts into Defendants' proprietary mutual fund").

Plaintiffs also cite to this Court's decision in *Gavin v. AT & T Corp.*, and incorrectly argue that this Circuit requires a narrow reading of "coincide with," such that the alleged misconduct must have a "close nexus" to securities transactions.  Apps.' Br. at 23 (citing *Gavin*, 464 F.3d at 639).  Nowhere in the *Gavin* decision, however, does the court refer to a "close nexus."  Plaintiffs in *Gavin* were shareholders of MediaOne, which merged with AT&T.  The terms of the merger entitled plaintiffs to elect to obtain shares of AT&T or an alternative.  Months after the merger closed, AT&T's agent sent a letter to shareholders reminding them to make an election.  The letter specified one option with an associated fee, but omitted an alternative "no fee" option.  On this basis, plaintiffs sued for fraud.  *Gavin*, 464 F.3d at 637-38.

Based on these facts—where the complained of misconduct occurred months after the securities transaction at issues—the *Gavin* Court found that the "in connection"

39

with requirement was not satisfied. *Id.* at 638 (noting that "this would be a different

case from the standpoint of SLUSA had the MediaOne shareholder been induced by

fraudulent representations by AT&T to vote for the merger). In reaching its holding,

the Court explained that:

> Of course there is a literal sense in which anything that happens that
> would not have happened but for some prior event is connected to that
> event. In that sense the fraud of which plaintiff complains is connected to
> the merger, without which there would not have been such a fraud
> against the plaintiff and her class. But in the same sense the fraud is
> connected to the Big Bang, without which there would never have been a
> MediaOne or even an AT&T.

*Id.* at 639. But the Court did not define or in any narrow the "coincides with" standard

from *Dabit,* as Plaintiffs now suggest. See *Roland v. Green*, 675 F.3d 503, 512-13 (5th Cir.

2012) (noting that, in *Gavin*, the Seventh Circuit did not attempt to define the "coincide"

requirement), *cert. granted sub nom., Willis of Colo. Inc. v. Troice*, 133 S. Ct. 977 (2013).

The District Court correctly distinguished this case from the facts in *Gavin*

because here, in contrast to *Gavin*, Plaintiffs allege that Defendants engaged in an

ongoing scheme related directly to the purchase and sale of JPMorgan proprietary

funds. A-10 ("Unlike *Gavin*, here the alleged fraud directly relates to the sale of

proprietary mutual funds and satisfies SLUSA's 'in connection' requirement."). Like

the District Court, other courts have also declined to extend *Gavin's* holding for this

same reason. *See Richek*, 2011 WL 3421512, at *5 (rejecting plaintiffs' reliance on *Gavin*

because, "[i]n contrast to *Gavin*, the essence of Plaintiff's amended complaint is that the

Bank made misrepresentations and omitted material facts regarding conflicts of interest and fees *relating to* the transfer of trust assets into mutual funds."); *Wells Fargo Bank, N.A. v. Superior Court*, 71 Cal. Rptr. 3d 506, 515 (Cal. Ct. App. 2008) (declining to apply *Gavin* because there the alleged fraud "occurred long after the securities transaction," but in the present case the alleged wrongdoing occurred "contemporaneously with the security transaction").[14]

## II.  THE DISTRICT COURT'S DISMISSAL MAY BE AFFIRMED ON THE ALTERNATIVE GROUND THAT  PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The District Court's dismissal of the Amended Complaint may be affirmed on the alternative ground that, for each count alleged, Plaintiffs fail to state a claim.  Even though the District Court did not have reason to address whether the Amended Complaint adequately stated a claim upon which relief could be granted, Federal Rule of Civil Procedure 12(b)(6) is an appropriate ground for affirming dismissal, because it was fully briefed in the lower court.  *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) ("[A]n appellate court may affirm the district court's dismissal

---

[14]  Plainitffs' reliance on *Strigliabotti v. Franklin Resources, Inc.*, 398 F. Supp. 2d 1094 (N.D. Cal. 2005), is equally unavailing.  *Strigliabotti* is a pre-*Dabit* case that found the alleged wrongdoing was not "in connection with" the purchase or sale of securities because the crux of plaintiffs' allegations was that defendants charged excessive fees for financial advice while the securities transactions that were alleged occurred between defendants and third parties.  *Id.* at 1102-03.  In contrast, here, Plaintiffs allege that they were pushed into buying JPMorgan funds by Defendants directly; there are no transactions involving third parties.

on any ground supported by the record, even if different from the grounds relied upon by the district court."); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 656 (7th Cir. 2010) .

### A. Plaintiffs Have Failed to Allege the Elements of Breach of Contract (Count I of the Amended Complaint)

A valid claim for breach of contract requires (1) the existence of a valid contract; (2) plaintiffs' performance under the contract; (3) defendants' breach of the contract; and (4) resulting damages. *See JP Morgan Chase v. J.H. Electric of N.Y., Inc.*, 69 A.D.3d 802, 803 (N.Y. App. Div. 2010).[15]

### 1. Plaintiffs Have Failed to Identify a Contract

Plaintiffs do not adequately plead the existence of a valid contract with Defendants. This element requires more than mere allegations of the existence of a contract; it requires that Plaintiffs "plead the provisions of the contract upon which the claim is based." *Howell v. Am. Airlines, Inc.*, No. 05-CV-3628 (SLT), 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006) (internal quotation marks omitted); *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (dismissing claim where "plaintiff has

---

[15]   Except as noted below, Plaintiffs' claims are analyzed under New York law because Plaintiffs allege that the relevant contracts are under New York law.  R. 34 at 29, ¶ 86; *see, e.g., Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, Nos. 02 C 0978, 02 C 3436, 2003 WL 151929, at *14-15 (N.D. Ill. Jan. 21, 2003).  Defendants do not concede the application of New York law for any other purpose.

not specifically identified the contract (or contracts) at issue and has not specified the terms of the agreement that defendant purportedly breached").

Plaintiffs here include nothing more than general allegations that Defendants contracted to comply with, *inter alia,* all "laws, rules, and regulations applicable to banks, brokerage firms, and investment advisors," and broadly claim that Defendants were obligated to "conduct thorough and accurate research of investments and market conditions" and "manage investments in the best interests of the client." R. 34 at 11-12, ¶¶ 28, 31. Plaintiffs fail to identify any specific contractual provisions from which these broad-based responsibilities purportedly derive, resorting instead to alleging agreements in vague and conclusory terms. *See* R. 34 at 12, ¶ 31 (referring to "these financial advisory agreements").

Rather than quote from or reference a contract between the parties, Plaintiffs amended the initial complaint to add allegations regarding a customer account agreement for MMFP (a managed mutual fund program) and brochures filed with the SEC for CSP and an unidentified advisory program. Plaintiffs make the bare assertion that these documents evidence contractual duties owed to them by all Defendants. R. 34 at 15, ¶ 40. There are no allegations, however, that Plaintiffs signed customer account agreements for MMFP or CSP or participated in these programs. Moreover, references to brochures, which are not contracts, cannot substitute for allegations identifying the particular contract(s) and terms purportedly breached.

### 2.  Plaintiffs Have Failed to Plead a Breach of Any Contract

"Stating in a conclusory manner that an agreement was breached does not

sustain a claim of breach of contract [under New York law]." *Berman v. Sugo LLC*, 580 F.

Supp. 2d 191, 202 (S.D.N.Y. 2008).  Plaintiffs broadly allege that by engaging in a self-

dealing scheme, Defendants breached their contractual obligations to act in the best

interests of their clients.  *See e.g.* R. 34 at 2-3, 18, ¶¶ 2-3, 49 ("This skewed policy and

practice caused Defendants to breach the fiduciary and contractual obligations owed to

Defendants' clients.").  Plaintiffs fail to allege how the purported self-dealing scheme

caused Defendants to act contrary to Plaintiffs' best interests.  Plaintiffs do not allege

that the proprietary funds did not generally meet Plaintiffs' investment criteria, that the

funds performed poorly relative to comparable investments, or that, overall, investment

in proprietary funds was contrary to Plaintiffs' best interests.

For example, Plaintiffs allege that the proprietary funds had been "vetted and

approved by the portfolio management team in New York," without stating why this

vetting process did not satisfy Defendants' alleged duty to research potential

investments.  R. 34 at 21, ¶ 58.  Similarly, Plaintiffs allege that CSP may have carried a

fee higher than what might be charged by unspecified independent financial planners,

but Plaintiffs do not explain why fees charged to "ordinary investors" are comparable

to fees charged to CSP clients, nor do they allege that the fees were excessive relative to

other comparable investments.  R. 34 at 17, ¶ 48.

44

### 3. Plaintiffs Have Failed to Plead Damages

To adequately plead a breach of contract, plaintiffs must also allege that they

were harmed as a direct result of the alleged breach. *City of Peekskill v. Cont'l Ins. Co.,*

166 F.3d 1199, at *1 (2d Cir. 1998). Allegations that the counterparty inadequately

performed under a contract are insufficient to establish liability. *Cramer v. Spada*, 610

N.Y.S.2d 662, 664 (App. Div. 1994). Further, "an allegation that defendant 'suffered

damages' without particular facts as to how she was damaged does not satisfy *Twombly*

and *Iqbal*." *Int'l Bus. Machs. Corp. v. Dale*, No. 7:11-cv-951 (VB), 2011 WL 4012399, at *2

(S.D.N.Y. Sept. 9, 2011).

Plaintiffs have not sufficiently pled damages as a result of Defendants' alleged

misconduct. In the section of the Amended Complaint entitled "Defendants'

Misconduct Caused the Class Substantial Harm," Plaintiffs allege that they were

"harmed by being forced to pay substantial fees for investment advisory services" and

other "upfront fees." R. 34 at 26, ¶ 75. At best, these are just demands for a refund. The

Amended Complaint does not allege the harm Plaintiffs suffered to warrant that

refund, or that Defendants failed to perform their contractual duties. Plaintiffs allege

the purpose of the contract was to "serve the best interests of . . . clients" and to

"maximize client returns." R. 34 at 2, ¶ 2. Yet nowhere in the Amended Complaint do

Plaintiffs allege that they were harmed because this purpose was frustrated by

Defendants' actions. An equally plausible conclusion is that Plaintiffs benefitted from

the actions alleged—investments in proprietary funds may have "maximiz[ed] client

returns." *Id.*

**B.  Plaintiffs Have Failed to Adequately Plead a Breach of Fiduciary Duty (Count II of the Amended Complaint)**

The District Court's dismissal of Plaintiffs' breach of fiduciary duty claim should

also be affirmed because the claim is duplicative of Plaintiffs' breach of contract claim

and because Plaintiffs fail to adequately plead the elements of a breach of fiduciary duty

claim.

**1.  Plaintiffs' Claim for Breach of Fiduciary Duty is Duplicative**

A "duplicative" breach of fiduciary duty claim is unsustainable against financial

advisors where the claim is "based upon the same facts and theories as [plaintiff's]

breach of contract claim." *Brooks v. Key Trust Co. Nat'l Ass'n*, 809 N.Y.S.2d 270, 272

(App. Div. 2006); *see also William Kaufman Org., Ltd. v. Graham & James L.L.P.*, 269 A.D.2d

171, 173 (N.Y. App. Div. 2000).  Furthermore, the "duplicative" claim fails even where

the breach of contract claim is dismissed as insufficient.  *Fesseha v. TD Waterhouse*

*Investor Servs., Inc.*, 305 A.D.2d 268, 268-69 (N.Y. App. Div. 2003) (dismissing breach of

fiduciary duty claim as "duplicative of the breach of contract claim" while also

affirming dismissal of breach of contract claim).   In *Brooks*, the court held that, although

"plaintiff demonstrated that defendants' role as his financial advisor with discretionary

authority to manage his investment accounts created a fiduciary duty," this was

insufficient to maintain a distinct claim for breach of fiduciary duty based on the same

facts and theories as the breach of contract claim.  809 N.Y.S.2d at 272.

Like plaintiff in *Brooks,* Plaintiffs here have failed to allege any independent

claims based on fiduciary duties allegedly owed by Defendants.  Indeed, the Amended

Complaint acknowledges the total overlap between the breach of contract and breach of

fiduciary duty claims.  *See, e.g.,* R. 34 at 4, ¶ 6 (by allegedly pressuring financial advisors

to sell JPMorgan proprietary funds, "Defendants breached their contractual and

fiduciary duties").  Even the counts that state the two claims contain nearly identical

allegations.  *Compare* R. 34 at 29, ¶ 87 ("Defendants had duties to exercise their

contractual obligations . . . including the obligation to competently and honestly

research, analyze, select investments and provide services, in exchange for account-

related fees that Plaintiffs and the other members of the Class paid to Defendants."),

*with* R. 34 at 30, ¶ 93 ("Defendants owed fiduciary duties to Plaintiffs . . . to competently

and honestly research, analyze, and select investments and provide services, in

exchange for account-related fees that Plaintiffs and the other members of the Class

paid to the Defendants.").

### 2.  Plaintiffs Fail to Plead the Elements of a Breach of Fiduciary Duty

A valid claim for breach of fiduciary duty requires plaintiff to allege: (1) a

fiduciary duty existed between plaintiff and defendant; (2) defendant breached that

duty; and (3) damages resulted from the breach. *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 62 (E.D.N.Y. 2010). Plaintiffs fail to plead each of these elements.

*No Duty.* Although Plaintiffs make conclusory references to the fiduciary duties allegedly owed by Defendants, *see* R. 34 at 9-12, ¶¶ 22-27, 30, they fail to specify how and why these duties operate in the context of Plaintiffs' alleged investment accounts. The Amended Complaint addressed Defendants' fiduciary duties only in relation to Plaintiffs' status as clients of JPMorgan, but Plaintiffs failed to identify the contracts by which Defendants agreed to a fiduciary relationship. *See* R. 34 at 9-10, ¶¶ 21-22; Apps.' Br. at 11-12. Plaintiffs also argue that Defendants made statements in which they admit to the presence and scope of fiduciary and contractual duties. Apps.' Br. at 14-15. Yet, Plaintiffs disclaim any reliance on these statements in connection with their securities transactions or otherwise. Apps.' Br. at 3. ("Appellants do *not* allege that . . . they chose to transact in any security as a result of any false or misleading statements."). Finally, to the extent the accounts at issue may be non-discretionary, Defendants "do not owe clients a fiduciary duty." *Celle v. Barclays Bank P.L.C.*, 48 A.D.3d 301, 302 (N.Y. App. Div. 2008).

*No Breach.* As with their breach of contract claim, Plaintiffs fail to adequately allege a breach of fiduciary duty. Plaintiffs claim that Defendants violated their fiduciary duties by pushing clients to buy proprietary funds regardless of their clients' best interests. R. 34 at 30, ¶ 94. However, the Amended Complaint does not allege that

Defendants' proprietary funds were imprudent or unsuitable investments.  Nor are

there any allegations that these investments in proprietary funds did not perform well,

either independently or relative to similar investments.  As with their contract claim,

Plaintiffs allege no specific basis on which to state a claim that Defendants breached

their duties.

      ***No Damages.***  Damages are a required element of a claim for breach of fiduciary

duty.  *See Moscato v. Tie Techs., Inc.*, No. 04 Civ. 2487(GBD), 2005 WL 146806, at *6

(S.D.N.Y. Jan. 21, 2005) (to state a claim for breach of fiduciary duty, plaintiff must

allege the breach "resulted in and was the proximate cause of" damages).  Just as

Plaintiffs failed to establish damages as a result of the alleged breach of contract,

Plaintiffs also fail to establish they were harmed by Defendants' alleged breach of

fiduciary duty.  *See supra* at II.A.3.

### C. Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count I of The Amended Complaint) and for Unjust Enrichment (Count III of The Amended Complaint)

      Under New York law, claims for the implied covenant of good faith and fair

dealing and claims for unjust enrichment fail where "a breach of a contract claim, based

upon the same facts, is also pled."  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d

73, 81 (2d Cir. 2002) (implied covenant of good faith and fair dealing); *see Zutty v. Rye*

*Select Broad Mkt. Prime Fund, L.P.*, 939 N.Y.S.2d 745, 2011 WL 5962804, at *8 (Sup. Ct.

2011) (unjust enrichment).  This is true even where the underlying breach of contract

claim fails as a matter of law.  *See, e.g., Ahead Realty LLC v. India House, Inc.* 92 A.D.3d 424, 425 (N.Y. App. Div. 2012) (dismissing claim for breach of covenant of good faith and fair dealing as duplicative where breach of contract claim was also dismissed). Such duplicative claims should not be permitted as an alternative cause of action.  *See Boart Longyear Ltd. v. Alliance Indus., Inc.*, 869 F. Supp. 2d 407, 420 (S.D.N.Y. 2012) (finding "more recent Second Circuit case law indicates that dismissal [of implied covenant claim] for redundancy is the appropriate outcome") (citing *e.g., L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n.17 (2d Cir. 2011)).

Plaintiffs' good faith and fair dealing claim is duplicative of their breach of contract claim.  Both claims are included in the very same count and rely on the exact same allegations.  *See* R. 34 at 28-29, ¶¶ 84-91.  Moreover, the damages Plaintiffs seek in connection with their good faith and fair dealing claim arise from the purported contracts with Defendants.  *See* R. 34 at 2, ¶ 2 (Plaintiffs sued to reclaim "investment management fees" paid "in exchange for investment advice and related services" that "Defendants contracted to provide").[16]  Similarly, Plaintiffs' unjust enrichment claim is

---

[16]  In their briefing before the District Court, Plaintiffs argued that these claims were plead in the alternative, and are not duplicative, because they are contained within the same count of the Amended Complaint and because there appears to be a dispute regarding the existence of a contract.  *See* R. 49 at 27.  This, however, is not correct.  Duplicative claims "rel[y] on identical allegations of fact and law" such that where one claims fails, the other claim must also fail, while claims plead in the alternative may succeed independently from one another.  *Aramony v. United Way of Am.*, 949 F. Supp. 1080, 1084 n.2 (S.D.N.Y. 1996).  Whether or not the claims are pled

also precluded as a matter of law.  The relationship between the parties and fees paid to

Defendants (for which unjust enrichment is claimed) are governed by the alleged

account agreements.  *See Zutty*, 2011 WL 5962804, at *8-9 (dismissing unjust enrichment

claim by fund investors relating to fees collected by fund managers where contract

governed fees at issue).

## III.     PLAINTIFFS' CLAIMS AGAINST JPMORGAN CHASE AND JPMIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) AND FOR LACK OF STANDING UNDER RULE 12(b)(1)

Plaintiffs fail to establish independent liability on the part of JPMorgan Chase

and JPMIM under any of their claims.  This failure warrants dismissal under Federal

Rule of Civil Procedure 12b(6).  Plaintiffs allege that they entered into account

agreements with JPMC Bank and JPMS and that the financial advisors who purportedly

owed fiduciary duties to Plaintiffs were employed by JPMC Bank and JPMS; not

JPMorgan Chase or JPMIM.  R. 34 at 5-6, 9, ¶¶ 9-12, 22.  Having no contractual

relationship, and therefore no fiduciary relationship, with Plaintiffs, JPMorgan Chase

and JPMIM cannot be liable to Plaintiffs for breach of contract or of breach of fiduciary

duty.  *Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991) ("It is

hornbook law that a non-signatory to a contract cannot be named as a defendant in a

---

in the same count is irrelevant.  Moreover, Plaintiffs should not be permitted to
benefit because they failed to identify the particular contracts or provisions
purportedly breached.  *See McCabe v. Crawford & Co.*, 210 F.R.D. 631, 639 n.4 (N.D.
Ill. 2002).

breach of contract action . . ."); *see also Meisel v. Grunberg*, 651 F. Supp. 2d 98, 115

(S.D.N.Y. 2009) ("[A] breach of fiduciary duty requires finding that a fiduciary

relationship existed between the parties.").[17]

Plaintiffs' conclusory allegations that JPMorgan Chase "controlled JPMC Bank

and JPMS LLC" (R. 34 at 7, ¶ 17), also are not sufficient to assert a claim.  Plaintiffs fail

to allege the requisite elements for "piercing the corporate veil."  *See Trevino v. Merscorp,*

*Inc.*, 583 F. Supp. 2d 521, 529 (D. Del. 2008).  JPMorgan Chase and JPMIM are

incorporated in Delaware, and, therefore, Delaware law governs this question.

*Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996).   To pierce

the veil, Delaware courts apply a multifactor test including whether defendants (i)

disregarded corporate formalities, (ii) intermingled funds; or (iii) inadequately

capitalized subsidiaries.  *See Liafail, Inc. v. Learning 2000, Inc.*, Nos. Civ.A. 01-599 GMS,

01-678 GMS, 2002 WL 31414141, at *6 (D. Del. Oct. 23, 2002).  Plaintiffs do not plead any

of these factors.

---

[17]  Plaintiffs' claim for unjust enrichment also should be dismissed pursuant to Federal
Rule of Civil Procedure 12(b)(6) because the damages alleged are the management
fees Plaintiffs paid for advice they allegedly "contracted to receive" from JPMS and
JPMC Bank, not from JPMorgan Chase or JPMIM.  *See* R. 34 at 5-6, ¶¶ 9-12; *see also* R.
47-1 at  58, ¶ 8 ("JPMorgan Chase is not in the business of charging management
fees to individuals.").  Likewise, without pleading a contractual relationship
between Plaintiffs and either JPMorgan Chase or JPMIM, Plaintiffs' fail to establish a
claim for breach of the implied covenant of good faith and fair dealing as to these
entities.  R. 34 at 29, ¶ 86 (only "the conduct of each part to a contract is subject to the
implied covenant . . .").

The District Court's dismissal of Plaintiffs' claims also should be affirmed as to JPMorgan Chase and JPMIM because Plaintiffs lack standing to assert their claims under Federal Rule of Civil Procedure 12(b)(1).  For a plaintiff to have standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and punctuation omitted).  Plaintiffs fail to plead any connection between JPMorgan Chase and their alleged damages.  R. 34 at 26, ¶¶ 75-76.   Moreover, JPMorgan Chase is primarily a holding company, not a registered broker-dealer, and does not engage in the type of activities giving rise to Plaintiffs' alleged injuries.  *See* R. 47-1 at 57-58, ¶¶ 2-8.   Accordingly, Plaintiffs' suit against JPMorgan Chase is without a legitimate case or controversy and should be dismissed.  *See Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 244, 253-54 (D. Del. 2009) (granting 12(b)(1) factual standing challenge by defendants where related entities, named as co-defendants, had issued the relevant contracts).[18]

---

[18]   There are no allegations that Plaintiffs contracted with JPMIM or that JPMIM employed financial advisors owing either a contractual or fiduciary duty to Plaintiffs.  Therefore, Plaintiffs' alleged injuries cannot be traced to JPMIM and Plaintiffs' claims against JPMIM should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

53

## **CONCLUSION**

For the foregoing reasons, the judgment of the District Court should be

affirmed.

Dated:  New York, NY
          November 27, 2013

By: /s/ Jonathan K. Youngwood
Jonathan K. Youngwood
Janet A. Gochman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Tel: (212) 455-2000
Fax: (212) 455-2502

Stephen V. D'Amore
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

*Attorneys for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B) because it contains 14,000 words, excluding the parts of

the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).  This brief

complies with the typeface requirements of Federal Rule of Appellate Procedure

32(a)(5)(A), as modified by Circuit Rule 32(b), and the type style requirements of

Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a

proportionally spaced typeface using Microsoft Word 2010 in Palatino Linotype size 12-

point font.

Dated:   New York, NY
         November 27, 2013

By: <u>/s/ Jonathan K. Youngwood</u>
Jonathan K. Youngwood

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Tel: (212) 455-2000
Fax: (212) 455-2502

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of November, 2013, I electronically filed the

Brief for Defendants-Appellees with the Clerk of the Court for the United States Court

of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that the

following participants in this case are a registered CM/ECF users and that service will

be accomplished by the CM/ECF system:

Daniel L. Berger
GRANT & EISENHOFER
485 Lexington Avenue, 29th Floor
New York, NY 11370
dberger@gelaw.com

Shannon Lack Braden
Tyler S. Graden
KESSLER TOPAZ MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087-0000
sbraden@ktmc.com
tgraden@ktmc.com

/s/ Mariana Braylovskiy
Mariana Braylovskiy